IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GENERAL CONFERENCE OF SEVENTH-DAY ADVENTISTS, ET AL., | * | |
| *Plaintiffs*, | * | |
| v. | * | No. 8:24-cv-02866 |
| | * | |
| CLEVELAND L. HORTON, III, ET AL., | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Jeffrey S. Luoma

_____
JEFFREY S. LUOMA (Federal Bar No. 30791)
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland  21202
jluoma@oag.state.md.us
(410) 576-6441
(410) 576-6955 (facsimile)

December 24, 2024                              Attorneys for Defendants

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

REPLY ARGUMENT .............................................................................................................1

THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. ...................1

    A.    Count I Should Be Dismissed Because MFEPA Does Not Violate the Church Autonomy Doctrine.....................................................................................1

    B.    Count II Should Be Dismissed Because MFEPA Does Not Result in Impermissible Church-State Entanglement. ............................................................3

    C.    Count III Should Be Dismissed Because MFEPA Is Generally Applicable. ..........5

    D.    Count III Should Be Dismissed Because MFEPA Applies Equally to All Religious Denominations........................................................................................8

    E.    Counts V and VI Should Be Dismissed Because MFEPA Does Not Violate the Rights of Expressive Association or Assembly. ................................................9

    F.    Count VII Should Be Dismissed Because MFEPA Is Not Unconstitutionally Vague. ..................................................................................................................10

CONCLUSION.......................................................................................................................10

CERTIFICATE OF SERVICE...............................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aparicio v. Christian Union, Inc.*, No. 18-CV-0592, 2019 WL 1437618
 (S.D.N.Y. Mar. 29, 2019) ................................................................................................... 2

*Bear Creek Bible Church v. Equal Emp't Opportunity Comm'n*,
 571 F. Supp. 3d 571 (N.D. Tex. 2021) ........................................................................... 9, 10

*Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) ........................................................................ 9

*Boy Scouts of Am. v. Wyman*, 335 F.3d 80 (2d Cir. 2003) ......................................................... 9

*Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648 (10th Cir. 2002) ................ 2

*Corporation of Presiding Bishop v. Amos*, 483 U.S. 327 (1987) ................................................ 4

*Darren Patterson Christian Acad. v. Roy*, 699 F. Supp. 3d 1163 (D. Colo. 2023) ....................... 2

*Doe v. Catholic Relief Servs.*, 484 Md. 640 (2023) ..................................................... 3, 4, 5, 8, 10

*Duquesne Univ. of the Holy Spirit v. NLRB*, 947 F.3d 824 (D.C. Cir. 2020) ............................ 4, 5

*Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872 (1990) .......................... 5, 9

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.Bd. of Educ.*,
 82 F. 4th 664 (9th Cir. 2023) ........................................................................................... 7, 8

*Fulton v. City of Philadelphia*, 593 U.S. 522 (2021) ............................................................. 5, 7, 8

*Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680 (1989) ..................................... 8

*Kidwell v. Transportation Commc'ns Int'l Union*, 946 F. 2d 284 (4th Cir. 1991) ....................... 9

*Larson v. Valente*, 456 U.S. 228 (1982) ..................................................................................... 8

*Manning v. Caldwell*, 930 F.3d 264 (4th Cir. 2019) ................................................................. 10

*McMahon v. World Vision, Inc.*, 704 F. Supp. 3d 1121 (W.D. Wash. 2023) ............................... 9

*Mine Workers v. Illinois Bar Ass'n*, 389 U.S. 217 (1967) .......................................................... 9

*NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979) ..................................................... 4, 5

*Our Lady of Guadalupe v. Morrisey-Berru*, 591 U.S. 732 (2020) .................................. 1, 2, 3, 4, 10

*Our Lady's Inn v. City of St. Louis*, 349 F. Supp. 3d 805 (E.D. Mo. 2018) ...................................... 9

*Priests for Life v. United States Dep't of Health and Human Servs.*,
   7 F. Supp. 3d 88 (D.D.C. 2013) ................................................................................................ 9

*Rayburn v. General Conference of Seventh-day Adventists*,
   772 F.2d 1164 (4th Cir. 1985) ........................................................................................ 1, 2, 4

*Roberts v. Jaycees*, 468 U.S. 609 (1984) ........................................................................................ 9

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U. S. 14 (2020) ........................................... 6

*Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696 (1976) ................................................... 2

*Tandon v. Newsom*, 593 U.S. 61 (2021) ................................................................................ 5, 6, 7

*Union Gospel Mission of Yakima, Washington v. Ferguson*,
   No. 1:23-CV-3027-MKD, 2024 WL 4660918 (E.D. Wash. Nov. 1, 2024) ............................ 6, 7

*We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021) .................................................. 8

*White v. Department of Corr. Servs.*, 814 F. Supp. 2d 374 (S.D.N.Y. 2011) ................................... 7

**INTRODUCTION**

Religious institutions "are not—and should not be—above the law." *Rayburn v. General Conference of Seventh-day Adventists*, 772 F.2d 1164, 1171, (4th Cir. 1985). Plaintiffs already are the beneficiaries of a constitutional exception that shields all of their employment decisions relating to ministerial roles, as well as a state statutory exemption that applies to all employees whose duties directly further Plaintiffs' core missions, whether religious or secular. In opposing dismissal, Plaintiffs ask this Court to go even further and immunize them against employment discrimination claims by all employees, as long as they can provide a religious justification for whatever decision is challenged. The Constitution does not require that result.

**REPLY ARGUMENT**

**THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

**A.   Count I Should Be Dismissed Because MFEPA Does Not Violate the Church Autonomy Doctrine.**

Defendants' motion to dismiss explained that, in the context of employment discrimination, the church autonomy doctrine generally takes the form of the ministerial exception. The Supreme Court's careful efforts to craft that exception would make little sense if church autonomy also required that *all* employment decisions be shielded as long as they are rooted in religious belief. And neither the Supreme Court nor the Fourth Circuit has extended the church autonomy doctrine to protect non-ministerial employment decisions. (ECF 27-1, at 12-13.)

The snippets on which Plaintiffs rely do not support their attempt to broaden the doctrine's independent reach. For instance, they quote the statement in *Our Lady of Guadalupe v. Morrisey-Berru*, 591 U.S. 732 (2020) that, of the Court's prior church autonomy decisions, "none was exclusively concerned with the selection or supervision of clergy." (ECF 27-1, at 5 (quoting 591 U.S. at 747).) But that statement does not suggest the doctrine covers non-ministerial employment:

1

the next sentence. which Plaintiffs do not quote, explains that the non-clergy aspects of the earlier decisions involved control of church property. *Our Lady of Guadalupe*, 591 U.S. at 747-48. And although Plaintiffs quote *Rayburn* for the proposition that the doctrine protects their right "to make '[e]cclesiastical decisions . . . on matters of discipline, faith, [and] internal organization'" (ECF 30-1, at 5), *Rayburn*'s reference is only to the precept that "civil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law." *Rayburn*, 772 F.2d at 1167 (quoting *Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713 (1976)). In other words, courts generally cannot question whether such decisions are religiously correct.

Plaintiffs' other authorities do not support their position, either. For example, they ignore that *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648 (10th Cir. 2002), applied the church autonomy doctrine only to hold that letters constituting "religious dialogue between a minister and his parishioners" could not support sexual harassment claims. *Id.* at 658. Plaintiffs again cite *Darren Patterson Christian Academy v. Roy*, 699 F. Supp. 3d 1163 (D. Colo. 2023), but that case's defendants "made no argument" on the merits of the plaintiffs' First Amendment claims, *id.* at 1183, and the decision's sole basis for endorsing a "coreligionist exemption" was a series of Supreme Court cases addressing whether states can deny organizations funding solely on the basis of their religious status, *id.* at 1185. And in *Aparicio v. Christian Union, Inc.*, No. 18-CV-0592, 2019 WL 1437618 (S.D.N.Y. Mar. 29, 2019), not only did the plaintiff's retaliation claim arise out of his opposition to the church's policy regarding who could serve as a minister, but Title VII provided a separate statutory basis for rejecting the claim. *Id.* at *1, *9.

Also unpersuasive is Plaintiffs' effort to recharacterize their practices as concerning membership and discipline, not employment. (ECF 30-1, at 6.) Plaintiffs are of course free to

2

determine who is a member of the Church and to discipline members within the bounds of applicable law, including by terminating membership.  But it does not follow (nor does the case law say) that, for each and every employee position within their organizations, the Constitution gives Plaintiffs the unfettered right to take any adverse employment action as long as it is couched as "member discipline," let alone refuse to "consider nonmembers."  (ECF 30-1, at 6.)

Finally, Plaintiffs unduly downplay the consequences of a ruling in their favor.  They do not just seek a decision shielding their own preference for coreligionists in hiring.  Rather, they ask this Court to hold that, as a constitutional matter, all decisions regarding even non-ministerial employees are protected as long as they are "rooted in religious belief." (ECF 30-1, at 6.)  But it is both easy to claim that a decision is "rooted in religious belief" and difficult to question that belief's sincerity.  Whatever policies other states have chosen as a statutory matter, a holding that the Constitution mandates a "rooted in religious belief" exception could not readily be cabined to circumstances such as these and would invite all manner of opportunistic claims of immunity.

      **B.**      **Count II Should Be Dismissed Because MFEPA Does Not Result in Impermissible Church-State Entanglement.**

Defendants' motion explained that the inquiry prescribed by *Doe v. Catholic Relief Services*, 484 Md. 640 (2023), is not impermissibly entangling because, among other things, it is the same sort of inquiry that *Our Lady of Guadalupe* sanctioned for determining whether the ministerial exception applies. (ECF 27-1, at 16-17.)  In rejecting that analogy, Plaintiffs overstate the weight that *Our Lady of Guadalupe* gives to an organization's self-description and understate the weight that *Catholic Relief Services* gives.  As to *Our Lady of Guadalupe*, Plaintiffs say that the decision "did not second-guess the religious school's assertion of its core mission; instead, it took the school's sincere religious beliefs and assertions about its mission as true." (ECF 30-1, at 8.)  But the school's mission does not appear to have been seriously disputed, and the Court said

3

that "a religious institution's explanation of the role of . . . employees is *important*"—not dispositive. *Our Lady of Guadalupe*, 591 U.S. at 757 (emphasis added). At the same time, *Catholic Relief Services*, far from ignoring how a religious entity describes itself, lists "the description of its mission(s) that the entity provides to the public and/or regulators" as the very first factor that a court may consider in identifying its core mission or missions. 484 Md. at 675.

*Rayburn*, moreover, fully supports Defendants' position here. Although Plaintiffs attempt to minimize this point, *Rayburn* was a case about a church's "selection of its spiritual leaders." 772 F.2d at 1170. It was in that context that the court expressed concern about "a protracted legal process pitting church and state as adversaries" or, more specifically, "legal process designed to probe the mind of the church *in the selection of its ministers*." *Id.* at 1171 (emphasis added). *Rayburn* nowhere suggested that compliance burdens otherwise are unduly entangling.

Finally, although Plaintiffs say that Defendants have "no response" (ECF 30-1, at 10) to *Corporation of Presiding Bishop v. Amos*, 483 U.S. 327, 339 (1987), and *Duquesne University of the Holy Spirit v. NLRB*, 947 F.3d 824, 829 (D.C. Cir. 2020), neither case supports their claim of entanglement. *Amos* involved determinations whether a religious entity's activities were religious or secular. 483 U.S. at 331. As Plaintiffs note (ECF 30-1, at 7), *Amos* warned of the "significant burden" associated with requiring such an entity "to predict which of its activities a secular court will consider religious." 483 U.S. at 336. But *Catholic Relief Services* requires no determination whether a religious entity's mission is religious or secular. *See* 484 Md. at 673 ("core mission(s)" may be "religious, secular, or both"). The "burden" that *Amos* described thus does not exist here.

*Duquesne* is no more availing. The language Plaintiffs cite (ECF 15-1, at 19), is part of a summary of *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979). The "process of inquiry" disfavored by *Catholic Bishop of Chicago* (which is inapposite for reasons Defendants have

4

already explained (ECF 27-1, at 17-18)) concerned whether schools' "challenged actions were mandated by their religious creeds," 440 U.S. at 502, an inquiry with no parallel in MFEPA or *Catholic Relief Services*. *Duquesne* itself, moreover, involved a test that turned on whether a religious university's faculty were "held out as performing a specific role in creating or maintaining [the university's] religious educational environment," 947 F.3d at 832; the court rejected the test because it would require "examining whether faculty members play religious or non-religious roles," *id.* at 833 (citation omitted). Again, *Catholic Relief Services* does not require a court to determine whether a religious entity's activity or mission is religious or secular.

### C.  Count III Should Be Dismissed Because MFEPA Is Generally Applicable.

As Defendants have explained, MFEPA applies to religious and secular employers alike, and it therefore is neutral and generally applicable. (ECF 27-1, at 18-19); *see, e.g.*, *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021) (explaining that "laws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are both neutral and generally applicable" (citing *Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 878-82 (1990))). Although the statute contains exceptions, they either (1) apply to both religious *and* secular employers; or (2) in two instances, apply *only* to religious employers. (ECF 27-1, at 19.) Plaintiffs, in turn, do not appear to dispute that MFEPA does not facially favor secular employers over religious ones. Instead, they assert that facial general applicability is insufficient, and that what really matters is whether secular and religious "reasons" for exemptions are treated equally. "The First Amendment," they say, "requires a *religious reason* for an exception from a law to be treated at least as well as *any secular reason*." (ECF 30-1, at 11.)

The binding precedent on which Plaintiffs rely does not support that assertion. *Tandon v. Newsom*, 593 U.S. 61 (2021), turned on a comparison between COVID-19 restrictions' treatment

5

of religious and secular "activities," not religious and secular reasons for exemptions. *See* 593 U.S. at 63 (stressing that the laws "treat[ed] some comparable secular *activities* more favorably than at-home religious *exercise*" (emphasis added)). Even so, Plaintiffs assert that *Tandon* "assess[ed] whether the secular or religious *reasons* for an exception 'presented similar risks.'" (ECF 30-1, at 11 (quoting *Tandon*, 593 U.S. at 62).) *Tandon* did no such thing. The language that Plaintiffs quote concerns circumstances in which "secular *activities*"—not secular reasons—"are treated more favorably than religious worship" despite "present[ing] similar risks." *Id.* at 62 (emphasis added); *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U. S. 14, 19 (2020) (per curiam) (comparing religious worship to "the many other *activities* that the State allows" (emphasis added)). And *Tandon* otherwise made clear that its focus was on "whether two *activities* are comparable for purposes of the Free Exercise Clause." 593 U.S. at 62 (emphasis added).

As for non-binding precedent, Plaintiffs cite the Eastern District of Washington's unpublished decision in *Union Gospel Mission of Yakima, Washington v. Ferguson*, No. 1:23-CV-3027-MKD, 2024 WL 4660918 (E.D. Wash. Nov. 1, 2024). To the extent that *Union Gospel* embraces the arguments that Plaintiffs make here, however, it misapplies *Tandon*. *Union Gospel* held that Washington's antidiscrimination law was not generally applicable because it "exempts employers with fewer than eight employees" and thus "put[s] for-profit, non-religious organizations on unequal footing with Plaintiff and other religious organizations like it." *Id.* at *3. In reaching this conclusion, the court stated that "it is insufficient to examine how the law treats, for example, a religious employer with five employees and a secular employer with five employees," *id.* at *4, because "[c]omparability is concerned with the risks various activities pose," *id.* (quoting *Tandon*, 593 U.S. at 62) (brackets in original). Thus, in the court's view, the question was whether the law "treats Plaintiff—a religious organization—differently than secular

6

employers with fewer than eight employees." *Id.* at *4. But in focusing on comparability, *Union Gospel* ignored that, under *Tandon*, comparability is relevant only when a law treats a "*secular* activity more favorably than religious exercise." *Tandon*, 593 U.S. at 62 (emphasis added). An exemption for small employers does not favor a secular activity; it favors an activity that can be secular *or* religious, as long as it meets specified statutory criteria.

Nor, as Plaintiffs claim (ECF 30-1, at 12), does the statutory exception for employment decisions based on a bona fide occupational qualification mean that MFEPA is not "generally applicable." As Defendants have explained (ECF 27-1), there is no official who can grant or deny this exception; thus, it is not (as in *Fulton*) a "formal mechanism for granting exceptions," *Fulton*, 593 U.S. at 537. It is, like its federal analogue, a defense that a finder of fact may accept or reject on the basis of evidence. *See, e.g.*, *White v. Dep't of Corr. Servs.*, 814 F. Supp. 2d 374, 387 (S.D.N.Y. 2011). Plaintiffs provide no authority for the notion that a "mechanism for granting exceptions" can exist, within the meaning of *Fulton*, when there is nobody who can "grant[] exceptions." (ECF 30-1, at 13.) Nor do they explain their generalized assertion that "Defendants retain authority to impose government oversight on the backend." (ECF 30-1, at 13.)[1]

And even if an actual "mechanism for granting exceptions" were not required, Plaintiffs fail to show that the exception for bona fide occupational qualifications is akin to the discretionary mechanisms that have raised constitutional concerns. Plaintiffs rely heavily on *Fellowship of*

---

[1] Citing *Fulton*, Plaintiffs argue that MFEPA cannot satisfy strict scrutiny because the State's compelling interest in eliminating employment discrimination is "high-level," which, they say, "is never sufficient." (ECF 30-1, at 14.) *Fulton*, however, relied on the fact that the challenged policy had "a system of exceptions" which the City could not adequately explain why it denied to the plaintiff but granted to others. 593 U.S. at 542. As explained above, MFEPA contains no "system of exceptions" akin to the discretionary system in *Fulton*. And as to the least restrictive means, Plaintiffs identify no respect in which prohibitions on discrimination are overbroad means of advancing the State's interest.

7

*Christian Athletes v. San Jose Unified School District Board of Education*, 82 F. 4th 664, 686 (9th Cir. 2023) (en banc), to suggest that *any* standard requiring case-by-case determinations brings a case within *Fulton*. (ECF 30-1, at 12-13.) But *Fellowship of Christian Athletes* itself made clear that *Fulton* applies only to exemptions granted on an "ad hoc" basis or with "less than clear considerations." 82 F.4th at 687-88. Even if its application is left to case-by-case determination, the "bona fide occupational qualification" standard uses specific, defined criteria. (ECF 27-1, at 22.) It is far afield from a "good cause" standard, *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 288 (2d Cir. 2021), and is not a matter of "discretion" at all.

>   D.   **Count IV Should Be Dismissed Because MFEPA Applies Equally to All Religious Denominations.**

Plaintiffs' brief provides no reason why their claim of denominational discrimination can proceed. MFEPA, as interpreted by the Supreme Court of Maryland, applies the same test to all religious entities, regardless of denomination or any other characteristic: does the employee perform duties that "directly further the core mission(s)—religious or secular, or both—of the religious entity"? *Catholic Relief Servs.*, 484 Md. at 673. MFEPA thus is a facially neutral statute. In relying on *Larson v. Valente*, 456 U.S. 228 (1982), Plaintiffs ignore that the decision went out of its way to *distinguish* facially neutral statutes. (ECF 30-1, at 19; *see* ECF 27-1, at 23-24.) Nor do they even attempt to grapple with *Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680 (1989), which confirms that disparate effects on different religious denominations do not make a law unconstitutional. Instead, Plaintiffs claim that MFEPA "strip[s] protection from religious communities that only hire individuals who share their faith and are aligned with their religious mission, while affording protection to faith groups without a mission-aligned hiring practice." (ECF 30-1, at 18-19.) But that is an argument that MFEPA's facially neutral standard happens to

8

impose disparate *religious* burdens on different denominations. Cases such as *Smith*, 494 U.S. at 878-82, have long rejected this sort of claim as a basis for constitutional challenge.

>  **E.     Counts V and VI Should Be Dismissed Because MFEPA Does Not Violate the Rights of Expressive Association or Assembly.**

Plaintiffs have not shown that their expressive-association or assembly claims can proceed. They cite no Supreme Court or Fourth Circuit case suggesting that expressive association rights are implicated by the employer-employee relationship, particularly as to non-leadership positions. (ECF 30-1, at 19 (citing *Kidwell v. Transportation Commc'ns Int'l Union*, 946 F. 2d 284 (4th Cir. 1991) (union membership); *Roberts v. Jaycees*, 468 U.S. 609 (1984) (civic organization membership); *Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) (Boy Scout leadership).) And as to peaceable assembly, the only case they cite concerns employment specifically for purposes of redressing grievances. (ECF 30-1, at 20 (citing *Mine Workers v. Illinois Bar Ass'n*, 389 U.S. 217 (1967)).) The statement that "if Plaintiffs can't continue with mission-aligned hiring, they lose their right 'to assemble peaceably'" (ECF 30-1, at 20) is a non sequitur.

The out-of-circuit cases that Plaintiffs *do* cite do not support their broad claims. *Boy Scouts of America v. Wyman*, 335 F.3d 80 (2d Cir. 2003) concerned the organization's exclusion of gay activists from leadership positions. *Our Lady's Inn v. City of St. Louis*, 349 F. Supp. 3d 805, 820-22 (E.D. Mo. 2018) held, under *Dale*, that organizations advocating and educating against abortion could not be required to "to employ or house individuals who advocate for or perform abortions." *Priests for Life v. United States Department of Health and Human Services*, 7 F. Supp. 3d 88, 109 (D.D.C. 2013), held that requiring a health insurance issuer to cover contraception where an employer chooses not to do so itself did not violate the employer's expressive association rights.

The decision in *Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571 (N.D. Tex. 2021), moreover, underscores the broad implications of Plaintiffs' position. (ECF 30-1, at 19 n.5.) That

9

decision allowed businesses to assert expressive association to avoid liability for discrimination based on sexual orientation or transgender status. *Bear Creek*, 571 F. Supp. 3d at 615. *Bear Creek* was wrongly decided because, as the Western District of Washington recognized, "it fail[ed] to recognize the crucial distinctions . . . that render *Dale* inapplicable to the employment discrimination context." *McMahon v. World Vision, Inc.*, 704 F. Supp. 3d 1121, 1145 (W.D. Wash. 2023). But on its own terms, it underscores that Plaintiffs' position could open the door to a constitutional defense for all employers—for-profit or non-profit, religious or secular—against all manner of employment discrimination claims. Plaintiffs offer no reason to think otherwise.

### F. Count VII Should Be Dismissed Because MFEPA Is Not Unconstitutionally Vague.

Finally, Plaintiffs have not shown their vagueness claim is viable. They assert that *Catholic Relief Services* does not give them sufficient clarity regarding which employees "directly further" their core missions. (ECF 30-1, at 20.) But they do not try to square that argument with *Our Lady of Guadalupe*, whose analysis prefigured the very language they now say is unconstitutionally vague: the Court's decision turned on its assessment of the defendants' "core mission" and its determination that the plaintiffs "were entrusted *most directly* with the responsibility of educating their students in the faith." 591 U.S. at 757 (emphasis added). And Plaintiffs have no real response to the fact that, because MFEPA is a civil statute, "[l]ess clarity is required," *Manning v. Caldwell*, 930 F.3d 264, 272 (4th Cir. 2019), particularly in light of the limitations of language. (ECF 27-1, at 30.) Although they claim that "the consequences" include "the loss of First Amendment freedoms" (ECF 30-1, at 20), that argument rests on the premise that discrimination against non-ministerial employees is constitutionally protected. As explained above, it is not.

## CONCLUSION

The complaint should be dismissed for failure to state a claim.

        Respectfully submitted,

        ANTHONY G. BROWN
        Attorney General of Maryland

        <u>/s/ Jeffrey Luoma</u>
        JEFFREY S. LUOMA (Federal Bar No. 30791)
        Assistant Attorney General
        Office of the Attorney General
        200 St. Paul Place, 20th Floor
        Baltimore, Maryland 21202
        jluoma@oag.state.md.us
        (410) 576-6441
        (410) 576-6955 (facsimile)

Date:   December 24, 2024        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I certify that on December 24, 2024, I filed the foregoing document with the Clerk of Court and served the foregoing document on all counsel of record and any other registered users through the Court's CM/ECF system.

/s/ Jeffrey S. Luoma
Jeffrey S. Luoma
