```
 1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2                        GREENBELT DIVISION

 3   _____
                                             )
 4   GENERAL CONFERENCE OF SEVENTH-DAY        )
     ADVENTISTS, an unincorporated            )
 5   association, et al.,                     )
                                              )
 6        Plaintiffs,                         )
                                              )Docket Number
 7           vs.                              )8:24-cv-02866
                                              )
 8   CLEVELAND L. HORTON, II, in his          )
     official capacity as Acting              )
 9   Executive Director on Civil Rights,      )
     et al.,                                  )
10                                            )
          Defendants.                         )
11   _____)

12         TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING
              BEFORE THE HONORABLE THEODORE D. CHUANG
13               UNITED STATES DISTRICT COURT JUDGE
              THURSDAY, FEBRUARY 20, 2025, AT 2:30 P.M.

14

15   APPEARANCES:

16   On Behalf of the Plaintiffs:

17        BY:  ERIC BAXTER, ESQUIRE
                 NICHOLAS REAVES, ESQUIRE
18        The Becket Fund for Religious Liberty
          1919 Pennsylvania Avenue NW
19        Suite 400
          Washington, DC  20006
20        (202)955-0095

21        BY:  TODD R. McFARLAND, ESQUIRE
          General Conference of Seventh-Day Adventists
22        12501 Old Columbia Pike
          Silver Spring, MD  20904
23        (301)680-6320

24   (Appearances continued)

25        ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPED NOTES***
```

1  On Behalf of the Defendants:

2       BY:  JOSHUA SEGAL, ESQUIRE
               JEFFREY LUOMA, ESQUIRE
3       Maryland Office of the Attorney General
        200 Saint Paul Place
4       Baltimore, MD  21202
        (410)576-6446

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    P R O C E E D I N G S

2        (Court called to order.)

3            DEPUTY CLERK:  All rise.  The United States District

4    Court for the District of Maryland is now in session.  The

5    Honorable Theodore D. Chuang presiding.

6            THE COURT:  Thank you, everyone.  Please be seated.

7            DEPUTY CLERK:  The matter now pending before this

8    court is Civil Action Number TDC-24-2866, General Conference of

9    Seventh-Day Adventists, et al., versus Cleveland L. Horton II,

10   et al.  We are here today for the purpose of a motion for

11   preliminary injunction.

12       Counsel, please identify yourselves for the record.

13           MR. BAXTER:  Good morning, Your Honor.  Eric Baxter

14   on behalf of the plaintiffs, here with my colleagues Nick

15   Reaves and Todd McFarland.

16           THE COURT:  Okay.  Good morning -- good afternoon.

17           MR. SEGAL:  Good afternoon, Your Honor.  Joshua Segal

18   on behalf of the defendants, here with my colleague, Jeffrey

19   Luoma.

20           THE COURT:  Okay.  Good afternoon.

21       So we're here for a hearing on the pending motions, which

22   are a motion for preliminary injunction by the plaintiffs and a

23   motion to dismiss by the defense.  They are cross motions, but

24   I think the briefing began with the plaintiffs.  So we'll think

25   we'll start with them.
```

1      My general thought was -- I mean, there's a number of

2   issues here.  I don't usually set a firm time limit.  I usually

3   start off saying it may just be about 20 minutes a side, but it

4   usually will go longer, because I do have a number of

5   questions, and I'm not going to cut you off if we're still

6   working on questions that I have an interest in getting an

7   answer to.

8      So after we hear from the plaintiffs, we'll try to make

9   sure the defense gets equal time, if they need it or want it.

10     And then I will give -- I think I ordinarily give the

11   moving party a brief opportunity for rebuttal, unless the

12   timing has just gotten so unbalanced.  But technically, there's

13   a cross motion.  So maybe everybody will get a very quick

14   second round.  But don't count on too much for that.  Let's try

15   to get it out in the first round.

16     So why don't we start with the plaintiffs.

17     Mr. Baxter?

18         **MR. BAXTER:**  Thank you, Your Honor, and good

19   afternoon.  Eric Baxter on behalf of the plaintiffs.  May it

20   please the Court.

21     Your Honor, before March of 2021, I'm not aware of any

22   court anywhere ever holding that religious organizations could

23   be sued for religious hiring.  And that's because it's not

24   invidious discrimination.  It's common sense that religious

25   organizations want believers to help carry out their work.

```
 1        But in March 2021, the Washington Supreme Court ruled that

 2   some religious hiring by religious organizations violated its

 3   state's constitution.  And in August 2023, the Maryland Supreme

 4   Court followed.  Even though the Maryland Fair Employment

 5   Practices Act, or MFEPA, has explicitly protected religious

 6   hiring for 60 years with no problem, the Maryland court

 7   essentially reconstrued the law so that now almost every hiring

 8   decision by plaintiffs is open to a lawsuit over whether it

 9   directly furthers a core mission of the church.

10        THE COURT:  Can I just ask a history question?  Maybe

11   you know -- maybe I should know the answer, but when you say it

12   changed -- I mean, what was the status before?  Was there a

13   case that was overruled?  Was it just something that had never

14   been challenged?

15        MR. BAXTER:  Well, in Washington?

16        THE COURT:  No, in Maryland.

17        MR. BAXTER:  In Maryland?  In Maryland, the Montrose

18   decision by the Maryland then Court of Appeals, now Maryland

19   Supreme Court, had ruled when Montrose School here in

20   Montgomery County --

21        THE COURT:  Montrose Christian, yes.  Kevin Durant's

22   school.

23        MR. BAXTER:  Yes, yes.

24        Dismissed teachers who weren't Baptist.  Those teachers

25   sued, and the Court applying minist- -- church autonomy
```

1   doctrines that the church could not be -- or the school could
2   not be penalized for not retaining teachers who didn't adhere
3   to their faith.  That was under a Montgomery County regulation.
4   They said you could only restrict hiring to religion for your
5   religious activities.
6        And then the Maryland Supreme Court basically struck the
7   four religious activities provision saying that that would
8   violate the free exercise clause in church autonomy doctrines.
9   Now -- so that was -- that was the status quo.
10        And Maryland's law, for 60 years, has provided, very
11   broadly, that religious organizations can hire individuals of a
12   particular religion, and was recently added specifically to say
13   that included they were exempt from lawsuits for -- under
14   sexual orientation and gender identity discrimination.
15        And if you look at the *Doe* decision by the Maryland
16   Supreme Court, it essentially said that it just believed that
17   the Legislature would no longer believe that the exemption
18   should be that broad.  And on that ground, it essentially
19   rewrote the exemption -- the exemption.
20        Now, that's true even though most Maryland employers are
21   entirely exempt from MFEPA, even for the most invidious
22   discrimination, because they have fewer than 15 years.
23        Now U.S. Judge Mary Dimke in Washington has already ruled
24   and enjoined Washington's rewritten lobby because such unequal
25   treatment violates the free exercise clause.  That's the *Gospel*

1  *Union Mission of Yakima.*

2      **THE COURT:**  So maybe you can help me out, because --

3  I mean, I don't blame you for putting every possible theory on

4  paper that you could, but maybe you could perhaps prioritize

5  them.  Where do you think your arguments are the strongest to

6  focus on, particularly when you're asking for a preliminary

7  injunction?  You don't need to actually be able to succeed on

8  all theories, you only need one.  But you have to have one,

9  so -- in terms of likelihood.  So where is your -- which of

10  these is your best argument?

11      **MR. BAXTER:**  Yeah, I think our two main arguments are

12  church autonomy argument and our free exercise argument.

13      **THE COURT:**  And you're only actually seeking the

14  injunction on the first three, right?  Counts One, Two, and

15  Three.  Or among those options.

16      **MR. BAXTER:**  That's correct.

17      **THE COURT:**  Okay.  Go ahead.

18      **MR. BAXTER:**  Under the church autonomy doctrine, the

19  Supreme Court has recognized that religious hiring is, quote,

20  the very means by which a religious community defines itself.

21  That's the *Amos* decision by the United States Supreme Court.

22      And you think about here, Seventh-Day Adventists have

23  distinct beliefs around their beliefs in Jesus Christ, their

24  sabbath observance, their tithe pain, their health code, and

25  these beliefs define who they are as a religious organization.

1    And forcing them to hire, for example, individuals who may have

2    converted to Catholicism or to atheism, or who don't observe

3    the sabbath completely, changes the nature of the environment

4    they wish to create within their organization.

5         It also changes the message they want to send to other

6    members of the church, members of the church who are

7    sacrificing to pay tithes, for example, who may be struggling

8    in their own employment to find work that will honor their

9    Saturday sabbath observance.

10        And the message that it would send if -- if the church is

11   hiring individuals who don't even observe the sabbath, who

12   aren't even Seventh-Day Adventists, sends a message to members

13   the church is insincere about its religious beliefs.

14             **THE COURT:**  So can I ask -- this was one question,

15   and maybe you're getting to the area where I should ask it is,

16   are you saying that it is part of the Seventh-Day Adventists'

17   core beliefs, their doctrine, what have you, that to properly

18   exercise their religion -- or it would violate their beliefs to

19   hire someone who is not a member?  And if so, where does that

20   come from, that form of belief?

21        Or is it that they don't believe they can -- by

22   effectively requiring them to hire people who aren't, that

23   undermines their other -- their ability to exercise their

24   broader beliefs, and that's sort of interfering with their

25   beliefs, rather than being a belief?

1          Can you clarify which it is?

2              **MR. BAXTER:**  I think it's more of the latter, Your

3     Honor.

4          And under the church governance doctrine, both the Supreme

5     Court and the Fourth Circuit have defined it as the ability to

6     control your internal governance:  How you control your

7     membership, how you create your religious environment, the kind

8     of policies that you apply, how you discipline members.

9          Here, we know the Supreme Court held back in 1872 in the

10    *Bouldin v. Alexander* case that religious organizations'

11    decisions to, for example, discipline a member by

12    excommunicating them even from the church cannot be questioned

13    by a court.

14         It follows that churches can't be forced to hire people

15    that they would excommunicate from their church for the more

16    sensitive duties of actually carrying out the mission, setting

17    an example for the other followers.

18              **THE COURT:**  So on the church autonomy piece, though,

19    am I right, though, that ministerial exception is a subset of

20    that, or at least that was the theory under which it was

21    adopted.  And while I understand that's a different situation

22    where -- you're only asking for an exemption from religious

23    discrimination claims, I assume, not other forms, correct?

24              **MR. BAXTER:**  That is correct.

25              **THE COURT:**  Which is what the ministerial exception

1  provides, is an exemption from all discrimination claims.

2        **MR. BAXTER:**  Ministerial exception is much broader

3  and is limited to a very select set of individuals.

4    Now, defendants have argued that the ministerial exception

5  should be limited to that.  That's clearly not correct.  As

6  recently in *Our Lady of Guadalupe*, the Supreme Court held that

7  the ministerial exception is a, quote, component of the broader

8  ministerial doctrine.  And it talked about --

9        **THE COURT:**  Well, if that's the case, how come this

10  has never gotten beyond ministers for that purpose?  I mean, it

11  seems as if the church autonomy doctrine would cover all

12  employees, or something larger than ministers -- and, frankly,

13  some of these findings under the ministerial exception have

14  been people who you wouldn't call the minister or something.  I

15  mean, many of these teachers, and they fit within the

16  exception, but if the exception was as broad as you would like

17  it to be, why -- why wasn't it defined as sort of all employees

18  or everyone who is sort of significant, rather than -- minister

19  sounds like a quite narrow category, which includes people who

20  are teaching the faith.  And I think you're acknowledging not

21  everyone you're trying to cover through your proposal is

22  actually teaching the faith.

23        **MR. BAXTER:**  Well, your Honor, there are a lot --

24  there are a lot of cases that have held that -- have upheld

25  kind of hiring -- or termination or hiring based on religious

1    principles.  The real question is why are there no cases saying

2    that that's a violation of nondiscrimination law.

3        So for 60 years, almost every state in the nation has had

4    nondiscrimination laws, and almost all of them have -- or the

5    vast majority of them have exemptions specifically for

6    religious hiring.  Title VII has always included an exemption

7    for religious hiring.

8        **THE COURT:**  And has that always been interpreted to

9    cover everyone in the way that you're asking for here?

10        **MR. BAXTER:**  Well, when it was first adopted, it only

11    applied to the hiring of individuals of a particular religion

12    to carry out the religious activities of the organization.

13   That was in 1964.

14        By 1972, Congress recognized that was a problem and said

15   it's for any activities for reasons, if you look at the

16   legislative history, that they were concerned about impeding

17   upon the internal religious autonomy of these organizations.

18        And so courts have widely held that this extends down to

19   people -- to individuals who are outside of the ministerial

20   exception.  You can see that from the Court's *Amos* decision

21   back in the 1980s where this was a -- this was a building

22   engineer for the Church of Jesus Christ Latter-Day Saints who

23   was in charge of a gymnasium facility for -- that was open to

24   the community for exercising.  And the Court recognized that it

25   was vital, even in that circumstance, for -- in Justice

1    Brennan's opinion, vital for -- that only believers carry out

2    these activities.

3        So there was a substantial potential for chilling the

4    religious practice if religious organizations had to be looking

5    over their shoulder or considering with every position that

6    that position would be deemed sufficiently religious or

7    sufficiently important for the church to carry out.

8        **THE COURT:**  Was that case in your brief?  I'm looking

9    for the cite here.

10       **MR. BAXTER:**  Yes, I can give you the cite.  It's

11   *Presiding Bishop.*  It's in the index under *Presiding Bishop.*

12       **THE COURT:**  Okay.  I got you.  Okay.  Hold on a

13   second.

14       **MR. BAXTER:**  Well, I'm --

15       **THE COURT:**  Give it to me again because I'm not

16   finding it in the table.

17       **MR. BAXTER:**  Let me see if I've got it here.  I'm

18   pretty sure we've cited it a couple of times in there, but -- I

19   may have to give that to you, Your Honor.  Maybe one of my

20   colleagues can pull it up for me here.

21       But the other case that I think the Supreme Court goes --

22   the Supreme Court decision that goes to this issue is the

23   Supreme Court's ruling in *NLRB v. Catholic Bishop,* where the

24   NLRB wanted to organize -- thank you.  Yeah, the *Amos* case is

25   483 U.S. 327.

1          In *NLRB v. Catholic Bishop,* the NLRB wanted to organize

2    nonreligious teachers at religious schools, so they are talking

3    about PE teachers, math teachers.  And the Court said that

4    there was a significant risk that the First Amendment would be

5    infringed.  The very process of inquiring into these employment

6    decisions, the courts would have to ask, you know -- basically

7    the Court said every aspect of these teachers' work would be

8    infused with religious policies of the schools.

9          And the courts would have any question that the union

10   might want to get into would potentially infringe upon their

11   religious activities and beliefs.

12         Now, both of these -- now, neither of these cases directly

13   address the question, but they've both become the standard law

14   that's recognized in circuits around the country.

15         The D.C. circuit --

16              **THE COURT:**  For what principle?  How would you --

17              **MR. BAXTER:**  For the principle that this kind of --

18   that inquiring into the religious hiring practices of a

19   religious organization would violate the church autonomy

20   doctrine and principles of entanglement.

21         If you look at the *Great Falls* and *Duquesne* decisions, for

22   example, in the D.C. circuit, and the *NLRB,* in a number of

23   decisions have consistently resisted efforts to unionize

24   smaller and smaller subsets of employees at religious schools

25   on the ground that doing so would interfere with the religious

1   hiring practices of these organizations.

2        I think the *Bryce* decision out of the Tenth Circuit is the

3   other main decision in the circuit courts where the Court

4   addressed -- was facing defamation claims to individuals.  A

5   lesbian couple alleged defamation against the church based on

6   statements that the church had made in disagreement with their

7   lifestyle.

8        And the Court said even though one of them was a youth

9   minister, the other was not a member of the church or an

10  employee of the church, the Court held that notwithstanding

11  ministerial status, it didn't even look at that question, it

12  said that the church -- the broader church autonomy doctrine

13  protected the internal governance and decisions, discussions

14  that were --

15       **THE COURT:**  So that case was -- you're right that

16  that came up.  But it seemed to come up sort of saying, well --

17  I don't think that court said, look, you can't bring this kind

18  of claim, a sexual harassment claim.  They said that, well,

19  given the type -- the facts of your claim, it's going to

20  create -- cause us to have to wade into these issues, and that

21  was, I guess, fatal to that particular claim.

22       But I don't believe they suggested there was a broad rule

23  that -- you know, that the church autonomy notion prevents any

24  kind of claim.  It seemed to say that, well, sometimes it's

25  going to create an issue, and when that happens, you know, the

1    claim can't -- can't proceed.

2        So why didn't -- I mean, I think that's what it said.

3    But, I mean, again, if there was a broad principle, why

4    wouldn't it just say so, and just say, look, we don't need to

5    worry about the niceties, this is just -- you know, any kind of

6    an employment claim from a -- from an employee, you know, that

7    involves religion is going to fail.

8            **MR. BAXTER:**  Your Honor, we're not asking -- we're

9    not asking for broad immunity from claims.  The church and

10   organizations like it have always been subject to claims for

11   discrimination, for example, on the basis of race or sex.  And

12   all we're asking is a return to that rule.

13       If an employee can bring a claim on those grounds, if the

14   church has a religious reason, there's a dispute whether the

15   firing was based on a religious reason or a protected reason,

16   then there's a pretext analysis.  The --

17           **THE COURT:**  Actually, I think you're describing

18   something different than what I thought the brief was asking

19   for.  I thought what you were asking for was a rule that if

20   someone -- if the church wants to hire based on religion or

21   saying you have to be a member of our religion to be hired, you

22   could do that.  Basically, it's a matter of the Constitution,

23   because they have -- we're not interpreting the statute.

24   That's the State Supreme Court's decision, but we could say

25   that that interpretation violates the Constitution.

1          Now, what I hear you saying is you want to go beyond that

2     and say if someone brings a claim of race discrimination, sex

3     discrimination, disability discrimination, and you can kind of

4     explain that there's a religious reason for that, then the

5     claim fails.  Those are two different things.

6          **MR. BAXTER:**  No, I -- what I'm saying is, there's

7     always been a rule that individuals -- that religious

8     organizations can hire for religious reasons.  It's rarely been

9     tested because it happens all the time.  It's common sense that

10    religious organizations, just like any other advocacy or

11    ideological organization, would require its employees to

12    believe in what it's advocating.  That's especially true for

13    churches, which the Supreme Court has said are the

14    quintessential --

15         **THE COURT:**  But can you just clarify, which one is

16    it?  Are you just asking to say if we are going to require

17    everyone to be a Seventh-Day Adventist, you want that to be

18    deemed legal, is that all you're asking for?  Or are you also

19    asking for the ability to identify a religious reason that

20    would trump any other kind of discrimination claim, even though

21    you've just said that churches are subject to other kinds of

22    discrimination claims other than for ministers?

23         **MR. BAXTER:**  Well, there's a variety of different

24    situations, right?  There's a situation where someone is fired

25    for a religious reason, or not hired, and they admit that it

1    was for a religious reason.  That would be protected by the

2    church autonomy doctrine.

3         There are other circumstances where a church fires someone

4    for a religious reason, the plaintiff claims that it was for a

5    different reason.  Those claims have always been allowed to go

6    forward.

7         The plaintiff, under standard employment nondiscrimination

8    law, has the burden to come up with evidence that there was a

9    nonreligious reason, and then the burden flips back to the

10   church to show that that was not -- that their religious reason

11   was not pretextual.  So we're just asking to have that same

12   rule in place like it always has been.

13        **THE COURT:**  Is there a case that lays out that -- as

14   you said, perhaps this doesn't really -- well, the scenario of

15   someone -- I mean, I thought this was easier than I thought it

16   was.  I thought it was just, you know, we want to hire people

17   of our religion; if you are, we can hire you.  If not, we

18   can't; you can't sue us for saying that, you know, you weren't

19   of this religion.

20        **MR. BAXTER:**  That's all we're asking for.

21        **THE COURT:**  Now -- well, no, now you're asking for

22   some sort of doctrine saying that the Constitution requires

23   that we have this sort of analysis where religion is a defense

24   to any kind of claim.  And I'm not sure that's the same thing.

25   It may, in practice, be the same thing in many instances, but I

18

1  think that's a little bit different.

2          **MR. BAXTER:**  We're not asking the Court --

3          **THE COURT:**  You know, for example, you've tried to

4  say that there's certain -- I think there's a very different

5  issue when you're trying to challenge what the statute says.

6  To me, that's about are you a member or are you not?

7      Now you're saying, well, you said something that our

8  belief system disagrees with, even though you're a member,

9  presumably, because maybe you've gotten through that first gate

10  point, and now we're going to fire you over that.  And I'm not

11  saying that that wouldn't be permissible, but I think that's

12  just a different question.  That's almost like saying we want

13  to extend the ministerial exception to everybody.

14      So I guess I'm concerned that there's a slippery slope

15  here, not just in general, but in this case as well.

16          **MR. BAXTER:**  Your Honor, that's already the law.

17  We're not asking this Court to rule on that or to change

18  anything about that.

19      There's always been a rule that, for example, if the

20  church hired an individual because -- she got pregnant and she

21  was unmarried, the church fired that individual, they can't

22  just say we have a religious reason and that's the end.

23      The plaintiff has the opportunity to show that, for

24  example, the church has not treated men who have engaged in

25  extramarital activity for the same reason.  That's the

1  standard -- that's the status quo that the law has always been.

2          **THE COURT:**  So we're back to just are you a member or

3  are you not?

4          **MR. BAXTER:**  We're not asking -- even -- I thought

5  you would ask what would happen in that type of situation.  And

6  my point is, we're not asking for a different rule than has

7  always been the rule.

8      We're just saying now the Maryland Supreme Court has

9  interpreted the law to say that you can't even advertise for

10 religious -- you know, for religious compliance.  You can't

11 hire or fire for religion compliance.  You can't have

12 enforcement activities based on religious noncompliance.  And

13 that's where we say the church autonomy doctrine protects that

14 specific type of hiring.

15         **THE COURT:**  Okay.  So let me ask a broader question.

16         **MR. BAXTER:**  We wouldn't be asking any other --

17         **THE COURT:**  Let me ask a broader question because I

18 think some of this is kind of connecting to this other issue.

19     Is your claim a facial challenge to the statute or an

20 as-applied challenge?

21         **MR. BAXTER:**  It's a facial challenge to the extent it

22 bars churches from hiring based on religion.

23         **THE COURT:**  So you understand that for a facial

24 challenge, basically if there's some scenario where it's

25 constitutional, it won't succeed?  And it seemed to me -- I

1   couldn't tell from the briefing, but I certainly thought, given
2   the belief system that you laid out, that there's sort of two
3   questions; one is as applied to this church, could there be a
4   problem constitutionally, and then there's also is there a
5   broader problem.  So you're saying -- you're taking on the
6   bigger problem of whether this is just unconstitutional
7   generally.

8           **MR. BAXTER:**  Let me restate that, Your Honor, because
9   I think -- I think whether it's a facial or an individual
10  challenge is really asking for the relief that's sought.  We
11  are only asking for relief that the law cannot be enforced
12  against the Seventh-Day Adventist Church.

13      My point is, we don't have an individual situation that
14  we're trying to -- we're saying that every application of the
15  law to our religious hiring would be unconstitutional.  And so
16  we're asking for the law, as interpreted by the Maryland
17  Supreme Court, to be enjoined as applied to our hiring
18  practices.

19          **THE COURT:**  So it is as applied?

20          **MR. BAXTER:**  That's correct.

21          **THE COURT:**  Okay.  Just want to make sure I
22  understood.

23      Okay.  I did want to ask you about the -- well, actually,
24  before we get to -- you've raised the free exercise issue, but
25  I want to ask you about the excessive entanglement argument in

1    Count Two.  I'll ask both sides this.

2        I am not certain where we are in the landscape on that

3    type of argument.  The *Rayburn* case, which you rely on, which

4    apparently was the same party that's here, too, although many

5    years ago, it raised this concept of excessive entanglement,

6    which, frankly, I'm not sure, practically, is that different

7    than your church autonomy argument.  I feel like it's

8    conceptually the same thing, even though the names come up in

9    different places.

10        But where that term came up seems to have been -- and

11    *Rayburn* specifically cites it out of the establishment clause

12    and the *Lemon* test, so it is different -- you're making some

13    kind of establishment-clause argument there.

14        And in the recent *Kennedy* case, they said the *Lemon* test

15    doesn't apply anymore.

16        So how are we to apply this argument when it appears as if

17    that argument doesn't exist as a concept anymore?  If you want

18    to do what you used to be able to do in the *Lemon* test, you're

19    now supposed to follow this historical analysis under *Kennedy.*

20        I'm not sure you need the argument because I think it's

21    very similar to the church autonomy argument, but is it

22    separate, and is it still a viable argument in light of what's

23    happened to *Lemon*?

24            **MR. BAXTER:**  Your Honor, I do think it's a separate

25    argument.  I agree that it's very closely tied into the church

autonomy doctrine.

The Court has applied entanglement principles in many cases outside of the *Lemon* context, including in cases like *NLRB v. Catholic Bishop.* And so the concept is really a church autonomy, the church -- there's a sphere of independence where the government cannot intrude into the decision-making.

And the court, for example, in *NLRB v. Chicago Bishop* [sic] said the very profits of litigation on these issues is entangling because it requiring courts to delve into the importance or non-importance of different religious beliefs imposed by the religious organization.

**THE COURT:** So *NLRB* is your best case on that, not *Rayburn*? Well, *Rayburn* -- *Rayburn* brought it out of the *Lemon* test, so that's what I'm troubled by, because, you know, they said that, you know -- I think one of the recent cases said that, you know, the district court applied the *Lemon* test, and that was totally wrong and start over again. And so I don't see a reason to keep down that road unless we need to.

And I guess my second question on that is, when you say -- I mean, is your entanglement argument establishment-clause argument or a free-exercise argument?

**MR. BAXTER:** It's a combination of both, as it is in the ministerial exception context. The Court said it leans on both.

**THE COURT:** Well, the ministerial exception relies on

```
1   church autonomy, which relies on both.

2        So, again, I guess -- I'm just trying to streamline this

3   process.  I'm not sure why you even need that.

4        But to the extent you do, the only place I see that term

5   tracing back to is Lemon.  But you're saying NLRB has it

6   freestanding and not derived from Lemon?

7             MR. BAXTER:  I don't believe the Court cites Lemon in

8   that case; I'm not a hundred percent certain, Your Honor.  But

9   I know courts have continued to view entanglement as a distinct

10  principle just simply for the basis that it interferes in the

11  ability of religious organizations to --

12            THE COURT:  Well -- but in Lemon, it wasn't

13  sufficient by itself to find something to violate the

14  establishment clause.

15            MR. BAXTER:  Sure.  If the Court is not comfortable

16  entering that path, then I think you're right, we don't need

17  that as an independent grounds.

18       And if I could turn to the free-exercise clause, Your

19  Honor.

20            THE COURT:  Sure.

21       So on that one, you mentioned these exceptions.  And I'm

22  curious.  I mean, I see the logic in the argument.  You got the

23  15 employees, you have the seniority systems and so forth.  I

24  think the other side's argument was, well, these are

25  exceptions, but they are open to both religious and
```

1  nonreligious activities.  You could have a smaller religious

2  institution of 15 or less and they have no issues.  You could

3  have a church that has a seniority system, and they would be

4  able to take advantage of that.

5      So I'm not sure the law is clear on this, because this

6  whole area, I think, goes back to *Tandon.*  It's not that far

7  back in the past.

8      But is there anything that helps to elucidate what you do

9  with an exception that is available to both secular and

10  nonsecular activities, whereas the issue in *Tandon,* I think,

11  was there was some activities that were clearly secular and

12  were favored over religious activities.

13          **MR. BAXTER:**  And I think that *Tandon* is one of the

14  best cases that explains it.  The Court has addressed this

15  issue four times in the last five years.

16          **THE COURT:**  Uh-huh.

17          **MR. BAXTER:**  In the *Dioceses of Brooklyn* case, in

18  *Kennedy v. Bremerton,* in *Fulton v. City of Philadelphia*, and in

19  *Tandon.*

20      And in *Tandon* in particular, the Court specified that what

21  you're looking at is not the superficial labels that the

22  government places on different activities, but you look at what

23  is the underlying interest that the government is trying to

24  assert.

25      Here, it's an interest in nondiscrimination.

1      And the Court allows discrimination for -- for employers

2  who have fewer than 15 employees, which covers more than --

3  around 80 percent of the employees in the state of Maryland.

4  All of these other exceptions, it said it's okay to

5  discriminate in these contexts.

6      And the Court said you can't then say, well, you -- you

7  can't deny the same kind of an exemption for religious

8  organizations.

9      And in *Tandon,* the Court said it doesn't even matter if

10 some secular organizations are treated the same as religious

11 organizations, it's that the fact that the Court is not

12 applying its interest evenly.  It's choosing -- it's picking

13 and choosing where it will apply the interest, and that

14 triggers strict scrutiny.

15         **THE COURT:**  So even though any religious entity with

16 15 or less people is exempt under that same provision, you're

17 trying to argue that the mere fact that they have created that

18 exemption for small businesses or small entities -- and I don't

19 think anyone is arguing that's an antireligion exemption, are

20 you -- you're not trying to argue that, right?

21         **MR. BAXTER:**  You don't have to say it's antireligion.

22         **THE COURT:**  I know.  But -- but you do -- well, at

23 least as I read *Tandon,* maybe you can tell me which of these

24 other cases is more clear on this point, I read it to say that

25 it was secular activities versus religious.

1        So where does it say that even if it's a neutral

2   exception, and I think the 15 or less is a perfect example,

3   that could apply to any kind of entity, that that, in and of

4   itself, moves us into strict scrutiny?  Once you allow anyone

5   out of a hundred percent of the universe to not be covered by

6   this, then we're in strict scrutiny land?

7            **MR. BAXTER:**  I think *Tandon* itself emphasizes that by

8   saying that it doesn't matter if some secular organizations are

9   treated the same as the religious organizations.  The question

10  is, is --

11           **THE COURT:**  But these aren't secular organizations.

12  These are -- these very well could be religious.  I mean, maybe

13  not yours, you have a very large --

14           **MR. BAXTER:**  Right.

15           **THE COURT:**  But you could have a sub-entity that has

16  15 or less, like an individual, you know, church, or, you know,

17  another group of a different background could have that.

18       So I guess you're asking for an interpretation of *Tandon*

19  to say that even if the rule applies to any religious or

20  nonreligious entity, and it doesn't not only favor something

21  that's secular, that we're -- I mean, I am not sure when you

22  would ever not be in strict scrutiny if that were the rule.

23  Because there's always an exception somewhere for something.

24           **MR. BAXTER:**  So far, the Supreme Court has always

25  found that there was something that would trigger -- in all of

1    those cases there would be something that triggered strict

2    scrutiny.  And that's because the government is showing that

3    its interest is not really so strong that it couldn't depart

4    from a for-religious organization.

5         That was what the Court said in the *Fulton v. City of*

6    *Philadelphia* case, that once the Court granted some exemptions,

7    it showed that its -- its argument that it could brook no

8    departure was undermined by having granted some exemption.

9              **THE COURT:**  Okay.  So I understand the argument, and

10   you're right, it does come down to what the cases say.  And I

11   can see the logic of that, whether it's 15 people, or this

12   union -- or rather, the seniority rule system.

13        But what about the bona fide occupational qualification

14   category, do you see that as a stronger or weaker argument than

15   what you're saying about these 15?  Because, you know, it's

16   framed differently in the statute.  And to me, that one isn't

17   really sort of creating an exception for either an individual

18   or a category.  To me, that's just defining what the -- whether

19   something is -- you know, the element of whether there is

20   discrimination or not, at least that's how I think of it.

21             **MR. BAXTER:**  Right.  And still -- I think that even

22   lies even more closely with the *Fulton v. City of Philadelphia*

23   where the Court said where there's any mechanism in the statute

24   that gives the government discretion to make an exception, that

25   also triggers strict scrutiny.  And --

28

1          **THE COURT:**  But how is that different from

2    saying if -- if we require a showing of intent to discriminate,

3    that there's obviously discretion as to whether someone decides

4    there's intent or not.  I mean, someone has to decide whether

5    you're discriminating because whether you have an animus, or

6    you're discriminating because you actually need someone in this

7    role who has a qualification.  To me, it's not that different

8    than having an intent requirement.

9          So you're saying that just because somebody has to make a

10   fact-finding, frankly, more likely a court in the end, on some

11   factual element, either that they intended to discriminate or

12   not, or this person -- this job can only be done by someone who

13   is of a certain background, which, therefore, frankly, means

14   there was no intentional discrimination, that just having,

15   basically, any elements means it's not covered?

16          **MR. BAXTER:**  And it doesn't mean that the church or

17   the religious organization always wins.  It just shows that the

18   government, there's enough there -- why is the government

19   exempting some activity or some groups and not religious

20   organizations?  There's enough there to say, well, let's ask

21   the government then to prove why it can't accommodate a

22   religious organization.

23          And so it's not a religion-wins-all provision.  It just

24   says once the government starts making exceptions, whether they

25   are categorical exceptions or discretionary exceptions, in

1 *Fulton,* the Court said it didn't even matter that the

2 government had never granted an exception.  The fact that it

3 had a mechanism for doing that was enough to then ask the

4 government to justify why it couldn't give an exemption for a

5 religious organization.  And that's all we're saying here.

6           **THE COURT:**  Sure.

7      So I understand, then -- I mean, I understand the

8 argument.  And am I right, though, you need that argument to

9 succeed, to succeed on free exercise?

10     Because if not, you're in the rational-basis land, and

11 you're not going to argue that you can win under that standard,

12 are you?

13          **MR. BAXTER:**  Well, I would argue that we could win

14 under rational basis because there's no invidiousness.  Hiring

15 for religion by a religious organization, it would be -- I

16 mean, this is -- it goes back to cases as early as the

17 *NCAAP v. Button* case, where the Supreme Court recognized that

18 hiring attorneys was expressive association because the

19 organization was devoted to a certain cause and needed

20 employees who would further the work of that organization.

21 This happens all the time in ideological organizations.  And it

22 would be irrational for a court to say that religious

23 organizations can't prefer believers to carry out the work of

24 the organization.

25     And that's why these cases have never -- have rarely

1  arisen.

2      And I think the bigger question is why can't the

3  government come up with any case showing that -- that religious

4  organizations can be forced to hire individuals who disagree

5  with their faith, who aren't members, who would -- who could

6  introduce dissent and, you know, violation of basic church

7  principles into an organization whose entire purpose is to

8  carry out these principles.

9      And so I think that's the bigger question in this case,

10  is, you know, where are those cases if there isn't this right

11  for religious organizations?  And it's just common sense.

12      So, yes, I would argue that we would win even under *Smith*

13  for a rational basis.

14          **THE COURT:**  Obviously harder, though, right?  I mean,

15  naturally.

16      Let me ask, you were talking about cases and whether the

17  government can find any -- the one area I was interested in

18  is -- and I know this isn't one of your preliminary injunction

19  arguments, it's really under the government's motion to

20  dismiss, but expressive association, I mean, it -- certainly

21  it's a right.

22      The question is, usually we're talking about questions of

23  who can be your members, who is going to be a member, who is

24  not going to be a member of either a -- could be a religious

25  organization, but also could be a -- in many cases, they are

1  nonreligious.

2      Here, we're talking about employees.  Do you have any

3  authority or cases that give examples under which sort of it's

4  extended not just to the idea of who are -- who are your

5  members of your association as opposed to employees?  I mean,

6  is there an example of that that you can point me to?

7          **MR. BAXTER:**  Yeah, the case I just mentioned, *NAACP*

8  *v. Button*, which is at 371 U.S. 415, where the Supreme Court

9  held that hiring associates for litigation, quote, may be the

10 most effective form of political association.

11     Every -- there are a number of -- I would point the Court

12 to the Second Circuit cases, *Slattery v. Hochul*, which we've

13 cited in our brief, and is found at 61 F.4th 278.  These were

14 religious pregnancy care centers.  And the Court held that

15 compared -- compelled hiring would affect in a significant way

16 the group's ability to advocate its viewpoints.  That was

17 sufficient in that case to overcome a motion to dismiss.

18     Just in January, in *CompassCare v. Hochul,* which is at 125

19 F.4th 49, the Second Circuit, again, said that -- denied or

20 overturned a dismissal on a motion to dismiss and remanded for

21 the church and a religious organization to be able to show that

22 they had a core mission and that it would be affected by the

23 law that prohibited employment decisions based on reproductive

24 health decisions.

25         **THE COURT:**  Sorry, say that again.  Employment

```
 1  decisions based on --
 2           MR. BAXTER:  So this is a New York law that prohibits
 3  discrimination on the basis of reproductive health decisions,
 4  so if an individual decided to use IVF or have an abortion.
 5       And these were religious organizations with religious
 6  beliefs against that.  And the Court said they had the right to
 7  prove that this was a part of their core mission, and that
 8  hiring individuals who didn't support that mission would --
 9  would impede their mission.
10           THE COURT:  So are those cases, Slattery, Compass,
11  Button, are those cases under this free -- expressive
12  association right --
13           MR. BAXTER:  Yes.
14           THE COURT:  -- or some other First Amendment vehicle?
15           MR. BAXTER:  These are free -- these are
16  expressive -- I mean, NAACP spoke broadly about speech and
17  expressive speech.
18           THE COURT:  Okay.
19           MR. BAXTER:  But Slattery and CompassCare are
20  specifically expressive association cases.  And both -- in both
21  those cases, there was a motion to dismiss granted at the
22  district court level and reversed by the Second Circuit.
23           THE COURT:  Okay.  So going back a little bit to the
24  as-applied versus facial, am I correct that -- do you see
25  any -- I mean, we have -- in addition to your motion for
```

1  preliminary injunction, we have a motion to dismiss.

2      And so obviously on a motion to dismiss, you take the

3  light -- the facts, you know, in the light most favorable to

4  the plaintiff.  But given that you're focused primarily on

5  whether your organizations can be -- can get the rule you're

6  focused on, do you see factual issues here that would lend --

7  you know, there would be a need either for discovery or actual

8  presentation of facts before a final decision is made?  Or is

9  it really just a legal question?

10         **MR. BAXTER:**  I think these are largely legal

11  questions.  I mean, the Court, I think, could rule for the

12  plaintiffs on legal grounds.  I think if it wanted to rule for

13  the defendants --

14         **THE COURT:**  Kind of in a -- sort of a facial kind of

15  way, just saying this would -- it doesn't really matter what

16  your individual situations are.  Right.

17         **MR. BAXTER:**  At the motion to dismiss stage.

18      But if -- I think on some of the claims, at least, the

19  plaintiffs would reserve the right to be able to introduce

20  evidence showing that the nature of their religious belief and

21  how it would be impacted if -- if they were not allowed to

22  engage in religious hiring.

23         **THE COURT:**  So being able to flesh out what's in the

24  complaint itself already if more detail was needed?

25         **MR. BAXTER:**  Correct.

1          **THE COURT:**  Okay.  So that might be an issue for a

2    motion to dismiss, is -- to the extent there might be a reason

3    to get those additional facts, you wouldn't dismiss, I would

4    assume, so -- okay.

5          Okay.  I think I may have co-opted most of the time, but I

6    think we've covered most of the issues that I had questions

7    about.

8          Is there anything that we didn't cover that you had meant

9    to offer up?

10          **MR. BAXTER:**  Your Honor, I could go through the other

11    claims on which the State has moved to dismiss, but I'm happy

12    to let them make their case and respond to it.  I think they

13    have failed to state -- explain the basis on which these counts

14    could be dismissed under any of them.  But, again, I'm happy to

15    let them make their case and respond on --

16          **THE COURT:**  Actually, one question I did have was, I

17    guess it could be under several of these claims, but I'm

18    thinking of it under expressive association and perhaps your

19    church autonomy theory.

20          One of your issues is, as you raised in the complaint, was

21    that there are -- you know, there's a certain way that the

22    church wants to have the workplace go, and so that's why

23    employees need to -- there's a code of conduct or -- certain

24    things you talked about that align obviously with the religious

25    values; you know, dress, use or nonuse of substances, things

1    like that.

2        Do you agree that under existing law, you could require

3    those things of people without -- whether they are called

4    religious or not, but just saying these are the ways we want to

5    run our workplace, and you could avoid hiring anybody who you

6    knew couldn't meet those requirements or at once working didn't

7    meet the requirements, so that it's not just -- I mean, do you

8    agree with that?

9        **MR. BAXTER:**  Like, we have a rule that we don't --

10   nobody works on Saturdays.  I don't think that that would work,

11   because the plaintiff could always claim that the reason for

12   that was the religious beliefs of the organization, and the

13   religious organization was penalizing the individual for not

14   following their religious beliefs.

15       So a health code violation, or a failure to observe the

16   sabbath, or not believing in --

17       **THE COURT:**  Well, let me give you a different

18   example.  This is the one I was more thinking about.  You know,

19   you -- thinking about drug use, thinking about the way you

20   dress.

21       You could, and you do in the handbook -- I mean, you could

22   say, look, as a condition of hiring, you got to live by these

23   rules, whether -- I mean, but you don't -- in terms of having

24   to dress a certain way, avoid using certain substances, things

25   like that.

1      Do you agree that you can enforce those rules against

2   anybody with or without this ruling that you're looking for?

3           **MR. BAXTER:**  I think some of them, for example,

4   courts have held, recognized that employers can have dress

5   codes while their employers -- employees are at work.

6      Individuals who work for religious organizations are

7   required to live by their religious beliefs whether they are at

8   work or not at work.  And I'm not sure that a court would

9   uphold a ruling applied in that context.

10          **THE COURT:**  So you're saying that --

11          **MR. BAXTER:**  Most of the rulings the churches are

12  concerned about are rules about sabbath observance, tithe pain,

13  belief in Jesus Christ and willingness to follow the teachings

14  of Jesus Christ.  And those are rules that you cannot impose on

15  your employees without triggering a potential --

16          **THE COURT:**  Okay.  So some of them you could.  Some

17  of them you could.  I would take the position you probably

18  could.  But you're saying some of them you could not, either if

19  you really conclude that it's necessary to have employees

20  follow these principles either outside the workplace or things

21  that really just --

22          **MR. BAXTER:**  Well, even within the workplace, for

23  example, the church would be required to accommodate other

24  religious beliefs.  They would be required to require a Muslim

25  who wanted a prayer room and prayer breaks at certain times.

1    They would have to -- you know, any other kind of accommodation

2    that any other employer would be required to give.

3          **THE COURT:**  I don't know.  I mean, like you just

4    said, there's this whole other area which we're not really

5    focused on here.

6        You said, well, the way the rules are right now, if we

7    have a religious reason for firing you, even though, you know,

8    you're claiming race discrimination or otherwise, we can do

9    that.  And so -- and I'm not as familiar with that, because I

10   don't think that was really a subject of briefing, but --

11         **MR. BAXTER:**  No, I want to be clear.  I've never said

12   the church can always just have cart blanche to prevail any

13   time it asserts a religious reason.  There's always -- that's

14   the pretext analysis, which courts have always said the

15   plaintiff has an opportunity to show that the church is

16   pretextual.

17       If there's a dispute about whether the religion is

18   religious or not, then that case can go to --

19         **THE COURT:**  But how is that different from now?  You

20   hire someone who is Muslim because -- I mean --

21         **MR. BAXTER:**  Right.

22         **THE COURT:**  Let's say you think you're required to by

23   the law, once -- you know, you're unable to get this ruling, so

24   then you hire someone who is Muslim, but then you have a rule

25   that says, again, you know, you can't do certain things, and

1  then this person says, well, I'm doing them because of my

2  religion, but you're saying, well, these go against our

3  beliefs --

4          **MR. BAXTER:**  Right.

5          **THE COURT:**  And so we're not getting rid of you

6  because of animus towards you, it's because you're not

7  following our beliefs.

8    I thought you said earlier that type of argument, if it

9  was genuine and wasn't a pretext, would be successful.

10         **MR. BAXTER:**  If the Court enjoins the law as it

11  currently exists.  As the law currently exists, the religious

12  organization doesn't have that religious protection.  It would

13  have to hire -- it couldn't discriminate in hiring against

14  Muslims.  And it would have to hire a Muslim.  Once it hired a

15  Muslim, it would be under an obligation under Title VII and the

16  state law to accommodate -- reasonably accommodate that

17  individual's religious beliefs.

18         And so it would not just be -- you know, this is another

19  example of how this completely changes the organization, how it

20  chooses to define itself and carry out its mission.  It's

21  absurd on its face, even under rational basis to say that a

22  church like -- a Christian church, for example, would have to

23  accommodate Muslims in its -- in carrying out its religious

24  mission.  And that's the problem with this law, is it imposes a

25  bar on religious hiring even though religious hiring is what

1    every religious organization does.

2            **THE COURT:**  Well, not necessarily.

3            **MR. BAXTER:**  Not a complete bar.  Not a complete bar.

4    But it opens every question -- every position, short of

5    ministerial exception, is now open to questions of whether that

6    position directly furthers a core mission of the church.

7            And what directly means, the Court says that could be

8    anything more than one step away from the direct action is no

9    longer direct.  It depends on the size of the organization.  It

10   depends on how the organization advises the position, how it --

11   who it intends to benefit through that position, how it

12   allocates funding for that position.

13           All of these questions are now questions for the jury,

14   even if the church sincerely believes -- the opinion says even

15   if the church sincerely believes that this position is

16   necessary to be carried out by a believer, that can be

17   questioned by a judge and overturned by a judge or a jury.

18           And so there is nothing that would protect a church from

19   having to hire people who totally -- and not just believe in

20   other faiths, but totally disagree with this mission and would

21   want to internally speak their voice in opposition to that

22   mission.

23           And every other -- every other ideological organization is

24   protected under the expressive association doctrine to hire

25   individuals who will actually carry out -- share and carry out

1   their mission.  And that's all we're asking for here, is to

2   return of the status quo before the Maryland Supreme Court

3   changed, reinterpreted the rule that would allow the

4   religious --

5          **THE COURT:**  What are you referring to when you say

6   every other expressive organization can do this and the

7   churches can, what were you referring to there?

8          **MR. BAXTER:**  What I'm referring to is that, for

9   example, like I mentioned, the NAACP is an advocacy

10   organization that has a particular mission, and in its hiring,

11   it can require its employees to sustain its mission.  It's not

12   required to hire, for example, white supremacists to carry out

13   its mission.  And --

14          **THE COURT:**  Okay.  I'm just wanting to understand

15   what the connection was to --

16          **MR. BAXTER:**  And there are lots of -- thousands of

17   ideological organizations that are nonreligious around the

18   country that are protected around the free speech and

19   expressive association doctrines to be able to hire in

20   accordance with their mission.

21     And the Maryland Supreme Court's ruling has placed a

22   special disability on religion saying they cannot make the same

23   kind of hiring decisions, and that's unconstitutional under the

24   church autonomy doctrine and under the free exercise clause.

25     And under the free exercise clause, the State cannot show

1  any compelling reason for that -- for that change in what the

2  law has been for the last 60 years.

3           **THE COURT:**  Okay.  I understand.  Thank you.

4       We'll go to Mr. Segal.

5           **MR. SEGAL:**  Thank you, Your Honor.  Joshua Segal on

6  behalf of the defendants.

7       I want to start, I guess, with church autonomy, if that's

8  okay.  And in the context of that church autonomy argument, I

9  sort of want to touch a little bit on the distinction between

10 as-applied and facial, and facial as to these particular

11 plaintiffs, really just to highlight how broad the argument is

12 that they are making, at least in their briefs.

13      Now, the argument they are making in their briefs, at

14 least, is that church autonomy requires that, as a

15 constitutional matter, any employment decision be protected as

16 long as it is rooted in religious belief.

17      Now, that may, of course, amount to a decision to hire

18 only co-religionists, a term the case law frequently uses.  But

19 certainly rooted in religious belief is not a term that in and

20 of itself would exclude, for instance, hiring or firing

21 somebody based on race because you believe that that is what

22 your religion requires.  And we do not generally question the

23 sincerity of religious beliefs.

24      The -- either there's some reference to the absence of

25 case law compelling religious organizations to hire people who

1  are not of their religion.  And I guess in response to that,

2  I'll say a few things.

3      One is -- I think one reason why you don't see case law

4  like that is because, as counsel on the other side correctly

5  pointed out, Title VII does, as a statutory matter, preserve,

6  for religious organizations, the ability to hire and fire based

7  on a preference for co-religionists.  And, of course, many, if

8  not most, employment discrimination cases end up arising under

9  Title VII.

10      **THE COURT:**  So I wasn't a hundred percent sure.  It

11  seemed like I would -- and both counsel agree with this, so,

12  you know, now it clearly says currently Title VII does protect

13  what the plaintiffs, I think, are asking for, at least on this

14  one point of hiring people of your own religion, right?

15      **MR. SEGAL:**  Yes.  I would say that as a statutory

16  matter, Title VII does protect, with respect to claims under

17  Title VII itself, decisions to --

18      **THE COURT:**  Right.

19      **MR. SEGAL:**  -- hire or fire based on whether somebody

20  is of the same religion as the hiring or firing organization.

21      I don't --

22      **THE COURT:**  And Maryland used to do the same thing,

23  you agree with that?

24      **MR. SEGAL:**  I -- there is at least an argument that

25  Maryland used to do the same thing.  I think an interesting

1    thing about the *Doe* decision is it doesn't really discuss

2    *Montrose*.  But, you know, regardless, we certainly agree with

3    the other side as to the fact that *Doe* is now indeed the law in

4    Maryland.

5              **THE COURT:**  Are there any other states that have this

6    situation where -- I guess we've heard about Washington, but

7    are there other states who have this situation where the state

8    law doesn't allow for the kind of religious hiring that Title

9    VII does, and so you might have the same scenario that we're in

10   now, where if someone is -- either has or will challenge it on

11   this grounds, do you know?

12             **MR. SEGAL:**  I'm not aware of others.

13             **THE COURT:**  Okay.  And -- okay.  So in terms of this

14   issue, then, is it correct, then, that there's just not a lot

15   on this specific issue because of Title VII and other laws that

16   just sort of made them unnecessary challenges in the past?

17             **MR. SEGAL:**  I think that's certainly a reasonable

18   explanation for why there isn't a whole lot on this specific

19   issue.

20        What there also isn't, however, and counsel on the other

21   side said, we have no case compelling religious organizations

22   to hire somebody who is not of their same religion, there is

23   also no case that we have found holding that religious

24   organizations categorically have a right to make all hiring and

25   firing decisions that they want as long as they are rooted in

1  religious belief as a constitutional matter.

2      And, you know, the other side certainly cites some cases

3  extending the church autonomy doctrine beyond the ministerial

4  exception to certain aspects of employment.

5      But I, at least, don't read those cases as conferring the

6  sort of broad right to make all hiring and firing decisions

7  that they want based on -- or as long as they are rooted in

8  religious belief.  I don't see those cases embracing that

9  principle so much as --

10         **THE COURT:**  So I may or may not -- I may agree with

11  you in part.

12      So the ministerial exception for people in that category,

13  they can do those things, right?

14         **MR. SEGAL:**  Absolutely, yes.

15         **THE COURT:**  And so that's a pretty clear area where

16  they can do that?

17         **MR. SEGAL:**  One hundred percent.

18         **THE COURT:**  Arguably, then, you could say, well -- if

19  it's so clear they can do that in that area, and the courts

20  have spent a lot of time defining that area, if you're outside

21  of that area, you can't do the same thing?

22         **MR. SEGAL:**  As a general matter, yes.  There may

23  be -- there may be edge cases.  For instance, the *Bryce* case

24  which is discussed in the briefing.

25         **THE COURT:**  Yeah, because as I said to your

1  counterpart, something came up in that case that put them in a

2  very difficult position about church doctrine.

3         **MR. SEGAL:**  Correct.  And protection for the ability

4  to speak about ecclesiastical matters within the organization

5  is very much at issue there.

6         **THE COURT:**  But if that's the case, though -- and

7  again, I think I agree with you up to that point, but I'm

8  pretty confident that the ministerial exception decisions, at

9  least most of them, at least the major ones, the -- the issue

10  was that someone was trying to enforce a provision of Title

11  VII, or the ADA, some statute that was not about religion.  It

12  was about disability, about sex, about age, something else, and

13  there really aren't -- I mean, it's not inconsistent with that

14  exception to say, well, there may be a category of -- a limited

15  window for just being able to hire people from your own

16  religion that isn't inconsistent with the ministerial

17  exception, because the ministerial exception covers those

18  situations when you're going beyond just hiring someone from

19  your religion.

20      You agree that that's not intellectually inconsistent?

21         **MR. SEGAL:**  I agree with you, Your Honor, there is --

22  there is certainly a way to set that up as intellectually

23  consistent.

24      I think it's -- the spirit of there being a ministerial

25  exception on one hand covering everything, and by everything,

1    that, of course, is shorthand for all reasons for

2    discrimination.  And on the other hand, this whole other

3    blanket exception for any hiring or firing decision rooted in

4    religious belief, I would say is inconsistent with at least the

5    care with which the Court -- the Supreme Court exercised in

6    delineating the scope of the ministerial exception.

7        You're absolutely right, Your Honor, that the Court

8    doesn't say categorically, like, and that's it for employment.

9        **THE COURT:**  But is there any case that says anything

10   that at least strongly suggests that this is the limit, or -- I

11   mean, I don't -- I'm not sure I found anything really clear on

12   that, but I want to ask if you think there's some case that

13   even indirectly suggests that you can't expand the universe

14   beyond the ministerial exception for this -- even on this issue

15   of religious hiring.

16       **MR. SEGAL:**  Well, I think we have some data points,

17   which are that in the cases that the other side has cited, and

18   again, they are what I would refer to, at least, as edge cases.

19   They are usually very specific things that led courts to invoke

20   the church autonomy doctrine.

21       For instance, in the *Garrick* case or the *Aparicio* case,

22   you have a plaintiff, who regardless of whether or not they are

23   a minister, is actually advocating publicly against the

24   religious organization's ordination or installation of only men

25   in leadership positions.  So it's essentially a protest against

1  ministerial hiring.

2      There's -- there's another case, the *Curay* case, where,

3  yes, the Court ultimately dismisses the claim on the basis of

4  church autonomy, but that's because what the Court is being

5  asked to do is compare the severity of different violations of

6  church doctrine.

7          **THE COURT:**  So you would agree, then, from those

8  cases, that church autonomy does expand beyond the ministerial

9  exception, at least in some places?  Because those places, as

10  you said, were not ministers or people in that category?

11          **MR. SEGAL:**  It may in certain very limited instances.

12  But, again, what they are asking for here is not an expansion

13  into any particular limited instance.  They are arguing that --

14  that categorically, the statute cannot be applied to them in

15  any of their -- what they refer to as mission --

16          **THE COURT:**  Well, you're saying -- I mean, this

17  depends on the answer to my first -- or my earlier question.  I

18  mean, if it's a facial challenge, yes, I agree with you.  But

19  if they are accepting it as an as-applied challenge, or at

20  least in the alternative, why couldn't there be a

21  determination, if you're concerned about blanket rules, saying,

22  just as they've identified, there are some times in which

23  church autonomy goes beyond a ministerial category can be at

24  issue when someone other than a minister, or legally defined

25  minister, is at issue?  And why couldn't they, as a matter of

1  fact, make the case that, at least pursuant to their own

2  sincere beliefs, the rule they are looking for, or something

3  close to it, applies as to them?

4       But that many religions don't take the same view of how to

5  operate.  There are many -- many religious institutions have

6  people of different faiths working in their institutions.  They

7  don't have a problem with this rule.

8       So does it really require a blanket rule?  Or could it

9  just be that this particular institution's specific beliefs

10  warrant an ex -- you know, show that the doctrine, just as in

11  those other cases, this is one of those cases where we're going

12  to be asked to dig into their beliefs, but we don't need to say

13  that applies across the board because in many instances it's

14  not an issue?

15            **MR. SEGAL:**  Well --

16            **THE COURT:**  What would be wrong with that, I guess?

17            **MR. SEGAL:**  Well, it seems like -- it seems an awful

18  lot like a blanket rule, at least to them -- at least as to

19  them.  Seems to me like it is a blanket rule at least as to

20  them.

21       You compare it to these cases -- and, again, I'm not sure

22  there have been employment-related cases beyond ministerial

23  exception in the Fourth Circuit, but even as to the

24  out-of-circuit cases they are citing, we're talking about an

25  employee here or there based on a very specific fact pattern.

1    And, frankly, I think to be able to -- to claim an

2  organization-wide exemption for hiring and firing decisions

3  based on -- or excuse me, rooted in religious belief would go

4  well beyond that.  And would, unfortunately, I think, create

5  all sorts of opportunities for mischief by organizations

6  claiming for -- for whatever purpose, that the decisions they

7  make are rooted in religious disbelief, regardless of whether

8  they are ministerial or not, and, thus, entitled to the

9  exception.

10    **THE COURT:**  Okay.  So let me ask you about -- let me

11  ask you the same question I asked Mr. Baxter about the

12  entanglement question.

13    I mean, they brought it up obviously in their complaint,

14  but you responded to it kind of following the same approach.

15    And I -- again, I'm trying to understand.  I'm not saying

16  that we can't do it, but I'm concerned because of how *Lemon* has

17  turned out.

18    Do you see a path by which we should be conducting that

19  analysis even after *Kennedy* and other cases that have

20  undermined *Lemon*?

21    **MR. SEGAL:**  So I think the state of establishment

22  clause law on this point is, as Your Honor's questions have

23  suggested, perhaps just a bit muddled.

24    As a practical matter, I think the entanglement questions

25  that they have raised fuse into some of the church autonomy

1    questions that they have raised.  There are certainly cases out

2    there talking about church autonomy as rooted in the desire for

3    courts not to become unduly entangled in religious

4    institutions' decisions.

5        I'm not sure that -- that I would necessarily frame it as

6    an entanglement claim so much as an establishment-clause claim.

7    In the end, though, I don't think it particularly matters for

8    purposes --

9            THE COURT:  So would you agree with me that -- and

10    again, I'm not saying I'm taking this position because I'm

11    still gathering information, but it's hard to see a world in

12    which the church autonomy claim fails but somehow this

13    entanglement theory succeeds.

14            MR. SEGAL:  I would agree with that.

15            THE COURT:  It feels as if they are very similar, and

16    maybe you can say -- well, I don't know.  But, I mean, that's

17    what I'm trying to determine, is how much daylight is there

18    between those theories, at least practically, even though,

19    obviously, they can cite to different language in different

20    cases.

21        Let me ask about free exercise then.

22            MR. SEGAL:  Sure.

23            THE COURT:  So Mr. Baxter has taken the view under

24    *Tandon* and others that really any kind of exception pretty much

25    moves us into strict scrutiny.  From your brief, I can tell you

1    disagree with that.

2        One of your arguments is the one I put in front of him

3    about, well, some of these actually are facially neutral

4    exceptions that actually would benefit religious organizations,

5    either ones that are 15 members or less, or ones that have a

6    seniority system, or what have you.

7        I get the logic of it.  Is there any authority supporting

8    that interpretation?

9            MR. SEGAL:  Sure, there's language in *Tandon* itself.

10   *Tandon* refers to the question of -- and this is a quote, and I

11   regret, Your Honor, that I don't have the pin cite in front of

12   me.  It is happily a very short decision.

13       The quote is whether they treat any comparable secular

14   activity more favorably than religious exercise, or whether,

15   this is another quote, secular activities are treated more

16   favorably than religious exercise.

17       Here, what is being treated, at least for purposes of

18   these motions -- and I'm not going to quarrel that it's

19   religious exercise.  What's being treated more favorably than

20   religious exercise is activity that could be religious or

21   secular as long as it meets specified statutory requirements,

22   whether that's 15 people or less, or bona fide seniority

23   system, or private membership club.

24           THE COURT:  Let me ask you about the private

25   membership club.

1      I think when I look on the spectrum, I see, as I mentioned

2  to Mr. Baxter, I see the bona fide occupational qualification

3  issue is a little bit different.  It feels like that's just

4  sort of part of the definition of whether there's a violation

5  or not, but I'm not sure I have a clear handle on that.

6      It's pretty clear to me that the 15 members or -- or,

7  again, I don't know what the rules are, legally, I think I have

8  to look at what Mr. Baxter has referenced.  That doesn't feel

9  as if it's really trying to disfavor a religion or even

10  actually does, even though -- except it might not need -- there

11  might not need to be intent.

12      The private membership one bothers me a little bit,

13  though.  That seems like it's saying these are clubs or

14  organizations that for whatever reason we're exempting out,

15  feels like it's in the same category of the hair salons and the

16  movie theaters.  It's a different kind of activity than

17  religious exercise.

18      And so that one feels different in terms of an exception.

19      **MR. SEGAL:**  So I think I disagree with that, Your

20  Honor, for -- for a couple of reasons.

21      Number one, just to be clear, we're talking about the

22  organization, not an activity.

23      But, also, I don't think there is -- one can very easily

24  envision secular private membership clubs, or religious private

25  membership clubs in a way that I don't think you can envision a

1    secular hair salon versus a religious hair salon.

2            THE COURT:  Maybe.  But, again, you could find other

3    activities, that whether for that scenario or others, where

4    it's both, but clearly it's typically a secular activity.

5        So, I mean, what do you do with some exception for book

6    stores where probably 95 percent of book stores are just

7    secular book stores, but there are some that have a religious

8    focus, maybe even a religious purpose.  Are you saying that

9    that would -- just the fact that there's one religious book

10   store out there would gut the whole exception -- or the whole

11   applicability of this exception?

12       Because my guess is most of the private membership clubs

13   are secular.  I can understand there might be some that come

14   around to religious purpose, but, I mean, a lot of that

15   activity is going to be in the category of the religious

16   organization, so -- I mean, is it really just the case that --

17   you know, if you can find one religious example of these other

18   activities, that it doesn't -- the theory doesn't work anymore?

19           MR. SEGAL:  I'm not sure if it's the case that if you

20   find one, but at least -- at least to my mind, there's certain

21   activities that you can look at and say these are totally

22   independent of whether -- these -- these activities are

23   activities that could not plausibly be religious.  Again,

24   like --

25           THE COURT:  So is that the standard, could not

1    plausibly be?

2             **MR. SEGAL:**  Well -- well, on some level, it might be

3    a bit of a you-know-it-when-you-see-it.  I think there's also a

4    meaningful distinction, though, between the examples given in

5    *Tandon,* which are very clearly tied to specific activities,

6    right?  What happens in a hair salon?  Well, you cut hair.

7    Versus private membership clubs, which could be doing any

8    number of things.  They could have dinners, they could be

9    having religious services.  There's -- there's no --

10            **THE COURT:**  Well, let me ask you this.  I mean, do we

11   need to look at the legislative history or the more specific

12   definitions of what those are?  Because, I mean -- I mean, do

13   you know why they put that exception in?  It seems to be -- you

14   know, the size issue seems pretty standard.  It's like we're

15   just trying not to burden these big, small organizations, maybe

16   it's associational, I'm not sure.

17            The seniority system and the bona fide occupational

18   qualification, to me, those are basically shorthand for saying,

19   look, if this is what's going on, it's not really intentional

20   discrimination, this is -- there's a reason for this, and it's

21   just a shortcut to get us there.

22            The private membership club just looks like you're trying

23   to help out those guys, for some reason.  And if that's the

24   case, why not help out the religious organizations?  I mean,

25   what is the purpose of that if not just to say we're going to

55

 1  cut you guys a break?

 2      **MR. SEGAL:**  So I'm not sure there's anything in this

 3  record right now suggesting what the precise purpose of the

 4  private membership club exception is.

 5      You know, there certainly are areas of antidiscrimination

 6  law.  And my guess is that there are very similar carve-outs in

 7  the context of federal law where certain things are carved out

 8  as effectively private.

 9      But, again, regardless of the exact reason why this is

10  placed in there, a private membership club can be a private

11  membership club that engages in all manner of different

12  activities.  The statute certainly doesn't limit the definition

13  or limit eligibility for the exception to participation in any

14  particular kind of activity.  And it really can, we

15  respectfully submit, be either religious or secular, unlike,

16  again, the hair salon where there's only one thing that you're

17  doing in that business, and that clearly is what was troubling

18  the Court so much.

19      **THE COURT:**  Okay.  I mean, again, I'll have to think

20  about this one, because I think you're -- I think you would

21  acknowledge that it doesn't -- it doesn't jump out as a clearly

22  secular activity, but it also -- or only secular activity, but

23  it also doesn't jump out as something that's commonly viewed as

24  equally likely to be religious or not.

25      I mean, it seems as if a lot of the religious activity

1  actually happens in the places that are on -- you know, covered

2  by the religious exception.  I mean, to some degree, the fact

3  that we have this category for religious exception implies that

4  someone thought these were separate; otherwise, why not just

5  let it all happen under the private membership club context?

6        **MR. SEGAL:**  Well, there's certainly overlap.  There's

7  another exception, for instance, for religious schools.  And

8  no -- and no doubt employees, or some of the employees covered

9  by that exception would also fall within the exception for

10 religious institutions.  That's the reason for all of us being

11 here today.

12       **THE COURT:**  Okay.  Well, okay.  So -- so if -- if

13 there is -- if any of these issues that they have raised

14 creates a problem for your side in the sense that something

15 like *Tandon* kicks in, you're still arguing that even under a

16 strict scrutiny standard, you would prevail, but maybe you can

17 articulate for me more clearly, what is the compelling State

18 interest here?  How is it narrowly tailored?  And is there any

19 authority that supports that decision even if it's by analogy

20 to this situation?

21       **MR. SEGAL:**  So the compelling State interest is the

22 interest in preventing discrimination on the basis of religion,

23 and we would submit that this is narrowly tailored to that

24 interest because it is, indeed, a prohibition on discrimination

25 on the basis of religion.

1        **THE COURT:**  And, again, I mean, obviously some of

2   these things might be in the eye of the beholder, but, I mean,

3   is there any -- have courts discussed this sort of issue,

4   particularly in the issue of -- in the category of

5   discrimination on the basis of religion?  Or how compelling is

6   this interest?  Or places in which that has trumped things

7   like, you know, freedom of expression, freedom of religion,

8   freedom of speech, something like that?

9        **MR. SEGAL:**  So there are certainly -- there are

10  certainly statements, and we quote them in our briefs, about

11  the interest in preventing discrimination being a compelling

12  interest.  But, obviously, we would very much prefer to not be

13  in the strict scrutiny world.

14       **THE COURT:**  Okay.  But you don't have a case that you

15  think at least illustrates how this would be a compelling

16  interest, even given the weighty issues on the other side of

17  the ledger?

18       **MR. SEGAL:**  So I don't think I have something that

19  specifically addresses that kind of balance.

20       **THE COURT:**  Okay.  I also wanted to ask about the

21  question I asked Mr. Baxter about, sort of how much of this is

22  a purely legal question, how much of this is factual.

23       You're asking for dismissal of all the counts, even -- I

24  mean, presumably assuming that there's no grant of the motion

25  on the preliminary injunction, but the -- usually you don't

1  dismiss if there are potential factual disputes.

2      I mean, so you're asking for dismissal basically accepting

3  as true everything the plaintiffs have said about their own

4  beliefs, and so you don't see a need for discovery or anything

5  like that?

6      Let's go with that.

7          MR. SEGAL:  Well, so -- so, yeah, certainly the

8  premise of our motion is that even taking all their factual

9  allegations as true, they haven't stated a claim.  I think if

10 Your Honor were to deny the motion to dismiss, there may well

11 be matters on which discovery would be warranted.  But I would

12 not envision it as a particularly discovery-heavy case.

13         THE COURT:  So you might just want to verify that

14 these are the beliefs, or if there's some nuance that you want

15 to try to see where things are, you might try to explore that,

16 but --

17         MR. SEGAL:  That's one possibility, certainly.

18         THE COURT:  Okay.  But for purposes of the motion,

19 I'm just supposed to assume this is all true, correct?

20         MR. SEGAL:  Yes.

21         THE COURT:  Okay.

22         MR. SEGAL:  Subject, of course, to the qualifications

23 set forth in cases like *Twombly* --

24         THE COURT:  Sure.

25         MR. SEGAL:  -- and *Iqbal*, which require plausibility.

1    But yes.

2              **THE COURT:**  Okay.  Are there -- actually, one other

3    question.  I think this bona fide occupational qualification

4    issue did arise.

5         Are you aware of anyone ever using that in a way to say

6    that there is a religious qualification for something, so --

7    certainly -- certainly seems to me that if a minister were

8    to -- again, we're getting into that land again, if someone

9    said we're hiring a minister, they need to be of this

10   particular faith, we have an exception for that; but even if we

11   didn't, it would probably be a bona fide occupational

12   qualification.

13        So, I mean, do you agree with that, or could be --

14             **MR. SEGAL:**  I think that would likely -- I think that

15   would likely be correct.

16        I think taking the point that Your Honor has just made a

17   little more broadly, I think that the existence of the

18   ministerial exception might make the bona fide occupational

19   qualification piece of the statute, which, of course, has

20   its -- has its corresponding provision in Title VII, less

21   relevant than it might otherwise be.

22        But the point that I just want to reinforce, though, with

23   respect to the bona fide occupational qualification, is that

24   unlike the exemption system in *Fulton,* which -- which is what

25   led the Supreme Court to hold that the City of Philadelphia's

provisions were unconstitutional, or at least that the

plaintiffs were entitled to an exemption, the bona fide

occupational qualification exception is not something that

anyone in Maryland state government can grant or deny.  It's,

you know, part of the case to the extent that the parties place

it in issue that would have to be determined ultimately by a

fact finder.

Again, it's very different from the *City of Philadelphia*

case, *City of Philadelphia v. Fulton,* where there was an actual

person in Philadelphia government to whom you could go and say

I would like an exemption from this requirement, and that

person would be empowered to grant it or not grant it.

**THE COURT:**  Okay.  Fair point.

I guess what I was trying to get at was whether that --

have you ever seen that applied outside the ministerial

context?  Because I think in theory, it could.  This is a

matter of statute, not constitutional.  And someone could say,

well, as maybe the plaintiffs here would say, well, you know,

for some of our jobs, maybe all, but certainly some of them,

they could identify that aren't ministers, we think this is a

qualification that's bona fide, and we're prepared to prove it

factually that under our specific circumstances, you know,

being of this religion is a bona fide occupational

qualification.

Have you ever seen that?  Or do you accept that that could

1    happen on a factual case-by-case basis?

2         **MR. SEGAL:**  Standing here today, I don't see any

3    obvious reason why an employer could not attempt to make that

4    argument as a factual matter.

5         I can't -- I am not sure that it's something that I have

6    seen done, however.

7         **THE COURT:**  Okay.  I'm not sure I have either.

8    But -- okay.

9         Now, again, I've covered some ground.  Are there things

10   that you wanted to raise that you haven't yet had the

11   opportunity to raise?

12        **MR. SEGAL:**  Yeah, just a couple of quick points.

13        One, there was some reliance on the *NLRB v. Catholic*

14   *Bishop* case, and as sort of the cornerstone of the church

15   autonomy doctrine.  And I just want to direct the Court's

16   attention, this is consistent with what I was saying earlier

17   about the doctrine to the extent that it goes beyond the

18   ministerial exception in the employment realm really is limited

19   to very specific circumstances.

20        The Court in that case was not opining on -- on whether or

21   not the NLRB, as a constitutional matter, could exercise

22   jurisdiction over religious organizations because they were

23   religious organizations.  It actually went out of its way to

24   emphasize -- and I'm just looking for the precise quote here.

25   I believe it is -- yeah, it's the critical and unique role of

1   the teacher in fulfilling the mission of a church-operated

2   school.

3        And then I recognize that there has not, to this point, I

4   think, been any discussion of the preliminary injunction

5   factors other than likelihood of success on the merits.  But,

6   you know, because we are the defendants, and the plaintiffs are

7   seeking a preliminary injunction, I guess I would just point

8   out that they have not pointed, in our view, to any harm that

9   is imminently likely as a result of the statute not being

10  enjoined in its application as to them.  They quote a fairly

11  inchoate, I would say, fear of liability.  But that is really

12  it.  They don't say that this fear of liability has led them to

13  do anything different.

14       Quite the contrary, their pleadings make clear that they

15  are, indeed, proceeding with the same mission-aligned hiring

16  practices that they have adhered to in the past.

17            **THE COURT:**  Okay.  But what about just the broad

18  concept which I think some cases support that a -- if there's a

19  likely constitutional violation, that may be enough at this

20  stage?

21            **MR. SEGAL:**  Well --

22            **THE COURT:**  If it's a First Amendment violation or

23  similar right.

24            **MR. SEGAL:**  Well, again, I -- in the normal case, you

25  are talking about a plaintiff who is being chilled from

1  undertaking some form of religious exercise or speech -- pick

2  your category of First Amendment right, I suppose.

3       And what they pleaded is that far from being chilled in --

4  in undertaking mission-aligned hiring practices, they are

5  continuing to do what they had previously done.

6       And -- and, again, the requirement in the Fourth Circuit

7  is that the harm be not only irreparable, and, you know, I

8  certainly grant the point that constitutional violations do

9  generally amount to irreparable harm, but it has to be imminent

10 and likely, and we respectfully submit that they have not made

11 that showing here.

12       **THE COURT:**  Well, is it -- is it the defendants'

13 position that -- or would they be willing to take the position

14 that they are not going to enforce this against the plaintiffs

15 during the pendency of the case?

16       **MR. SEGAL:**  We can't take that position here.

17       **THE COURT:**  Okay.  Okay.  Anything else?

18       **MR. SEGAL:**  Thank you, Your Honor.

19       **THE COURT:**  All right.  Thank you.

20       Mr. Baxter, I think overall we spent more time together,

21 but as I said, since at least on the preliminary injunction,

22 it's your motion, so if there's any one or two quick points you

23 want to respond to Mr. Segal on, we can discuss those.

24       **MR. BAXTER:**  Yes, Your Honor.  If I could just -- one

25 thing, as a matter of procedure, I wanted to clarify, that the

1   *NLRB* case does cite *Lemon*, but the *Everson* case from 1947, so

2   25 years before *Lemon*, cautions against entanglement, and the

3   Supreme Court has continued to caution against entanglement in

4   cases like *Carson v. Makin*, which were decided after the shift

5   in the establishment clause.

6        I would just like to hit a couple of arguments, Your

7   Honor.  One, I think the *Tandon* decision itself describes how

8   this Court should do the analysis.  It says if there is, quote,

9   any, and it's italicized by the Court, any comparable secular

10  activity more favorable than religious exercise, it triggers

11  strict scrutiny, it is no answer that a state treats some

12  comparable secular businesses or other activities as poorly as

13  or even less favorably than the religious exercise at issue.

14       The question is, is the Court's application of its

15  interest generally neutral and generally applicable.

16       If it's not, it doesn't mean the religious plaintiff

17  always wins, but it means that the government has to show why

18  it can give some -- a bunch of exceptions, exceptions that

19  allow the most invidious type of discrimination for most -- 80

20  percent of employees in the state of Maryland, but it can't

21  allow a religious organization to engage in religious hiring.

22       As far as strict scrutiny on that point, there's no way

23  that they can satisfy that there is a compelling reason to

24  stopping religious organizations from engaging in religious

25  hiring.  That's what religious organizations and other

1  ideological organizations do.  There's nothing invidious about

2  religious organizations doing religious hiring.

3          **THE COURT:**  Can I just clarify, maybe this is

4  connected or not, but I'm looking back at the language of --

5  let me see if I can find the exact language here.

6      I'm not finding it.  Hold on one second here.

7      Okay.  I'm having trouble finding it.  Go ahead with your

8  next point.

9          **MR. BAXTER:**  Yes, Your Honor.  I just also wanted to

10  make -- so again, no compelling interest for an action that's

11  not invidious.  There's a history, 60 years, in Maryland,

12  expressly allowed it.  Before that, there was no prohibition

13  against religious hiring.  So since the founding of our nation,

14  religious organizations have been allowed to engage in

15  religious hiring.  There's nothing invidious about that that

16  could justify a compelling government interest in overriding

17  it.

18      The government has also made the argument that we're

19  asking for very broad relief that would allow for all kinds of

20  discrimination.  We're not asking for that.  All we're asking

21  for, very narrowly, if it would just allow the law as it's

22  always existed to be applied to us so it would allow us to

23  engage in religious hiring.

24      They may be nitpicking at things we've said in our brief,

25  but our proposed order, our request for relief are all just

1    focused on allowing us to engage in religious hiring.

2        And all of the prior types of claims that could have been

3    brought under the old law would still be able to be brought.

4    We're not asking for some kind of dramatic relief that would

5    change the scope of what religious organizations have always

6    been allowed to do.

7        Finally, on the harm argument, the government is confusing

8    standards here.  They are trying to bring a standing argument

9    into this irreparable harm.  There's not a single case -- I

10    couldn't find -- none of the cases they cited, I couldn't find

11    a single case where a court has found a likelihood of success

12    on the merits on a constitutional claim, and done anything but

13    say that irreparable harm automatically follows.

14        There may be cases where there's a laches defense, or

15    where there's been prejudice to the other side, none of which

16    has been alleged here.

17        But there's nothing -- in fact, if you look at the *Yakima*

18    decision where the Western District of -- or the Eastern

19    District of Washington was addressing, you know, almost the

20    exact same type of claim, the Court said that the fact that

21    the -- that the organization was committed to continuing its

22    hiring practice satisfied the first prong of an injury because

23    in a pre-enforcement context, under the *Susan B. Anthony*

24    decision, the first decision is you have to show that you're

25    likely to engage in activity that is affected by a

1  constitutional interest.

2      And the Court said that when you said I'm going to keep

3  doing what I've always been doing, that that actually helps

4  satisfy the injury prong in a pre-enforcement context.

5      And here, there's no question the government has

6  refused -- you know, the courts have also said consistently

7  that a refusal to disavow enforcement is indicative.

8      The Attorney General has made numerous statements

9  including filing an amicus brief between public statements,

10 saying they intend to enforce the law.  And they are currently.

11 The Commission has indicated every year, it looks at postings

12 to see if they are in violation of the law.

13     The -- I would also just point Your Honor --

14         **THE COURT:**  Can I just ask, as a practical matter, I

15 know it's a very large organization, but in Maryland, which is

16 where I assume the defendants would try to enforce this, how

17 many -- how many positions would you normally post in a given

18 year that are in Maryland?

19         **MR. BAXTER:**  I mean, Maryland is the world

20 headquarters for the Seventh-Day Adventist Church, so I don't

21 know how many postings there are in a year, but it's -- a huge

22 number of its employees live and work in Maryland.

23     I would point Your Honor to the *Bryant v. Woodall* decision

24 in the Fourth Circuit, which is 1 F.4th 280, 285, which

25 addressed a similar pre-enforcement issue.  And a law that

1   hadn't been enforced for nearly 50 years, but there was an

2   amendment to the law, and the Court said so long as the threat

3   was not imaginary or wholly speculative, that was sufficient.

4        If laws under a -- recent typically present a credible

5   threat, the Court presumes that a legislature, or here, the

6   Maryland Supreme Court, would not have enacted a law with the

7   intent that it would not be enforced.

8        So all of these, I think those are standing principles

9   which they haven't even questioned standing.

10       On the question of irreparable harm, there's not a single

11  case that would -- that would suggest that the Court could find

12  anything but irreparable harm has happened if there's

13  likelihood of success on the merits, which we -- which I think

14  that we have shown.

15       Just in closing, Your Honor, this is about a religious

16  organization's ability to hire people who believe its faith to

17  carry out its tradition.  And to be able to say we're not going

18  to hire atheists or Muslims or others who don't believe in our

19  faith -- their whole purpose is to propagate their faith and to

20  set an example of why they believe their teachings will bless

21  their followers.

22       And if they are forced to change their very -- the Supreme

23  Court in *Amos* said it's how they define their character by who

24  they hire.

25       And forcing courts [sic] to hire individuals who do not

1  belong to their faith and accommodate even their other

2  religious practices would violate both the church autonomy case

3  doctrine and the free exercise --

4          **THE COURT:**  You just said something that goes back to

5  the question I was going to say.  I just want to be very, very

6  clear about what you're asking for here.

7          You said -- and you -- you shouldn't force them to hire

8  individuals who do not believe in their faith, and

9  accommodating their other religious practices.  So it's that

10  second part I'm not sure I understand what -- what are you --

11  what aspect of a ruling are you looking for in that?

12         So as I understand it, I mean, we're just looking at the

13  language of MFEPA.  You're saying it's unconstitutional.

14         And in particular, it's the interpretation of, you know,

15  work connected with the activities of the religious entity as

16  meaning anything other than all activities.  And I think that's

17  what the statutory prong you're concerned about is.

18         But the language says, you know, it does not apply to a

19  religious corporation, association, educational institution or

20  society with respect to the employment of individuals of a

21  particular religion, sexual orientation, gender identity or

22  military status to perform work connected with the activities

23  of the religious organization -- religious entity.

24         Now, you're just arguing -- we're not trying to rewrite

25  the interpretation of the statute.  You're just trying to say

1  whatever they've said now is unconstitutional as to the

2  religious piece.

3      So first question is, you're not asking for a ruling that

4  it's unconstitutional as to the ability of a religious

5  corporation to -- with respect to employment of people of a

6  particular sexual orientation, gender identity or military

7  status, or are you?

8      Because the particular religion part, hiring people of

9  your own religion, is what I thought this case was about.  Are

10 you also saying that you want to say it's unconstitutional to

11 interpret this in a way that allows -- that does not allow

12 religious corporations to discriminate on the basis of sexual

13 orientation, gender identity or military status?

14         **MR. BAXTER:**  So yeah, I'm glad you asked, Your Honor.

15     The religious exemption, as it's written, nobody is

16 challenging as it's written.  And even the Maryland Supreme

17 Court acknowledges that in many instances, religious

18 organizations would be exempt from the nondiscrimination law

19 entirely even if for some non-ministerial positions --

20         **THE COURT:**  Right.

21         **MR. BAXTER:**  -- even when it comes to hiring and

22 firing on the basis of religion, sexual orientation or gender

23 identity.

24     What the Maryland Supreme Court has -- what we're

25 challenging is the Maryland Supreme Court's gloss on that rule,

1   which says that the exemption doesn't apply at all for some

2   category of employees of the church.

3                **THE COURT:**  Right.

4                **MR. BAXTER:**  And for that category, the church would

5   be -- that means if the exemption doesn't apply, then religious

6   organizations have two obligations that are placed on them.

7   They can't discriminate in their hirings, so their postings,

8   their hirings, their firings, on any of the protected

9   categories.

10      If -- and second, they have to -- there's also obligations

11  under Maryland law that they have to accommodate people, you

12  know -- within reason, they -- they have to accommodate --

13               **THE COURT:**  So just tell me yes or no, are you trying

14  to say that -- because, again, the language obviously applies

15  to all four categories, but your constitutional challenge

16  doesn't have to apply to everything.

17      You could say, like, we're challenging the fact that we're

18  not allowed to discriminate on the basis of a particular

19  religion, which is what I thought you were saying.

20               **MR. BAXTER:**  Not --

21               **THE COURT:**  Are you also saying we also want to be

22  able to discriminate on those other three bases, too, as a

23  matter of the First Amendment?

24               **MR. BAXTER:**  I think -- those -- those -- the

25  language you're reading is what we are allowed to -- we already

1    are allowed.  That is the exemption for religious

2    organizations.  Religious organizations can base hiring on

3    religion --

4              **THE COURT:**  For people who are not in that last

5    category of workers.  Your argument is about that last category

6    of workers.

7              **MR. BAXTER:**  Right, then they don't have any

8    protections, they don't have any exemptions.

9              **THE COURT:**  Right.  And you want to basically get a

10   protection back via the Constitution, right?  Via the First

11   Amendment to say that their interpretation cannot be reconciled

12   with the Constitution, I thought, as to the part that relates

13   to the particular religion?

14             **MR. BAXTER:**  Right.  We're asking -- we're saying --

15             **THE COURT:**  And that's all I thought this case was

16   about.  And if it's about more than that, I want to know that.

17             **MR. BAXTER:**  Well, let me -- let me try to be clear

18   on this, because there are some categories where there's a

19   dispute about whether it's religion or something else.

20        So, for example, if an individual -- if a church does not

21   hire on the basis of sexual orientation or gender identity for

22   religious reasons, and -- and the -- and the church says, I

23   fire you for this reason, and the employee agrees, I was fired

24   for that reason, and that's a religious belief of the

25   organization.

1          **THE COURT:**  Well, okay.  So you're saying you want

2   the whole thing, is what you're saying?

3          **MR. BAXTER:**  If -- if there is a sincere religious

4   reason.  Not -- there's not always a sincere --

5          **THE COURT:**  But this statute doesn't say that.  It

6   doesn't say you're exempt if -- it's respect to employment

7   of -- employment based on religious belief of -- it says it's

8   based on the employment of individuals of a particular

9   religion.

10      Obviously, there may be other protections including

11  constitutional arguments that you can make.  I'm just asking,

12  what is the argument in this case?

13         **MR. BAXTER:**  Right.  So as written, the religious

14  organization -- or the exemption -- let's say a religious

15  organization has no objection to hiring on the basis of sexual

16  orientation or gender identity.  The exemption as written still

17  exempts them.

18         **THE COURT:**  Not for every category of worker, though.

19         **MR. BAXTER:**  Right.  For that limited category.

20      No, it -- no, it does -- I'm sorry, it does for every

21  category.  As written, it allows for every category.

22         **THE COURT:**  I'm not sure that's right.  It says -- it

23  says to perform work connected with the activities of the

24  religious entity.  That same phrase that is troublesome for

25  purposes of the religious hiring of a particular religion

1  applies to all four of those, doesn't it?

2       **MR. BAXTER:**  That phrase is not at issue

3  here because -- I'm sorry, can you just read that -- it says

4  the activities, whether they are religious or not.

5       **THE COURT:**  The subtitle does not apply, I'm assuming

6  that is like this entire statute, does not apply to a religious

7  corporation, association, educational institution or society

8  with respect to the employment of individuals of a particular

9  religion, sexual orientation, gender identity or military

10 status to perform work connected with the activities of the

11 religious entity.

12      **MR. BAXTER:**  Right.  And it used to be of the

13 secular -- or the religious activities, and then that was

14 removed.  So now it's any activities of the religious

15 organization.

16      So as written, the -- the religious exemption is already

17 broader than it needs to be to protect religious entities,

18 because there may be some religious entities that don't have a

19 religious objection to hiring on the basis of sexual

20 orientation but they are exempt from that category, which is

21 another example of how this law is not being -- why would those

22 churches be exempt, but -- but the Seventh-Day Adventist Church

23 can't have an exemption for religious hiring?

24      **THE COURT:**  Let me -- let me frame it a different

25 way, because, again, as I read the language of this, what the

1  exemption for is when you're talking about employment of people

2  of a particular religion, basically saying you can hire people

3  only of your religion.  And I thought that's what this case was

4  about.  Or you could hire people only of a particular sexual

5  orientation, gender identity or military status, again, and you

6  can do that with the exception of this -- in this work not

7  connected with the activities, whatever that means, but it's a

8  non-zero category, according to the Maryland Supreme Court.

9  So --

10        **MR. BAXTER:**  It says or --

11        **THE COURT:**  So it seems like what you're trying to

12  argue for here, is that if I rule in your favor, not only can

13  you choose to hire people of a certain religion, but then even

14  for that very far-out category of people who are not ministers,

15  not in the middle category of people who are connected with the

16  activities of the entity, but also just for everybody in that

17  other category, that you can also -- it's not just about hiring

18  of a particular -- of people of a particular religion and being

19  of that religion, but it's also just for pretty much anything

20  that you can connect back to your religion, you can take

21  employment actions based on that, even if they interfere with

22  one of these other categories.

23        **MR. BAXTER:**  Right.  That's been the --

24        **THE COURT:**  Like Mr. Segal's point of saying, well,

25  it's not just about hiring a particular religion, it's if our

1    belief is that our religion doesn't allow us to interact with

2    people of a certain race, religion -- race or other religion or

3    category, we can do that.

4             **MR. BAXTER:**  So there's -- race is different for a

5    couple of reasons.  One, there are other laws, for example,

6    Section 1981, which prohibit discrimination on the basis of

7    race and contracting, which includes hiring, for any reason

8    with no exception.  So there's a neutral and generally

9    applicable law that wouldn't trigger strict scrutiny in that

10   context.

11        And the Supreme Court has -- and there's the *Bob Jones*

12   decision where the Court said that racial discrimination can

13   even override a religious -- upheld the IRS stripping the tax

14   exempt status of Bob Jones University because of its beliefs

15   that a student shouldn't engage in interracial dating or

16   marriage.

17        And so there's -- and that's based -- the Court has

18   emphasized that race is different because of our history with

19   race in the United States, the Fourteenth Amendment and other

20   constitutional provisions.

21             **THE COURT:**  Let me just clarify that.

22        I mean, what you're saying, though, is if I rule in your

23   favor, either what you're asking for or whatever the ruling is,

24   you'll interpret it as saying that not only are -- should we be

25   allowed to hire anybody -- should we be allowed to have a

1  policy that we can only hire people who are officially members

2  of the Seventh-Day Adventist Church, but we can also make

3  decisions as to people of any other category, except maybe

4  race, based on our own religious beliefs for all categories of

5  people, that that's how you're going to read the ruling?

6      **MR. BAXTER:**  That is the law that the Maryland

7  Legislature passed, and is the law that is upheld by the

8  Maryland Supreme Court, except for a tiny category of people

9  that it's going to decide which ones fall into and which don't.

10 It's been the law forever.

11     The religious organizations, under Title VII, if they

12 have -- they have to have a sincere religious reason; it has to

13 be religious, it has to be sincere, and it has to be

14 non-pretextual.

15     **THE COURT:**  This doesn't say a religious reason.

16 This says a particular religion.  So it's -- this doesn't say,

17 you know, based on religious belief or based on the beliefs of

18 the person.  It says individuals of a particular religion.

19     So I'm not sure if you're referring to exactly how this

20 particular phrasing has been interpreted --

21     **MR. BAXTER:**  For religion --

22     **THE COURT:**  -- or whether you're talking about just

23 generally how they handled, you know, religious discrimination

24 claims or claims that, you know, might implicate things that

25 involve religion more generally.  I'm not sure what you're

1  referring to.

2  **MR. BAXTER:**  So, for example, the Title VII

3  exemption, which this was based on, defines religion as any

4  particular belief, practice -- I can't remember the exact

5  phrase, belief, practice.

6  But it does include -- so like it does include if someone

7  doesn't believe what you believe, if you are a religious -- a

8  Christian organization, you don't have to hire Muslims.  If you

9  are a Christian organization that requires your employees to

10 obey the sabbath, you can refuse to hire even members of your

11 own faith if they are not obeying the sabbath.

12 So it's practice or belief.  That's what the law has

13 always been in the United States, and continues to be under

14 this law, and -- and is an issue 80 percent --

15 **THE COURT:**  Which case lays that out more

16 specifically in terms of the Maryland -- the way Maryland has

17 looked at this?  Maybe I can get my -- my understanding through

18 that.

19 **MR. BAXTER:**  I think let's look first at the fact

20 that the Maryland exemption says 80 percent of employees in

21 Maryland aren't protected against racial discrimination.  So

22 the law --

23 **THE COURT:**  No, no.  I'm just looking for -- you're

24 saying the law has always been, you said, that if you're

25 allowed to discriminate on the basis of someone's religion,

1   that also means you can pretty much say if our religion says

2   that we don't want somebody of a certain background or type, we

3   can do that.

4       Which case says that?  I'm just trying to understand that.

5           MR. BAXTER:  Again, the cases have not been

6   litigated.

7           THE COURT:  Well, then, you said it's been the law

8   forever, so give me what authority says that other than you.

9           MR. BAXTER:  Every -- every decision that's ever

10  addressed this issue has deferred to the religious hiring

11  practices as long as they are sincere -- so even in -- there

12  are a lot of cases, for example, the example I gave before,

13  where an individual is fired for pregnancy outside of marriage.

14          THE COURT:  Which case is this, again?

15          MR. BAXTER:  I would have to pull exact cases, but

16  there are cases in almost every jurisdiction that kind of deal

17  with this type of issue, where the courts say they will allow a

18  pretext analysis.

19      So the church might come in and say, I have a religious

20  reason for doing this.  I require all of my employees to live

21  our standards regarding marriage and sexuality.

22      And the employer -- employee has the option to come in and

23  say, that's not true.

24      Look at all the ways they have not enforced that law.

25  They have the opportunity to show -- produce evidence.  They

1    have the initial burden to produce evidence of pretext, so the

2    church is not being consistent or telling the truth.

3        The church then has the burden to show that

4    its religious --

5            **THE COURT:**  Okay.  I think -- I've heard this before.

6    I think we're just going in circles.  I'm going to have to

7    obviously figure out the answer to this myself because I don't

8    think I'm communicating my question clearly enough.

9        Okay.  Anything else?

10           **MR. BAXTER:**  No, Your Honor.  I would just say a

11   religious organization's beliefs and practices have to be

12   included for it to live out its mission.  It's part of how it

13   defines itself, and the First Amendment protects that.  We

14   would ask the Court to grant the preliminary injunction and

15   deny the motion to dismiss.

16           **THE COURT:**  Okay.  Thank you.

17       So as I said -- I mean, I think we've been going at this

18   for a while.

19       Mr. Segal, I think the way I would look at that is you

20   have -- you filed a motion to dismiss, so if you want to add

21   anything just on those issues, but not really on the

22   injunction, you can do that.  Or you can rest where you are,

23   whichever you prefer.

24           **MR. SEGAL:**  I'll be very brief.

25           **THE COURT:**  Okay.

1          **MR. SEGAL:**  Just a couple of very quick points in

2    response to counsel for the plaintiffs.

3          One, just going back to *Tandon*, there was some language

4    quoted to the effect that it doesn't matter that the policy

5    treats some secular activities equally unfavorably to religion.

6    I don't read that language as referring to the scenario that we

7    have here with respect to the Maryland statutes' exemptions, in

8    which a particular activity can be either secular or religious.

9          I read it, rather, as referring to a scenario in which a

10   defendant is saying, well, yes, we granted an exemption for the

11   hair salon, but we didn't give an exemption for the baseball

12   game, so we win.

13         So that's just one very quick point.

14         **THE COURT:**  Okay.  I understand.

15         **MR. SEGAL:**  One point on *Tandon*.

16         And then just I'm not quite sure exactly where we've

17   landed with respect to the relief that the plaintiffs are

18   seeking here.

19         **THE COURT:**  I'm not sure either.  That's what I was

20   saying.

21         **MR. SEGAL:**  And -- and, Your Honor, their request for

22   relief says what it says.

23         But the constitutional theory on which they are basing

24   their request for relief, right, that is "the Constitution

25   requires this relief because," what they have said is that the

1  decisions that a religious organization makes with respect to

2  employment are -- are not subject to judicial intervention as

3  long as they are rooted in religious belief.

4      Again, whether or not that extends to the specific nature

5  of the relief that the plaintiffs are -- are requesting is, in

6  some sense, a little bit beside the point, because the

7  constitutional theory on which they are basing their request

8  for relief is one that, in our view, really would not preclude

9  its opportunistic application to all matters, situations going

10  beyond the one before us.

11      **THE COURT:**  So what you're saying is -- because,

12  again, that's what I -- I came into the hearing thinking they

13  were asking to be able to hire people of their own religion.

14  It seemed quite reasonable.

15      Now it sounds like they want to be able to do whatever

16  they want so long as they can connect it to religion in some

17  form.  Now, maybe that -- and you're saying that naturally

18  flows or doesn't flow from that --

19      **MR. SEGAL:**  No.

20      **THE COURT:**  -- from their theory?

21      **MR. SEGAL:**  Yes.  I guess what I'm saying -- and I

22  apologize, Your Honor, if I wasn't clear about this earlier.

23      Whatever they are asking for as a scope of relief, they

24  are resting it on a constitutional theory that says a religious

25  organization's hiring and firing decisions are protected as

1  long as they are rooted in religious belief.

2          **THE COURT:**  Okay.  I think you're right.  I mean,

3  that is kind of -- okay.  So I guess that's where we are.

4  Okay.

5      Anything else?

6          **MR. SEGAL:**  No, that's it, Your Honor.  We just

7  respectfully ask Your Honor to deny the PI motion and grant the

8  motion to dismiss.

9          **THE COURT:**  Okay.  So I think I'll take the matter

10  under advisement.  I know it's a preliminary injunction motion,

11  so we'll move as quickly as we can.

12      But as you both have identified, there's a lot of

13  complicated issues here, a lot of different theories that have

14  been offered that we need to dig through.

15      So I wanted to ask, though, is there anything else, since

16  we're all here, in this case, that should be discussed or

17  should be noted at this point?  You know, and I -- sometimes at

18  this juncture, it's things like, well, you know, maybe we would

19  like to go to a mediator, or there's settlement discussions

20  going on, or something else might happen outside of the case

21  that might affect what we're doing, or our timeline.

22      Is there anything else that we should discuss, or is it

23  just waiting for the ruling?

24          **MR. BAXTER:**  Not that I can think of, Your Honor.

25      I would like to respond to one point that he made on

1    our --

2              **THE COURT:**  Everybody had two rounds.  We are done.

3              **MR. BAXTER:**  Thank you.

4              **THE COURT:**  Anything else, Mr. Segal?

5              **MR. SEGAL:**  Nothing from us.

6              **THE COURT:**  Okay.  Thank you very much.  We'll let

7    you know when we have a decision.

8              **DEPUTY CLERK:**  All rise.  This Honorable Court now

9    stands adjourned.

10       (Proceedings were concluded at 4:22 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                CERTIFICATE OF OFFICIAL REPORTER

2

3

4        I, Paula J. Leeper, Federal Official Court Reporter, in

5   and for the United States District Court for the District of

6   Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that

7   the foregoing is a true and correct transcript of the

8   stenographically-reported proceedings held in the

9   above-entitled matter and the transcript page format is in

10  conformance with the regulations of the Judicial Conference of

11  the United States.

12                           Dated this 28th day of February 2025.

13

14

15                           /S/ Paula J. Leeper
                             _____
16
                             Paula J. Leeper, RPR, CRR
17                           Federal Official Reporter

18

19

20

21

22

23

24

25
```

**DEPUTY CLERK: [3]** 3/3 3/8 84/8
**MR. BAXTER: [90]**
**MR. SEGAL: [48]** 3/17 41/5 42/19 42/24 43/12
43/17 44/14 44/17 44/22 45/3 45/21 46/16 47/11
48/15 48/17 49/21 50/14 50/22 51/9 52/19 53/19
54/2 55/2 56/6 56/21 57/9 57/18 58/7 58/17 58/20
58/22 58/25 59/14 61/2 61/12 62/21 62/24 63/16
63/18 80/24 81/1 81/15 82/19 82/21 83/6 84/5
**THE COURT: [139]**

**/**
**/s [1]** 85/15

**0**
**0095 [1]** 1/20
**02866 [1]** 1/7

**1**
**125 [1]** 31/18
**12501 [1]** 1/22
**15 [12]** 6/22 23/23 24/2 25/2 25/16 26/2 26/16
27/11 27/15 51/5 51/22 52/6
**1872 [1]** 9/9
**1919 [1]** 1/18
**1947 [1]** 64/1
**1964 [1]** 11/13
**1972 [1]** 11/14
**1980s [1]** 11/21
**1981 [1]** 76/6

**2**
**20 [2]** 1/13 4/3
**200 [1]** 2/3
**20006 [1]** 1/19
**202 [1]** 1/20
**2021 [2]** 4/21 5/1
**2023 [1]** 5/3
**2025 [2]** 1/13 85/12
**20904 [1]** 1/22
**21202 [1]** 2/4
**25 [1]** 64/2
**278 [1]** 31/13
**28 [1]** 85/6
**280 [1]** 67/24
**285 [1]** 67/24
**2866 [1]** 3/8
**28th [1]** 85/12
**2:30 [1]** 1/13

**3**
**301 [1]** 1/23
**327 [1]** 12/25
**371 [1]** 31/8

**4**
**400 [1]** 1/19
**410 [1]** 2/4
**415 [1]** 31/8
**483 [1]** 12/25
**49 [1]** 31/19
**4:22 [1]** 84/10

**5**
**50 [1]** 68/1
**576-6446 [1]** 2/4

**6**
**60 [5]** 5/6 6/10 11/3 41/2 65/11
**61 [1]** 31/13
**6320 [1]** 1/23
**6446 [1]** 2/4
**680-6320 [1]** 1/23

**7**
**753 [1]** 85/6

**8**
**80 [1]** 64/19
**80 percent [3]** 25/3 78/14 78/20
**8:24-cv-02866 [1]** 1/7

**9**
**95 percent [1]** 53/6
**955-0095 [1]** 1/20

**A**
**ability [9]** 8/23 9/5 16/19 23/11 31/16 42/6 45/3
68/16 70/4
**able [14]** 7/7 21/18 24/4 31/21 33/19 33/23 40/19
45/15 49/1 66/3 68/15 77/12 82/13 82/15
**abortion [1]** 32/4
**above [1]** 85/9
**above-entitled [1]** 85/9
**absence [1]** 41/24
**absolutely [2]** 44/14 46/7
**absurd [1]** 38/21
**accept [1]** 60/25
**accepting [2]** 47/19 58/2
**accommodate [8]** 28/21 36/23 38/16 38/16 38/23 69/1
71/11 71/11
**accommodating [1]** 69/9
**accommodation [1]** 37/1
**accordance [1]** 40/20
**according [1]** 75/8
**acknowledge [1]** 57/6
**acknowledges [1]** 70/17
**acknowledging [1]** 10/20

**across [1]** 48/13
**Act [1]** 5/5
**acting [2]**
**action [1]**
**actions [1]** 75/21
**activities [33]** 6/5 6/7 11/12 11/15 12/2 13/11
19/12 24/1 24/10 24/11 24/12 24/22 25/25 51/15
53/3 53/18 53/21 53/22 53/23 54/5 55/12 64/12
69/15 69/16 69/22 73/23 74/4 74/10 74/13 74/14
75/7 75/16 81/5
**activity [15]** 18/25 28/19 51/14 51/20 52/16 52/22
53/4 53/15 55/14 55/22 55/22 55/25 64/10 66/25
81/8
**actual [2]** 33/7 60/9
**actually [17]** 7/7 7/13 9/16 10/22 15/17 20/23 28/6
34/16 39/25 46/23 51/3 51/4 52/10 56/1 59/2 61/23
67/3
**ADA [1]** 45/11
**add [1]** 80/20
**added [1]** 6/12
**addition [1]** 32/25
**additional [1]** 34/3
**address [1]** 13/13
**addressed [4]** 14/4 24/14 67/25 79/10
**addresses [1]** 57/19
**addressing [1]** 66/19
**adhere [1]** 6/2
**adhered [1]** 62/16
**adjourned [1]** 84/9
**admit [1]** 16/25
**adopted [2]** 9/21 11/10
**advantage [1]** 24/4
**Adventist [5]** 16/17 20/12 67/20 74/22 77/2
**ADVENTISTS [5]** 1/4 1/21 3/9 7/22 8/12
**Adventists' [1]** 8/16
**advertise [1]** 19/9
**advisement [1]** 83/10
**advises [1]** 39/10
**advocacy [2]** 16/10 40/9
**advocate [1]** 31/16
**advocating [2]** 12/12 46/23
**affect [2]** 31/15 83/21
**affected [2]** 31/22 66/25
**after [3]** 4/8 49/19 64/4
**afternoon [4]** 3/16 3/17 3/20 4/19
**again [35]** 12/15 15/3 22/17 23/2 31/19 31/25 34/14
37/25 45/7 46/18 47/12 48/21 49/15 50/10 52/7 53/2
53/23 55/9 55/16 55/19 57/1 59/8 59/8 60/8 61/9
62/24 63/6 65/10 71/14 74/25 75/5 79/5 79/14 82/4
82/12
**age [1]** 45/12
**ago [1]** 21/5
**agree [16]** 21/25 35/2 35/8 36/1 42/11 42/23 43/2
44/10 45/7 45/20 45/21 47/7 47/18 50/9 50/14 59/13
**agrees [1]** 72/23
**ahead [2]** 7/17 65/7
**AIDED [1]** 1/25
**ai [4]** 1/5 1/19 3/9 3/10
**Alexander [1]** 9/10
**align [1]** 34/24
**aligned [2]** 62/15 63/4
**all [45]** 3/3 7/8 10/1 10/11 10/17 11/4 15/12 16/9
16/18 17/20 25/4 26/25 28/23 29/5 29/21 39/13 40/1
43/24 44/6 46/1 49/5 55/11 56/10 57/23 58/8
58/19 60/19 63/19 65/19 65/20 65/25 66/2 68/8
69/16 71/1 71/15 72/15 74/1 77/4 79/20 79/24 82/9
83/16 84/8
**allegations [1]** 58/9
**alleged [2]** 14/5 66/16
**allocates [1]** 39/20
**allow [11]** 26/4 40/3 43/8 64/19 64/21 65/19 65/21
65/22 70/11 76/1 79/17
**allowed [11]** 17/5 33/21 65/12 65/14 66/6 71/18
71/25 72/1 76/25 76/25 78/25
**allowing [1]** 66/1
**allows [3]** 25/1 70/11 73/21
**almost [6]** 5/7 11/3 11/4 18/12 66/19 79/16
**already [5]** 6/23 18/16 33/24 71/25 74/16
**also [26]** 8/5 16/18 20/4 27/25 30/25 43/20 43/23
52/23 54/3 55/22 55/24 58/21 65/24 66/12 66/19
67/13 70/10 71/10 71/21 71/21 75/16 75/17 75/19
77/2 79/1
**alternative [1]** 47/20
**although [1]** 21/4
**always [23]** 11/6 11/8 15/10 16/7 17/5 17/12 18/19
19/1 19/7 26/23 26/24 28/17 35/11 37/12 37/13
37/14 64/17 65/22 66/5 67/3 73/4 78/13 78/24
**am [6]** 9/19 21/2 26/21 29/8 32/24 61/5
**amendment [19]** 13/4 32/14 62/22 63/2 68/2 71/23
72/11 76/19 80/13
**amicus [1]** 67/9
**among [1]** 7/15
**Amos [4]** 7/21 11/20 12/24 68/23
**amount [2]** 41/17 63/9
**analogy [1]** 56/19
**analysis [7]** 15/16 17/23 21/19 37/14 49/19 64/8
79/18
**animus [2]** 28/5 38/6
**another [6]** 26/17 38/18 47/2 51/15 56/7 74/21
**answer [5]** 8/7 54/1 47/17 64/11 80/7
**Anthony [1]** 66/6
**antidiscrimination [1]** 55/5
**antireligion [2]** 25/19 25/21
**anybody [3]** 35/5 36/2 76/25
**anymore [3]** 21/15 21/17 53/18
**anyone [4]** 25/19 26/4 59/5 60/4
**anything [20]** 18/18 24/8 34/8 39/8 46/9 46/11 55/2
58/4 62/13 63/17 66/12 68/12 69/16 75/19 80/9
80/21 83/5 83/15 83/22 84/4
**anywhere [1]** 4/22
**Aparicio [1]** 46/21

**apologize [2]** 82/22
**apparently [1]** 21/4
**Appeal [1]**
**APPEARANCES [1]**
**appears [1]** 21/16
**applicability [1]** 53/11
**applicable [2]** 64/15 76/9
**application [4]** 20/14 62/10 64/14 82/9
**applied [14]** 11/11 19/20 20/3 20/17 20/19 22/22
22/16 32/24 36/9 41/10 47/14 47/19 60/15 65/22
**applies [5]** 26/19 48/3 48/13 71/14 74/1
**apply [11]** 9/8 21/15 21/16 25/13 24/6 69/18 71/1
71/5 71/14 74/5 74/6
**applying [2]** 5/25 25/12
**approach [1]** 49/14
**are free [1]** 32/15
**area [8]** 8/15 24/6 30/17 37/4 44/15 44/19 44/20
44/21
**areas [1]** 55/5
**aren't [7]** 8/12 8/22 26/11 30/5 45/13 60/20 78/21
**Arguably [1]** 44/18
**argue [6]** 25/17 25/20 29/13 29/13 30/12 75/12
**argued [1]** 10/4
**arguing [4]** 25/19 47/13 56/15 69/24
**argument [34]** 7/10 7/12 7/12 20/20 21/3 21/7 21/13
21/16 21/17 21/20 21/21 21/22 21/22 21/25 22/20 22/21
22/21 23/22 23/24 27/17 27/9 27/14 29/8 29/8 38/8
41/8 41/11 41/13 42/24 61/4 65/18 66/7 66/8 72/5
73/12
**arguments [6]** 7/5 7/11 30/19 51/2 64/6 73/11
**arise [1]** 59/4
**arisen [1]** 30/1
**arising [1]** 42/8
**around [6]** 7/23 13/14 25/3 40/17 40/18 53/14
**articulate [1]** 56/17
**as-applied [4]** 19/20 32/24 41/10 47/15
**ask [24]** 5/10 8/14 8/15 13/6 19/5 19/15 19/17
20/23 20/25 21/1 28/20 29/3 30/16 46/12 49/10
49/11 50/21 51/24 54/10 57/20 67/14 80/14 83/7
83/15
**asked [5]** 47/5 48/12 49/11 57/21 70/14
**asking [39]** 7/6 9/22 11/9 15/8 15/9 15/12 15/18
15/19 16/16 16/18 16/19 17/1 17/20 17/21 18/12
18/17 19/4 19/6 19/16 20/10 20/11 20/16 26/18 40/1
42/13 47/12 57/23 58/2 65/19 65/20 65/20 66/4 69/6
70/3 72/14 73/11 76/23 82/13 82/23
**aspect [2]** 13/7 69/11
**aspects [1]** 44/4
**assert [1]** 24/24
**asserts [1]** 37/13
**associates [1]** 31/9
**association [12]** 1/5 29/18 30/20 31/5 31/10 32/12
32/20 34/18 39/24 40/19 69/19 74/7
**associational [1]** 54/16
**assume [4]** 9/23 34/4 58/19 67/16
**assuming [2]** 57/24 74/5
**atheism [1]** 8/2
**atheists [1]** 68/18
**attempt [1]** 61/3
**attention [1]** 61/16
**Attorney [2]** 2/3 67/8
**attorneys [1]** 29/18
**August [1]** 5/3
**August 2023 [1]** 5/3
**authority [4]** 31/3 51/7 56/19 79/8
**automatically [1]** 66/13
**autonomy [32]** 5/25 6/8 7/12 7/19 9/18 10/11 11/17
13/19 14/12 14/23 17/2 19/21 21/7 21/21 22/1 22/5
23/1 34/19 40/24 41/7 41/8 41/14 44/3 46/20 47/4
47/8 47/23 49/25 50/2 50/12 61/15 69/2
**available [1]** 24/9
**Avenue [1]** 1/18
**avoid [2]** 35/5 35/24
**aware [3]** 4/21 43/12 59/5
**away [1]** 39/8
**awful [1]** 48/17

**B**
**back [14]** 9/9 11/21 17/9 19/2 23/5 24/6 24/7 29/16
32/23 65/4 69/4 72/10 75/20 81/3
**background [3]** 26/17 28/13 79/2
**balance [1]** 57/19
**Baltimore [1]** 2/4
**Baptist [1]** 5/24
**bar [3]** 38/25 39/3 39/3
**bars [1]** 19/22
**base [1]** 72/2
**baseball [1]** 81/11
**based [22]** 10/25 14/5 15/15 15/20 19/12 19/22
31/23 32/1 41/21 42/6 42/19 44/7 48/25 49/3 73/7
73/8 75/21 76/17 77/17 77/17 78/3
**bases [1]** 71/22
**basic [1]** 30/6
**basically [6]** 6/6 13/6 13/6 15/22 19/24 28/15 54/18
58/2 72/9 75/2
**basing [1]** 81/23 82/7
**basis [21]** 15/11 23/10 29/10 29/14 30/13 32/3
34/13 38/21 47/3 56/22 56/25 57/5 61/1 70/12 70/22
72/12 72/21 73/15 74/19 76/6 78/25
**BAXTER [17]** 3/13 3/13 4/17 4/19 49/11 50/23 52/2
52/8 57/21 63/20
**because [64]** 4/4 4/23 6/22 6/24 7/2 12/15 15/23
16/9 18/19 18/20 19/17 20/8 21/20 22/9 22/14 24/5
26/23 27/2 27/15 28/5 28/6 28/9 29/10 29/14 29/18
35/11 37/9 37/20 38/1 38/6 38/6 41/21 42/4 43/15
44/25 45/17 47/4 47/9 48/13 49/16 50/10 53/12
54/12 55/20 56/24 60/16 61/22 62/6 70/8 70/8
71/14 72/18 74/7 74/18 74/25 76/14 76/18 80/7
81/25 82/6 82/11
**Becket [1]** 1/18
**become [2]** 13/13 50/3
**before [12]** 1/12 3/7 4/7 5/21 12/20 20/24 33/8 40/2
64/2 65/12 79/12 80/5 82/10

## B

began [1]  3/24
behalf [6]  1/17 2/7 3/20 4/9 37/6 74/3
beholder [1]  57/2
being [16]  8/25 33/23 45/15 45/24 47/4 51/17 51/19 56/10 57/11 60/23 62/9 62/25 63/3 74/21 75/18 80/2
belief [21]  8/20 8/25 18/8 20/2 33/20 36/13 41/16 41/19 44/1 44/8 46/4 49/3 72/7 72/14 73/7 76/1 77/17 78/4 78/5 78/12 82/3 83/1
beliefs [28]  7/23 7/23 7/25 8/13 8/17 8/18 8/24 8/25 13/11 22/10 32/6 35/12 35/14 36/7 36/24 38/3 38/7 38/17 41/23 48/2 48/9 48/12 58/4 58/14 76/14 77/4 77/17 80/11
believe [44]  6/17 8/21 14/22 16/12 23/7 39/19 41/21 61/25 68/16 68/18 68/20 69/8 78/7 78/7
believed [1]  6/16
believer [1]  39/16
believers [3]  4/25 12/1 29/23
believes [2]  39/14 39/15
believing [1]  35/16
belong [1]  69/1
benefit [2]  39/11 51/4
beside [1]  82/6
best [3]  7/10 22/12 24/14
between [4]  41/9 50/18 54/4 67/9
beyond [11]  10/10 16/1 44/3 45/18 46/14 47/8 47/23 48/22 49/4 61/17 82/10
big [1]  54/15
bigger [3]  20/6 30/2 30/9
Bishop [7]  12/11 12/11 12/23 13/1 22/4 22/7 61/14
bit [8]  18/1 32/23 41/9 49/23 52/3 52/12 54/3 82/6
blame [1]  7/3
blanche [1]  37/13
blanket [3]  46/3 47/21 48/8 48/18 48/19
bless [1]  68/20
board [1]  48/13
Bob [2]  76/11 76/14
bona [11]  33/21 51/22 52/2 54/17 59/3 59/11 59/18 59/23 60/2 60/21 60/23
book [4]  53/5 53/6 53/7 53/9
both [15]  10/4 13/12 13/13 21/1 22/22 22/24 23/1 23/25 24/9 32/20 32/20 42/11 53/4 69/2 83/12
bothers [1]  52/12
Bouldin [1]  9/10
break [1]  55/1
breaks [1]  36/25
Bremerton [1]  24/18
Brennan's [1]  12/1
brief [8]  4/11 12/8 15/18 31/13 50/25 65/24 67/9 80/24
briefing [4]  3/24 20/1 37/10 44/24
briefs [3]  41/12 41/13 57/10
bring [3]  14/17 15/13 66/8
brings [1]  16/2
broad [6]  6/18 10/16 14/22 15/3 15/9 41/11 44/6 62/17 65/19
broader [8]  8/24 10/2 10/7 14/12 15/19 19/17 20/5 74/17
broadly [3]  6/11 32/16 59/17
brook [1]  27/7
Brooklyn [1]  24/17
brought [4]  22/13 49/13 66/3 66/3
Bryant [1]  67/23
Bryce [2]  14/2 44/23
building [1]  11/21
bunch [1]  64/18
burden [5]  17/8 17/9 54/15 80/1 80/3
business [1]  55/17
businesses [2]  55/18 64/12
Button [3]  29/17 31/8 32/11

## C

call [1]  10/14
called [2]  3/2 35/3
came [4]  14/16 21/10 45/1 82/12
can't [25]  9/14 14/17 15/1 15/1 17/18 17/18 18/21 19/9 19/10 19/11 25/6 25/7 28/21 29/23 30/2 37/25 44/21 46/13 49/16 51/6 63/16 64/20 70/7 74/23 78/4
cannot [5]  9/12 20/11 22/6 36/14 40/22 40/25 47/14 72/11
capacity [1]  1/8
care [2]  31/14 46/5
carried [1]  39/16
carry [11]  4/25 11/12 12/1 12/7 29/23 30/8 38/20 39/25 39/25 40/12 68/17
carrying [2]  9/16 38/23
Carson [1]  64/4
cart [1]  37/12
carve [1]  55/6
carve-outs [1]  55/6
carved [1]  55/7
case [66]  5/13 9/10 10/9 12/8 12/21 12/24 14/15 17/13 18/15 21/3 21/14 22/12 23/8 24/17 27/6 29/17 30/3 30/9 31/7 31/17 34/12 34/15 37/18 41/18 41/25 42/3 43/21 43/23 44/23 45/1 45/6 46/9 46/12 46/21 46/21 47/2 47/23 48/2 51/16 53/19 54/24 57/14 58/12 60/5 60/9 61/1 61/14 62/24 63/15 64/1 64/1 66/9 66/11 68/11 69/14 72/15 73/12 75/3 78/15 79/4 79/14 81/16 83/20
cases [46]  10/24 11/1 13/12 22/3 22/15 24/14 25/24 27/1 27/10 29/16 29/25 30/10 30/16 30/25 31/3 31/12 32/10 32/11 32/20 32/21 42/8 44/2 44/5 44/8 44/23 46/17 46/18 47/8 48/11 48/11 48/21 48/22 48/24 49/19 50/1 50/18 52/8 62/18 64/4 66/10 66/14 79/5 79/12 79/15 79/16
categorical [1]  28/25
categorically [3]  31/24 46/8 47/14
categories [5]  71/9 71/15 72/18 75/22 77/4
category [28]  10/19 27/14 27/18 44/12 45/14 47/10 47/23 52/15 53/15 56/3 57/4 63/2 71/2 71/4 72/5 72/5 73/18 73/19 73/21 73/21 74/20 75/18 75/15 75/17 76/3 77/3 77/8

## Catholic

Catholic [4]  12/23 13/1 22/4 61/13
Catholicism [1]  8/2
cause [1]  80/7
cautioned [1]  44/2
cautions [1]  64/2
centers [1]  31/14
certain [18]  18/4 21/2 23/8 28/13 29/19 34/21 34/23 35/24 35/24 36/25 37/25 44/4 47/11 53/20 55/7 75/13 76/2 79/2
certainly [19]  20/1 30/20 41/19 43/2 43/17 44/2 45/22 50/1 55/5 55/12 56/7 57/9 57/10 58/7 58/17 59/7 59/7 60/19 63/8
CERTIFICATE [1]  84/11
certify [1]  85/6
challenge [10]  18/5 19/19 19/20 19/21 19/24 20/10 43/10 47/18 47/19 71/15
challenged [1]  5/14
challenges [1]  43/16
challenging [3]  70/16 70/25 71/17
change [4]  18/17 41/1 66/5 68/22
change their [1]  68/22
changed [2]  5/12 40/3
changes [3]  8/3 8/5 38/19
character [1]  68/23
charge [1]  11/23
Chicago [1]  22/7
chilled [2]  62/25 63/3
chilling [1]  12/3
choose [1]  75/13
chooses [1]  59/20
choosing [2]  25/12 25/13
Christ [4]  7/23 11/22 36/13 36/14
Christian [4]  5/21 38/22 78/8 78/9
CHUANG [2]  1/12 3/5
church [86]
church-operated [1]  62/1
churches [7]  9/14 16/13 16/21 19/22 36/11 40/7 74/22
circles [1]  80/6
circuit [12]  9/5 13/15 13/22 14/2 14/3 31/12 31/19 32/22 48/23 48/24 63/6 67/24
circuits [1]  13/14
circumstance [1]  11/25
circumstances [3]  17/3 60/22 61/19
cite [5]  12/19 12/10 50/19 51/11 64/1
cited [2]  12/18 31/13 46/17 66/10
cites [3]  21/11 23/7 44/2
citing [1]  48/24
City [6]  24/18 27/5 27/22 59/25 60/8 60/9
Civil [2]  1/9 3/8
claim [22]  14/18 14/18 14/19 14/21 14/24 15/1 15/6 15/13 16/2 16/5 16/20 17/24 19/19 35/11 47/3 49/1 50/6 50/6 50/12 58/9 66/12 66/20
claiming [2]  37/8 49/6
claims [15]  9/23 10/1 14/4 15/9 15/10 16/22 17/4 17/5 33/18 34/11 34/17 42/16 66/2 77/22 77/24
clarify [5]  9/1 16/15 63/25 65/3 76/21
clause [12]  6/8 6/25 21/11 21/13 22/20 23/14 23/18 40/24 40/25 49/22 50/6 64/6
clear [13]  24/5 25/24 37/11 44/15 44/19 46/11 52/5 52/6 52/21 62/14 69/6 72/17 82/22
clearly [9]  10/5 24/11 42/12 53/4 54/5 55/17 55/21 56/17 80/8
CLEVELAND [2]  1/8 3/9
close [1]  48/3
closely [2]  21/25 27/22
closing [1]  68/15
club [7]  51/23 51/25 54/22 55/4 55/10 55/11 56/5
clubs [5]  52/13 52/24 52/25 53/12 54/7
co [3]  34/5 41/18 42/7
co-opted [1]  34/5
co-religionists [2]  41/18 42/7
code [3]  7/24 34/23 35/15
codes [1]  36/5
colleague [1]  3/18
colleagues [2]  3/14 12/20
Columbia [1]  1/22
combination [1]  22/22
come [10]  8/20 10/9 14/16 17/8 21/8 27/10 30/3 53/13 79/19 79/22
comes [1]  70/21
comfortable [1]  23/15
Commission [1]  31/15
committed [1]  66/21
common [3]  4/24 16/9 30/11
commonly [1]  55/23
communicating [1]  80/8
community [2]  7/20 11/24
comparable [3]  51/13 64/9 64/12
compare [2]  47/5 48/21
compared [1]  31/15
Compass [1]  32/10
CompassCare [2]  31/18 32/19
compelled [1]  31/15
compelling [11]  41/1 41/25 43/21 56/17 56/21 57/5 57/11 57/15 64/23 65/10 65/16
complaint [3]  33/24 34/20 49/13
complete [2]  39/3 39/15
completely [2]  8/3 38/19
compliance [2]  19/10 19/11
complicated [1]  83/13
component [1]  10/7
COMPUTER [1]  1/25
COMPUTER-AIDED [1]  1/25
concept [4]  21/5 21/17 22/4 62/18
conceptually [1]  21/8
concerned [6]  11/16 18/14 36/12 47/21 49/16 69/17
conclude [1]  36/19
concluded [1]  84/10
condition [1]  35/22
conduct [1]  34/23
conducting [1]  49/18
CONFERENCE [4]  1/4 1/21 3/8 85/10

## conferring

conferring [1]  44/5
confident [1]  45/8
conform [1]  83/9
confusing [1]  45/25
Congress [1]  11/14
connect [2]  75/20 82/16
connected [7]  65/4 69/15 69/22 73/23 74/10 75/7 75/15
connecting [1]  19/18
connection [2]  40/15
considering [1]  12/5
consistent [3]  45/23 61/16 80/2
consistently [2]  13/23 67/6
constitution [7]  5/15 12/22 15/25 17/22 72/10 72/12 81/24
constitutional [15]  19/25 41/15 44/1 60/17 61/21 62/19 63/8 66/12 67/1 71/15 73/11 76/20 81/23 82/7 82/24
constitutionally [1]  20/4
context [10]  22/3 22/23 36/9 41/8 55/7 56/5 60/16 66/23 67/4 76/10
contexts [1]  25/5
continued [3]  1/24 23/9 64/3
continues [1]  78/13
continuing [2]  63/5 66/21
contracting [1]  76/7
contrary [1]  62/14
control [2]  9/6 9/6
converted [1]  8/2
convey [5]  5/9 8/17 31/22 32/7 39/6
cornerstone [1]  61/14
corporation [3]  69/19 70/5 74/7
corporations [1]  70/12
correct [17]  16/9 9/23 9/24 10/5 20/20 32/24 33/25 43/14 45/3 58/19 59/15 85/7
correctly [1]  42/4
corresponding [1]  59/20
couldn't [9]  20/1 27/3 29/4 35/6 38/13 47/20 47/25 60/10 66/10
counsel [5]  3/12 42/4 42/11 43/20 81/2
count [2]  41/4 72/1
counterpart [1]  45/1
country [2]  13/14 40/18
counts [3]  7/14 34/13 57/23
County [2]  5/20 6/3
couple [2]  12/18 14/5 52/20 61/12 64/6 76/5 81/1
course [5]  41/17 42/7 46/1 58/22 59/19
court [95]
Court's [7]  11/20 12/23 15/24 40/21 61/15 64/14 70/25
courts [15]  11/18 13/6 13/9 14/3 22/9 23/9 36/4 37/14 44/19 46/19 50/3 57/3 67/6 68/25 79/17
cover [4]  10/11 10/21 11/9 34/8
covered [6]  26/5 28/15 34/6 56/1 56/8 61/9
covering [1]  45/25
covers [2]  25/2 45/17
create [5]  8/4 9/7 14/20 14/25 49/4
created [1]  25/17
creates [1]  56/14
creating [1]  27/17
credible [1]  68/4
critical [1]  61/25
cross [2]  3/23 4/13
CRR [1]  85/16
Curay [1]  47/2
curious [1]  23/22
currently [4]  38/11 38/11 42/12 67/10
cut [3]  4/5 54/6 55/1
cv [1]  1/7

## D

D.C [2]  13/15 13/22
data [1]  46/16
Dated [1]  85/12
dating [1]  76/15
day [13]  1/4 1/21 3/9 7/22 8/12 8/16 11/22 16/17 20/12 67/20 74/22 77/2 85/12
daylight [1]  50/17
DC [1]  1/19
deal [1]  79/16
decide [2]  28/4 77/9
decided [2]  32/4 64/4
decides [1]  28/3
decision [25]  5/8 5/18 6/15 7/21 11/20 12/22 14/2 14/3 15/24 22/6 33/8 41/15 41/17 43/1 46/3 51/12 56/19 64/7 66/18 66/24 66/24 67/23 76/12 79/9 84/7
decision-making [1]  22/6
decisions [20]  9/11 13/6 13/21 13/23 14/3 31/23 31/24 32/1 32/3 40/23 42/17 43/25 44/6 45/8 49/2 49/6 50/4 77/3 82/1 82/25
deemed [2]  12/6 16/18
defamation [2]  14/4 14/5
defendant [1]  81/10
defendants [8]  1/10 2/1 3/18 10/4 33/13 41/6 62/6 67/16
defendants' [1]  63/12
defense [4]  3/23 4/9 17/23 66/14
deferred [1]  79/10
define [3]  7/25 38/20 68/23
defined [3]  9/5 10/17 47/24
defines [3]  7/20 78/3 80/13
defining [2]  27/18 44/20
definition [2]  52/4 55/12
definitions [1]  54/12
degree [1]  56/2
delineating [1]  46/6
delve [1]  22/9
denied [1]  31/13
deny [5]  25/7 58/10 60/4 80/15 83/7
depart [1]  27/3
departure [1]  27/3
depends [3]  39/9 39/10 47/17
derived [1]  23/6

## D

**describes [1]** 64/7
**describing [1]** 83/16
**desire [1]** 50/2
**detail [1]** 33/24
**determination [1]** 47/21
**determine [1]** 50/17
**determined [1]** 90/6
**devoted [1]** 29/19
**different [33]** 9/12 15/18 16/5 16/23 17/5 18/1 18/4 18/12 19/6 19/23 21/9 21/12 22/10 24/22 26/17 28/1 28/7 35/17 37/19 47/5 48/6 50/19 50/19 52/3 52/16 52/18 55/11 62/13 74/24 76/4 76/18 83/13
**differently [1]** 27/16
**difficult [1]** 45/2
**dig [1]** 48/12 83/14
**Dinke [1]** 6/23
**dinners [1]** 56/8
**Dioceses [1]** 24/17
**direct [3]** 39/8 39/9 61/15
**directly [4]** 5/9 13/12 39/6 39/7
**Director [1]** 1/9
**disability [3]** 16/3 40/22 45/12
**disagree [4]** 30/4 39/20 51/1 52/19
**disagreement [1]** 14/6
**disagrees [1]** 18/8
**disavow [1]** 67/7
**disbelief [1]** 49/7
**discipline [2]** 9/8 9/11
**discovery [4]** 33/7 58/4 58/11 58/12
**discovery-heavy [1]** 58/12
**discretion [2]** 27/24 28/3
**discretionary [1]** 28/25
**discriminate [9]** 25/5 28/2 28/11 38/13 70/12 71/7 71/18 71/22 78/25
**discriminating [1]** 28/5 28/6
**discrimination [29]** 4/24 6/14 6/22 9/23 10/1 15/11 16/2 16/3 16/13 16/20 16/22 23/5 21 27/20 28/14 32/3 37/8 42/8 46/2 54/20 56/22 56/24 57/5 57/11 64/19 65/20 76/6 76/12 77/23 78/21
**discuss [3]** 43/1 63/23 83/22
**discussed [3]** 44/24 57/3 83/16
**discussion [1]** 62/10
**discussions [2]** 14/13 83/19
**disfavor [1]** 52/9
**dismiss [16]** 3/23 30/20 31/17 31/20 32/21 33/1 33/2 33/17 34/2 34/3 34/11 58/1 58/10 80/15 80/22 80/18
**dismissal [3]** 31/20 57/23 58/2
**dismissed [2]** 5/24 34/14
**dismisses [1]** 47/3
**dispute [3]** 15/14 37/17 72/19
**disputes [1]** 58/1
**dissent [1]** 30/6
**distinct [2]** 7/23 23/9
**distinction [2]** 41/9 54/4
**district [11]** 1/1 1/1 1/13 3/3 3/4 22/16 32/22 66/18 66/19 85/5 85/5
**DIVISION [1]** 1/2
**do [51]** 4/4 7/5 15/22 21/18 21/18 21/24 23/4 24/8 25/22 27/14 31/2 32/24 34/3 35/2 35/7 35/21 36/1 37/8 37/25 40/6 41/22 42/22 42/25 43/11 44/13 44/16 44/19 44/21 47/5 49/16 49/18 53/5 53/5 54/10 54/12 59/13 60/25 62/13 63/5 63/8 64/8 65/1 66/6 68/25 69/8 75/6 76/3 79/3 80/22 82/15 85/6
**Docket [1]** 1/6
**doctrine [21]** 7/18 8/17 9/4 10/8 10/11 13/20 14/12 17/2 17/22 19/3 22/21 39/24 40/24 44/3 45/2 46/20 47/6 48/10 61/15 61/17 69/3
**doctrines [3]** 6/13 43/1 43/3
**Doe [3]** 6/15 43/1 43/3
**doing [3]** 13/25 29/3 38/1 54/7 55/17 65/2 67/3 67/3 79/20 83/21
**doubt [1]** 56/8
**down [3]** 11/18 22/18 27/10
**dramatic [1]** 66/4
**dress [4]** 34/25 35/20 35/24 36/4
**drug [1]** 35/19
**Duquesne [1]** 13/21
**Durant's [1]** 5/21
**during [1]** 63/15
**duties [1]** 9/16

## E

**earlier [4]** 38/8 47/17 61/16 82/22
**early [1]** 29/16
**easier [1]** 17/15
**easily [1]** 52/23
**Eastern [1]** 66/18
**ecclesiastical [1]** 45/4
**edge [2]** 44/23 46/18
**educational [2]** 69/19 74/7
**effect [1]** 81/4
**effective [1]** 31/10
**effectively [2]** 67/22 55/8
**efforts [1]** 13/23
**either [14]** 27/17 28/11 30/24 33/7 36/18 36/20 41/24 43/10 51/5 55/15 61/7 76/23 81/8 81/19
**element [1]** 27/19 28/11
**elements [1]** 28/15
**eligibility [1]** 55/13
**else [9]** 45/12 63/17 72/19 80/9 83/5 83/15 83/20 83/22 84/4
**elucidate [1]** 24/8
**embracing [1]** 44/8
**emphasize [1]** 61/24
**emphasized [1]** 76/18
**emphasizes [1]** 26/7
**employee [6]** 14/10 15/6 15/13 48/25 72/23 79/22 25/3 29/20 31/2 31/5 34/23 36/5 36/15 36/19 40/11
**employees [23]** 10/12 10/17 13/24 16/11 23/23 25/2

**employer [3]** 37/2 61/3 79/22
**employees [24]** 36/4 36/7
**employment [21]** 10/2 22/4 36/1 40/23 41/15 42/8 44/4 46/8 48/22 61/18 69/20 70/5 73/6 73/7 73/8 74/8 75/1 75/21 82/2
**employment-related [1]** 48/22
**empowered [1]** 60/12
**enacted [1]** 68/6
**end [4]** 18/22 28/10 42/8 50/7
**enforce [5]** 36/1 45/10 63/14 67/10 67/16
**enforced [4]** 20/11 68/1 68/7 79/24
**enforcement [5]** 19/12 66/23 67/4 67/7 67/25 76/15
**engage [7]** 33/22 64/21 65/14 65/23 66/1 66/25 76/15
**engaged [1]** 18/24
**engages [1]** 55/11
**engaging [1]** 64/24
**engineer [1]** 11/22
**enjoined [3]** 6/24 20/17 62/10
**enjoins [1]** 38/10
**enough [5]** 28/18 28/20 29/3 62/19 80/8
**entangled [1]** 50/3
**entanglement [12]** 13/20 20/25 21/5 22/2 22/20 23/9 49/12 49/24 50/6 50/13 64/2 64/3
**entangling [1]** 22/9
**entering [1]** 23/16
**entire [2]** 30/7 74/6
**entirely [1]** 6/21 70/19
**entities [3]** 25/18 74/17 74/18
**entitled [3]** 49/8 60/2 85/9
**entity [9]** 25/15 26/3 26/15 26/20 69/15 69/23 73/24 74/11 75/16
**environment [2]** 8/3 9/7
**envision [3]** 52/24 52/25 58/12
**equal [1]** 4/9
**equally [2]** 55/24 81/5
**ERIC [3]** 1/17 3/13 4/19
**especially [1]** 16/12
**ESQUIRE [5]** 1/17 1/17 1/21 2/2 2/2
**essentially [4]** 5/7 6/16 6/18 46/25
**establishment [7]** 21/11 21/13 22/20 23/14 49/21 50/6 64/5
**establishment-clause [1]** 21/13 22/20 50/6
**et [4]** 1/5 1/9 3/9 3/10
**even [54]** 5/4 6/20 6/21 8/11 8/12 9/12 11/25 14/8 14/11 16/20 18/8 19/4 19/9 21/8 23/2 25/15 26/1 26/19 27/21 27/22 29/1 30/12 36/22 37/7 38/21 38/25 39/14 39/14 46/13 46/14 48/23 49/19 50/18 52/9 52/10 53/8 56/15 56/19 57/16 57/23 58/9 58/10 64/13 68/9 69/2 70/16 70/19 71/25 73/21 76/13 78/10 79/11
**evenly [1]** 25/12
**ever [6]** 4/22 26/22 59/5 60/15 60/25 79/9
**Everson [1]** 64/1
**every [20]** 5/7 7/3 11/3 12/5 13/7 20/14 31/11 39/1 39/4 39/4 39/23 39/23 40/6 67/11 73/18 73/20 73/21 79/22 79/9 79/16
**everybody [4]** 4/13 18/13 75/16 84/2
**everyone [5]** 3/6 10/18 10/21 11/9 16/17
**everything [4]** 45/25 45/25 58/3 71/16
**evidence [4]** 17/8 33/20 79/25 80/1
**ex [1]** 48/10
**exact [5]** 55/9 65/5 66/20 78/4 79/15
**exactly [2]** 77/19 81/16
**example [27]** 8/1 8/7 9/1 9/17 13/22 15/11 18/3 18/19 18/24 22/7 26/2 31/6 35/18 36/3 36/23 38/19 38/22 40/9 40/12 53/17 68/20 72/20 74/21 76/5 78/2 79/12 79/12
**examples [2]** 31/3 54/4
**except [3]** 52/10 77/3 77/8
**exception [51]** 9/19 9/25 10/2 10/4 10/7 10/13 10/16 10/16 11/20 18/13 22/23 22/25 24/9 26/2 26/23 27/17 27/24 29/2 39/5 44/4 44/12 45/8 45/14 45/17 45/17 45/25 46/3 46/6 46/14 47/9 48/23 49/9 50/24 52/18 53/5 53/10 53/11 54/13 55/4 55/13 56/2 56/7 56/7 56/9 59/10 59/18 60/3 61/18 75/6 76/8
**exceptions [9]** 23/21 23/25 25/4 28/24 28/25 28/25 51/4 64/18 64/18
**excessive [2]** 20/25 21/5
**exclude [1]** 41/20
**excommunicate [1]** 9/15
**excommunicating [1]** 9/12
**excuse [1]** 49/3
**Executive [1]** 1/9
**exempt [8]** 6/13 6/21 25/16 70/18 73/6 74/20 74/22 76/14
**exempting [2]** 28/19 52/14
**exemption [28]** 6/17 6/19 6/19 9/22 10/1 11/6 25/7 70/1 70/15 72/1 73/14 73/16 74/16 74/23 75/1 78/3 78/20 81/10 81/11
**exemptions [4]** 11/5 27/6 72/8 81/7
**exempts [1]** 73/17
**exercise [22]** 6/8 6/25 7/12 8/18 8/23 20/24 22/21 23/18 29/9 40/24 40/25 50/21 51/14 51/16 51/19 51/20 52/17 61/22 63/1 63/9 69/12 69/13 69/3
**exercised [1]** 46/5
**exercising [1]** 11/24
**exist [1]** 21/17
**existed [1]** 65/22
**existence [1]** 59/17
**existing [1]** 35/2
**exists [2]** 38/11 38/11
**expand [2]** 46/13 47/8
**expansion [1]** 47/12
**explain [2]** 16/4 34/13
**explains [1]** 21/14
**explanation [1]** 43/18
**explicitly [1]** 5/5
**explore [1]** 58/15
**expression [1]** 57/7

**expressive [10]** 29/18 30/20 32/11 32/16 32/17 32/20 34/18 39/24 40/6 40/19
**expresses [1]** 31/4
**extend [2]** 11/7
**extend [1]** 31/4
**extending [1]** 44/3
**extends [2]** 11/18 82/4
**extent [5]** 19/21 23/4 34/2 60/5 61/17
**extramarital [1]** 18/25
**eye [1]** 57/2

## F

**F.4th [3]** 31/13 31/19 67/24
**face [1]** 38/21
**facial [9]** 19/19 19/21 19/23 20/9 32/24 33/14 41/10 41/10 47/18
**facially [1]** 51/3
**facility [1]** 11/23
**facing [1]** 14/4
**fact [14]** 25/11 25/17 28/10 29/2 43/3 48/1 48/25 53/9 56/2 60/7 66/17 66/20 71/17 78/19
**fact-finding [1]** 28/10
**factors [1]** 62/5
**facts [4]** 14/19 33/3 83/8 34/3
**factual [7]** 28/11 33/6 57/22 58/1 58/8 61/1 61/4
**factually [1]** 60/22
**fail [1]** 15/7
**failed [1]** 34/13
**fails [2]** 16/5 50/12
**failure [1]** 35/15
**Fair [2]** 5/4 60/13
**fairly [1]** 62/10
**faith [11]** 6/3 10/20 10/22 30/5 59/10 68/16 68/19 68/19 69/1 69/8 78/11
**faiths [2]** 39/20 48/6
**fall [2]** 56/9 77/9
**Falls [1]** 13/21
**familiar [1]** 37/9
**far [5]** 24/6 26/24 63/3 64/22 75/14
**far-out [1]** 75/14
**fatal [1]** 14/21
**favor [3]** 26/20 75/12 76/23
**favorable [2]** 33/3 64/10
**favorably [4]** 51/14 51/16 51/19 64/13
**favored [1]** 24/12
**fear [2]** 62/11 62/12
**FEBRUARY [2]** 1/13 85/12
**federal [3]** 55/7 85/4 85/17
**feel [2]** 21/7 52/8
**feels [4]** 50/15 52/3 52/15 52/18
**few [1]** 42/2
**fewer [2]** 6/22 25/2
**fide [11]** 27/13 51/22 52/2 54/17 59/3 59/11 59/18 59/23 60/2 60/21 60/23
**figure [1]** 80/7
**filed [1]** 80/20
**filing [1]** 67/9
**final [1]** 33/8
**Finally [1]** 66/7
**find [10]** 8/8 23/13 30/17 53/2 53/17 53/20 65/5 66/10 66/10 68/11
**finder [1]** 60/7
**finding [4]** 12/16 28/10 65/6 65/7
**findings [1]** 10/13
**fire [5]** 18/10 19/11 42/6 42/19 72/23
**fired [4]** 16/24 18/21 72/23 79/13
**fires [1]** 17/3
**firing [10]** 15/15 37/7 41/20 42/20 43/25 44/6 46/3 49/2 70/22 82/25
**firings [1]** 71/8
**firm [1]** 4/2
**first [16]** 4/15 7/14 11/10 13/4 18/9 32/14 47/17 62/22 63/2 66/22 66/24 70/3 71/23 72/10 78/19 80/13
**fit [1]** 10/15
**five [1]** 24/15
**flesh [1]** 33/23
**flips [1]** 17/9
**flow [1]** 82/18
**flows [1]** 82/18
**focus [2]** 7/6 53/8
**focused [4]** 33/4 33/6 37/5 66/1
**follow [3]** 21/19 36/13 36/20
**followed [1]** 5/4
**followers [2]** 9/17 68/21
**following [3]** 35/14 38/7 49/14
**follows [2]** 9/14 66/13
**force [1]** 69/7
**forced [3]** 9/14 30/4 68/22
**forcing [2]** 8/1 68/25
**foregoing [1]** 85/7
**forever [2]** 77/10 79/8
**form [4]** 8/20 31/10 63/1 82/17
**format [1]** 85/9
**forms [1]** 9/23
**forth [2]** 23/23 58/23
**forward [1]** 17/6
**found [5]** 26/25 31/13 43/23 46/11 66/11
**founding [1]** 65/13
**four [4]** 5/7 24/15 71/15 74/1
**Fourteenth [1]** 76/19
**Fourth [4]** 9/5 48/23 63/6 67/24
**frame [2]** 50/5 74/24
**framed [1]** 27/16
**frankly [5]** 10/12 21/6 28/10 28/13 49/1
**free [14]** 6/8 6/25 7/12 20/24 22/21 23/18 29/9 32/11 32/15 40/18 40/24 40/25 50/21 69/3
**free-exercise [2]** 22/21 23/18
**freedom [3]** 57/7 57/7 57/8
**freestanding [1]** 23/6
**frequently [1]** 41/18
**front [2]** 51/2 51/11
**fulfilling [1]** 62/1

**F**

Fulton [6]   24/14 27/5 27/22 28/1 59/24 60/24
Fund [1]   1/18
funding [1]   39/12
further [1]   29/20
furthers [2]   5/9 39/6
fuse [1]   49/25

**G**

game [1]   81/12
Garrick [2]   46/21
gate [1]   18/9
gathering [1]   50/11
gave [1]   79/12
generally [4]   6/14 69/21 70/6 70/13 70/22 72/21 73/16
74/9 75/5
general [8]   1/4 1/21 2/3 3/8 4/1 18/15 44/22 67/8
generally [8]   20/7 41/22 63/9 64/15 64/15 76/8
77/23 77/25
genuine [1]   38/9
getting [4]   4/6 8/15 38/5 59/8
give [12]   4/10 4/10 12/10 12/15 12/19 29/4 31/3
35/17 37/2 64/18 79/8 81/11
given [6]   14/19 20/1 33/4 54/4 57/16 67/17
gives [1]   27/24
glad [1]   70/14
gloss [1]   70/25
go [14]   4/4 7/17 16/1 17/5 34/10 34/22 37/18 38/2
41/4 49/3 58/6 60/10 65/7 83/13
goes [7]   12/21 12/22 24/6 29/16 47/23 61/17 69/4
going [28]   4/5 14/19 14/25 15/7 16/16 18/10 29/11
30/23 30/24 32/23 45/18 48/11 51/18 53/15 54/19
54/25 63/14 67/2 68/17 69/5 77/5 77/9 80/6 80/6
80/17 81/3 82/9 83/20
good [6]   3/13 3/16 3/16 3/17 3/20 4/18
Gospel [1]   6/25
got [5]   12/12 12/17 18/20 23/22 35/22
gotten [3]   4/12 10/10 18/9
governance [3]   9/4 9/6 14/13
government [20]   22/6 24/22 24/23 27/2 27/24 28/18
28/18 28/21 28/24 29/2 29/4 30/3 30/17 60/4 60/10
64/17 65/16 65/18 66/7 67/5
government has [1]   67/5
government's [1]   30/19
grant [7]   57/24 60/4 60/12 60/12 63/8 80/14 83/7
granted [5]   27/6 27/8 29/2 32/21 81/10
Great [1]   13/21
GREENBELT [1]   1/2
ground [8]   6/18 13/25 61/9
grounds [4]   15/13 23/17 33/12 43/11
group [1]   21/16
group's [1]   31/16
groups [1]   28/19
Guadalupe [1]   10/6
guess [16]   14/21 18/14 22/19 23/2 26/18 34/17 41/7
42/1 43/6 48/16 53/12 55/6 60/14 62/7 82/21 83/3
gut [1]   53/10
guys [2]   54/23 55/1
gymnasium [1]   11/23

**H**

hadn't [1]   68/1
hair [7]   52/15 53/1 53/1 54/6 54/6 55/16 81/11
hand [2]   45/25 46/2
handbook [1]   35/21
handle [1]   52/5
handled [1]   77/23
happen [4]   19/5 56/5 61/1 83/20
happened [2]   21/23 68/12
happens [5]   14/25 16/9 29/21 54/6 56/1
happily [1]   54/12
happy [2]   34/11 34/14
harassment [1]   14/18
hard [1]   50/11
harder [1]   30/14
harm [8]   62/8 63/7 63/9 66/7 66/9 66/13 68/10
68/12
having [7]   27/8 28/8 28/14 35/23 39/19 54/9 65/7
headquarters [1]   67/20
health [4]   7/24 31/24 32/3 35/15
hear [2]   4/8 16/1
heard [2]   43/6 80/5
hearing [1]   1/12 3/21 82/12
heavy [1]   58/12
held [9]   9/9 10/6 10/24 11/18 14/10 31/9 31/14
36/4 85/8
help [4]   4/25 7/2 54/23 54/24
helps [2]   24/8 67/3
here because [1]   74/3
hereby [1]   85/6
highlight [1]   41/11
him [1]   51/2
hire [39]   6/11 8/1 8/19 8/22 9/14 15/20 16/8 17/16
17/17 19/11 30/4 37/20 37/24 38/13 38/14 39/19
39/24 40/12 40/19 41/17 41/25 42/6 42/19 42/22
45/15 68/16 68/18 68/24 68/25 69/7 72/21 75/2 75/4
75/13 76/25 77/1 78/8 78/10 82/13
hired [4]   15/21 16/23 18/20 38/14
hiring [65]   4/23 5/2 5/6 5/7 6/4 7/19 8/11 10/25
10/25 11/6 11/7 11/11 13/18 14/1 19/14 19/22 20/15
20/17 29/14 29/18 31/9 31/15 32/8 33/22 35/5 35/22
38/13 38/25 38/25 39/3 40/23 41/20 42/14 42/20
43/8 43/24 44/6 45/18 46/3 46/15 47/1 49/2 59/9
62/15 63/4 64/21 64/25 65/2 65/13 65/15 65/23 66/1
66/22 70/8 70/21 72/2 73/15 73/25 74/19 74/23
75/17 75/25 76/7 79/10 82/25
hirings [2]   71/7 71/8
his [1]   1/8
historical [1]   21/19
history [5]   5/10 11/6 54/11 65/11 76/18
hit [1]   64/6
Hochul [2]   31/12 31/18

**H** (continued — next column)

hold [2]   12/12 59/25 65/6
holding [2]   4/22 43/23
Honor for [5]   7/11 7/12 40/21/21
5/8   57/11 52/20 58/10 59/16 63/18 64/24 64/7 65/9
46/7   57/11 52/20 58/10 59/16 63/18 64/24 64/7 65/9
67/13 67/23 68/15 70/14 80/10 81/21 82/22 83/6
83/7 83/24
Honor's [1]   49/22
HONORABLE [1]   1/12 3/5 84/8
HORTON [2]   1/8 3/9
however [2]   43/20 61/6
huge [1]   67/1
huh [1]   24/16
hundred [4]   23/8 26/5 42/10 44/17

**I**

I'll [5]   21/1 42/2 55/19 80/24 83/9
I'm [66]   4/5 4/21 12/8 12/14 12/15 12/17 16/6
17/24 18/10 18/14 21/6 21/20 22/14 23/2 23/3 28/8
23/21 24/5 34/11 34/14 34/17 36/8 37/9 38/1 40/8
40/14 43/12 45/7 46/11 48/21 49/15 49/15 49/16
50/5 50/10 50/10 50/10 50/17 51/18 52/5 53/19
54/16 55/2 58/19 61/7 61/24 65/4 65/6 65/7 67/2
69/10 70/14 73/11 73/20 73/22 74/3 74/5 77/19
77/25 78/23 79/4 80/6 80/8 81/6 81/19 82/21
I've [5]   12/17 37/11 61/9 67/3 80/5
idea [1]   31/4
identified [2]   47/22 83/12
identify [3]   3/12 16/19 60/20
identity [9]   6/14 69/21 70/6 70/13 70/23 72/21
73/16 74/9 75/15
ideological [5]   16/11 29/21 39/23 40/17 65/1
II [2]   1/3 3/9
illustrates [1]   57/15
imaginary [1]   68/3
imminent [1]   63/9
imminently [1]   62/9
immunity [1]   15/9
impacted [1]   33/21
impede [1]   32/9
impeding [1]   11/16
implicate [1]   77/24
implies [1]   56/3
importance [2]   22/10 22/10
important [1]   12/7
impose [1]   36/14
imposed [1]   22/11
imposes [1]   38/24
inchoate [1]   62/11
include [2]   78/6 78/6
included [3]   6/13 11/6 80/12
includes [2]   10/19 76/7
including [3]   22/3 67/9 73/10
inconsistent [4]   45/13 45/16 45/20 46/4
indeed [3]   43/3 56/24 62/15
independence [2]   22/5
independent [2]   23/17 53/22
index [1]   12/11
indicated [1]   67/11
indicative [1]   67/7
indirectly [1]   46/13
individual [11]   18/20 18/21 20/9 20/13 26/16 27/17
32/4 33/16 35/13 72/20 79/13
individual's [1]   38/17
individuals [18]   6/11 8/1 8/11 10/3 11/11 11/19
14/4 16/7 30/4 32/8 36/6 39/25 68/25 69/8 69/20
73/8 74/8 77/18
information [1]   50/11
infringe [1]   13/10
infringed [1]   13/5
infused [1]   13/8
initial [1]   80/1
injunction [1]   1/12 3/11 3/22 7/7 7/14 30/18 33/1
57/25 62/4 62/7 63/21 80/14 80/22 83/10
injury [2]   66/22 67/4
inquiring [2]   13/5 13/18
insincere [1]   8/13
installation [1]   46/24
instance [5]   12/10 44/23 46/21 47/13 56/7
instances [1]   17/25 47/11 48/13 70/17
institution [3]   24/2 69/19 74/7
institution's [1]   48/9
institutions [3]   48/5 48/6 56/10
institutions' [1]   50/4
intellectually [2]   45/20 45/22
intend [1]   67/10
intended [1]   28/11
intends [1]   39/11
intent [5]   28/2 28/4 28/8 52/11 68/7
intentional [2]   28/14 54/19
interact [1]   76/1
interest [18]   4/6 24/23 24/25 25/12 25/13 27/3
56/18 56/21 56/22 56/24 57/6 57/11 57/12 57/16
64/15 65/10 65/16 67/1
interested [1]   30/17
interesting [1]   42/25
interferes [2]   13/25 75/21
interferes [1]   23/10
interfering [1]   8/24
internal [3]   9/6 11/17 14/13
internally [1]   39/21
interpret [2]   70/11 76/24
interpretation [6]   15/25 26/18 51/8 69/14 69/25
72/11
interpreted [4]   11/8 19/9 20/16 77/20
interpreting [1]   15/23
interracial [1]   76/20
intervention [1]   82/12
introduce [2]   30/6 33/19
intuition [1]   32/6
invidious [6]   41/24 62/21 64/19 65/1 65/11 65/15
invidiousness [1]   29/14
invoke [1]   46/19

**I** (continued — next column)

involve [1]   77/25
involves [1]   15/7
irrational [2]   62/18
irreparable [6]   63/7 63/9 66/9 66/13 68/10 68/12
IRS [1]   31/12
is [258]
isn't [6]   27/16 30/10 30/18 43/18 43/20 45/16
issue [29]   12/22 14/25 18/5 19/18 20/24 24/10
24/15 34/1 43/14 43/15 43/19 45/5 45/9 46/14 47/24
47/25 48/14 52/3 54/14 57/3 59/4 60/6 64/13 65/3
67/25 74/2 78/14 79/10 79/17
issues [11]   4/22 14/20 22/8 24/2 33/6 34/6 34/20
56/13 57/16 80/21 83/13
italicized [1]   64/9
its religious [1]   80/4
itself [11]   7/20 23/13 26/4 26/7 33/24 38/20 41/20
42/17 51/9 64/7 80/13
IVF [1]   32/4

**J**

January [1]   31/18
JEFFREY [2]   2/2 3/18
Jesus [4]   7/23 11/22 36/13 36/14
job [1]   28/12
jobs [1]   60/19
Jones [2]   76/11 76/14
JOSHUA [3]   2/2 3/17 41/5
judge [4]   1/13 6/23 39/17 39/17
judicial [2]   82/2 85/10
jump [2]   55/21 55/23
juncture [1]   83/18
jurisdiction [2]   61/22 79/16
jury [2]   39/13 39/17
Justice [1]   11/25
justify [2]   29/4 65/16

**K**

keep [2]   22/18 67/2
Kennedy [4]   21/14 21/19 24/18 49/19
Kevin [1]   5/21
kicks [1]   56/15
kind [26]   9/7 10/25 13/17 14/17 14/24 15/5 16/3
16/20 17/24 19/18 21/13 25/7 26/3 33/14 33/14 37/1
40/23 43/8 49/14 50/24 52/16 55/14 57/19 66/4
79/16 83/3
kinds [2]   16/21 65/19
knew [1]   35/6

**L**

labels [1]   24/21
laches [1]   66/14
Lady [1]   10/6
laid [1]   21/2
land [3]   26/6 29/10 59/8
landed [1]   81/17
landscape [1]   21/2
language [11]   50/19 51/9 65/4 65/5 69/13 69/18
71/14 71/25 74/25 81/3 81/6
large [2]   26/13 67/15
largely [1]   33/10
larger [1]   10/12
last [4]   24/15 41/2 72/4 72/5
latter [1]   9/2 11/22
Latter-Day [1]   11/22
law [49]   5/7 6/10 11/2 13/13 17/8 18/16 19/1 19/9
20/11 20/15 20/16 24/5 31/23 32/2 35/2 37/23 38/10
38/11 38/16 38/24 41/2 41/18 41/25 42/3 43/3 43/8
49/22 55/6 55/7 65/21 66/3 67/10 67/12 67/25 68/2
68/6 70/18 71/11 74/21 76/9 77/6 77/7 77/10 78/12
78/14 78/22 78/24 79/4 79/7 79/24
laws [4]   11/4 43/15 68/4 76/5
lawsuit [1]   5/8
lawsuits [1]   6/13
lays [2]   17/13 78/15
leadership [1]   46/25
leans [1]   22/23
least [27]   9/20 25/23 27/20 33/18 41/12 41/14
42/13 42/24 44/5 45/9 45/9 46/4 46/10 46/18 47/9
47/20 48/1 48/18 48/18 48/19 50/18 51/17 53/20
53/20 57/15 60/1 63/21
led [3]   46/19 59/25 62/12
ledger [1]   57/17
Leeper [3]   85/4 85/15 85/16
legal [5]   16/18 33/9 33/10 33/12 57/22
legally [2]   47/24 52/7
legislative [1]   11/16 54/11
Legislature [3]   6/17 68/5 77/7
lend [1]   33/6
lesbian [1]   14/5
less [8]   24/2 25/16 26/2 26/16 51/5 51/22 59/20
64/13
level [2]   32/22 54/2
liability [2]   62/11 62/12
Liberty [1]   1/18
lies [1]   27/22
lifestyle [1]   14/7
light [3]   21/22 33/3 33/3
likelihood [4]   7/9 62/5 66/11 68/13
likely [8]   28/10 55/24 59/14 59/15 62/9 62/19
63/10 66/25
limit [4]   2/4 46/10 55/12 55/13
limited [7]   10/3 10/5 45/14 47/11 47/13 61/18
73/19
litigated [1]   79/6
litigation [2]   22/8 31/9
little [7]   18/1 32/23 41/9 52/3 52/12 59/17 82/6
live [5]   35/22 36/7 67/22 79/20 80/12
lobby [1]   6/24
logic [3]   23/22 27/11 51/7

**L**

long [9] 41/16 43/25 44/2 51/21 68/2 70/11 80/1 82/22 83/1
longer [3] 4/4 6/17 39/9
look [9] 6/15 11/15 13/21 14/11 14/17 15/4 24/22 35/22 52/1 52/8 53/21 54/11 54/19 66/17 78/19 79/24 80/19
looked [1] 78/17
looking [10] 12/4 18/24 21/16 22/1 36/2 48/2 61/24 65/4 69/11 69/12 78/23
looks [2] 54/22 67/11
lot [12] 10/23 10/24 43/14 43/18 44/20 48/18 53/4 55/25 79/12 82/13 83/13
lots [1] 40/16
LUOMA [2] 2/2 3/19

**M**

made [8] 14/6 33/8 43/16 59/16 63/10 65/18 67/8 83/25
main [2] 7/11 14/3
major [1] 45/9
majority [1] 11/5
make [17] 4/8 20/21 27/24 28/9 34/12 34/15 40/22 43/24 44/6 48/1 49/7 59/18 61/3 62/14 65/10 73/11 77/2
makes [1] 82/1
Makin [1] 64/4
making [5] 21/12 22/6 28/24 41/12 41/13
manner [1] 55/11
many [14] 10/15 17/25 21/4 22/2 30/25 42/7 48/4 48/5 48/5 48/13 67/17 67/17 67/21 70/17
March [2] 4/21 5/1
marriage [3] 76/16 79/13 79/21
Mary [1] 6/23
MARYLAND [43] 1/1 2/3 3/4 5/3 5/4 5/6 5/16 5/17 5/17 5/18 5/18 6/1 6/25 6/20 19/8 20/16 25/3 40/2 40/21 42/22 42/25 43/4 60/4 64/20 65/11 67/15 67/18 67/19 67/22 68/6 70/16 70/24 70/25 71/11 75/8 77/6 77/8 78/16 78/16 78/20 78/21 81/7 85/6
Maryland's [1] 6/10
math [1] 13/3
matter [22] 3/7 15/22 25/9 26/8 29/1 33/15 41/15 42/5 42/16 44/1 44/22 47/25 49/24 60/17 61/4 61/21 63/25 67/14 71/23 81/4 83/9 85/9
matters [4] 45/4 50/7 58/11 82/9
may [22] 4/3 4/19 8/1 8/7 12/9 17/20 17/25 31/9 34/5 41/17 44/10 44/10 44/10 44/22 44/23 45/14 47/11 58/10 62/19 65/24 66/14 73/10 74/18
maybe [22] 4/13 5/10 5/11 7/2 7/4 8/15 12/19 18/9 25/23 26/12 50/16 53/2 53/8 54/15 56/16 60/18 60/19 65/3 77/3 78/17 82/17 83/18
McFARLAND [2] 1/21 3/5
MD [1] 1/22 2/4
mean [54] 4/1 5/12 7/3 10/10 10/15 15/2 15/3 17/15 22/20 23/22 26/12 26/21 28/4 28/16 29/7 29/16 30/14 30/20 31/5 32/16 32/25 33/11 35/7 35/21 35/23 37/3 37/20 45/13 46/11 47/16 47/18 49/13 50/16 53/5 53/14 53/16 54/12 54/12 54/24 55/19 55/25 56/2 57/1 57/2 57/24 58/2 59/13 64/16 67/19 69/12 76/22 80/17 83/2
meaning [1] 69/16
meaningful [1] 54/4
means [8] 7/20 28/13 28/15 39/7 64/17 71/5 75/7 79/1
meant [1] 34/8
mechanism [2] 27/23 29/3
mediator [1] 83/19
meet [2] 35/6 35/7
meets [1] 51/21
member [9] 8/19 9/11 14/9 15/21 18/6 18/8 19/2 30/23 30/24
members [11] 8/6 8/6 8/12 9/8 30/5 30/23 31/5 51/5 52/6 77/1 78/10
membership [19] 9/7 51/23 51/25 52/12 52/24 52/25 53/12 54/7 54/22 55/4 55/10 55/11 56/5
men [2] 18/24 46/24
mentioned [4] 23/21 31/7 40/9 52/1
mere [1] 25/17
merits [3] 62/5 66/12 68/13
message [3] 8/5 8/10 8/12
MFEPA [3] 5/5 6/21 69/13
middle [1] 75/15
might [17] 13/10 34/1 34/2 43/9 52/10 52/11 53/13 54/2 57/2 58/13 58/15 59/18 59/21 77/24 79/19 83/20 83/21
military [1] 69/22 70/6 70/13 74/9 75/5
mind [1] 53/20
minist [1] 5/25
minister [8] 10/14 10/18 14/9 46/23 47/24 47/25 59/7 59/9
ministerial [30] 9/19 9/25 10/12 10/14 10/7 10/8 10/13 11/19 14/11 18/13 22/23 22/25 39/5 44/3 44/12 45/8 45/16 45/17 45/24 46/6 46/14 47/1 47/8 47/23 48/22 49/8 59/18 60/15 61/18 70/19
ministers [6] 10/10 10/12 16/22 47/10 60/20 75/14
minutes [1] 4/7
mischief [1] 49/5
mission [22] 5/9 7/1 9/16 31/22 32/7 32/8 32/9 38/20 38/24 39/6 39/20 39/22 40/1 40/10 40/13 40/20 47/15 62/1 62/15 63/4 80/12
mission-aligned [2] 62/15 63/4
Montgomery [2] 5/20 6/3
Montrose [4] 5/17 5/19 5/21 43/2
more [20] 9/2 9/15 25/2 25/24 27/2 28/10 33/24 35/18 39/8 51/14 51/15 51/19 54/11 56/17 59/17 63/20 64/10 72/16 77/25 78/15
morning [2] 3/11 3/16
most [12] 6/20 6/21 31/10 33/3 34/5 34/6 36/11 42/8 45/9 53/12 64/19 64/19
motion [23] 3/10 3/22 3/23 4/13 30/19 31/17 31/20 32/21 32/25 33/3 33/17 34/2 77/20 78/10 58/18 63/22 80/15 80/20 83/7 83/8 83/10

**N**

NAACP [3] 31/7 32/16 40/9
names [1] 21/8
narrow [1] 10/19
narrowly [3] 56/18 56/23 65/21
nation [2] 11/3 65/13
naturally [2] 30/15 82/17
nature [3] 8/3 33/20 82/4
NCAAP [1] 29/17
NCAAP v. Button [1] 29/17
nearly [1] 68/1
necessarily [2] 39/2 50/5
necessary [2] 36/19 39/16
need [19] 4/9 7/7 7/8 15/4 21/20 22/18 23/3 23/16 28/6 29/8 33/7 34/23 48/12 52/1 54/11 58/4 59/9 83/14
needed [2] 29/19 33/24
needs [1] 74/17
neither [1] 13/12
neutral [2] 26/1 51/3 64/15 76/8
never [5] 5/13 10/10 29/2 29/25 37/11
New [1] 32/2
next [1] 65/8
nicetiee [1] 15/5
NICHOLAS [1] 1/17
Nick [1] 3/14
nitpicking [1] 65/24
NLRB [12] 12/23 12/24 13/1 13/1 13/2 22/4 22/7 22/12 23/5 61/13 61/21 64/1
NLRB v. Catholic [1] 12/23
no [33] 5/6 5/16 6/17 11/1 16/6 17/21 24/2 27/7 28/14 29/14 37/11 39/8 43/21 43/23 54/9 56/8 56/8 57/24 64/11 64/22 65/16 65/12 67/5 71/13 73/15 73/20 73/20 76/8 78/23 78/23 80/10 83/3 83/6
nobody [2] 35/10 70/15
non [4] 22/10 70/19 75/8 77/14
non-importance [1] 22/10
non-ministerial [1] 70/19
non-pretextual [1] 77/14
non-zero [1] 75/8
noncompliance [1] 19/12
nondiscrimination [5] 11/2 11/4 17/7 24/25 70/18
none [2] 66/10 66/15
nonreligious [6] 13/2 17/9 24/1 26/20 31/1 40/17
nonsecular [1] 24/10
nonuse [1] 34/25
normal [1] 62/24
normally [1] 67/17
not [186]
noted [1] 83/17
NOTES [1] 1/25
nothing [5] 39/18 65/1 65/15 66/17 84/5
notion [1] 14/23
notwithstanding [1] 14/10
nuance [1] 58/14
number [9] 1/6 3/8 4/1 4/4 4/3 12/2 31/11 52/21 54/8 67/22
numerous [1] 67/8
NW [1] 1/18

**O**

obey [1] 78/10
obeying [1] 78/11
objection [2] 73/15 74/19
obligation [1] 38/15
obligations [2] 71/6 71/10
observance [3] 7/24 8/9 36/12
observe [3] 8/2 8/11 35/15
obvious [1] 61/3
obviously [11] 28/3 30/14 33/2 34/24 49/13 50/19 57/1 57/12 71/14 73/10 80/7
occupational [9] 27/13 52/2 54/17 59/3 59/11 59/19 59/23 60/3 60/23
off [2] 4/3 4/5
offer [1] 34/9
offered [1] 83/14
Office [1] 2/3
official [4] 1/8 85/1 85/4 85/17
officially [1] 77/1
okay [48] 3/16 3/20 7/17 12/12 19/15 20/21 20/23 25/4 27/9 32/18 32/23 34/1 34/4 34/5 36/11 40/14 41/3 41/8 43/13 43/13 49/10 55/19 56/12 56/12 57/14 57/20 58/18 58/21 59/2 60/13 61/7 61/8 62/17 63/17 63/17 65/7 73/1 80/5 80/9 80/16 80/25 81/14 83/2 83/3 83/4 83/9 84/6 84/25
old [2] 1/22 66/3
once [6] 26/4 27/6 28/24 35/6 37/23 38/14
one [50] 7/8 7/14 8/14 14/17 18/18 16/15 20/3 22/15 23/21 24/13 27/16 30/17 30/18 34/16 34/20 35/18 39/8 42/3 42/3 42/14 44/17 45/25 48/11 51/2 51/2 52/18 52/21 52/22 53/9 53/10 53/20 55/16 55/20 58/17 59/2 61/13 63/22 63/24 64/7 65/6 75/22 76/5 81/3 81/21 81/15 82/8 82/10 83/25
ones [4] 45/9 51/5 51/5 77/9

**only [20]** 6/4 7/8 7/13 9/22 11/10 12/1 20/11 23/4 26/20 28/12 41/18 46/24 55/16 56/22 63/7 75/3 75/8 75/12 76/24 82/10
open [4] 4/5 5/10 81/1 84/5
opens [1] 39/4
operate [2] 48/5
operated [1] 62/1
opining [1] 61/20
opinion [2] 12/1 39/14
opportunistic [1] 82/9
opportunities [1] 39/9
opportunity [5] 4/11 18/23 37/15 61/11 79/25
opposed [1] 31/5
opposition [1] 39/21
opted [1] 34/5
option [1] 79/22
options [1] 7/15
order [2] 3/2 65/25
ordinarily [1] 4/10
ordination [1] 46/24
organization [43] 7/25 8/4 11/12 13/19 16/11 22/11 27/4 28/17 28/22 29/5 29/15 29/19 29/20 29/24 30/7 30/25 31/21 35/12 35/13 38/12 38/19 39/1 39/9 39/10 39/23 40/6 40/10 42/20 45/4 49/22 52/23 53/16 64/21 66/21 67/15 69/14 73/11 73/14 73/15 74/15 78/8 78/9 82/1
organization's [4] 46/24 68/16 80/11 82/25
organization-wide [1] 49/2
organizations [48] 4/22 4/25 5/2 6/11 11/17 12/14 14/1 15/10 16/8 16/10 23/11 25/8 25/10 25/11 26/8 26/9 26/11 28/20 29/21 29/23 30/4 30/11 32/5 33/5 36/6 40/17 41/25 42/6 43/21 43/24 49/5 51/4 52/14 54/15 54/24 61/22 63/1 64/24 64/25 65/1 65/2 65/14 66/5 70/18 71/6 72/2 72/2 77/11 81/1
organizations' [1] 9/10
organize [2] 12/24 13/1
orientation [10] 6/14 69/21 70/6 70/13 70/22 72/21 73/16 74/9 74/20 75/5
other [60] 8/5 8/23 9/17 9/23 12/21 14/3 14/9 16/10 16/20 16/21 16/22 17/3 19/16 19/18 23/24 25/4 25/24 32/14 34/10 36/23 37/1 37/2 37/4 39/20 39/23 39/23 40/6 42/4 43/3 43/5 43/7 43/15 43/20 44/2 46/2 46/6 46/17 47/24 48/11 49/19 53/2 53/17 57/16 59/2 62/5 64/12 64/16 68/9 69/3 69/16 71/22 73/10 75/17 75/22 76/2 76/5 76/19 77/3 79/8 81/25
others [4] 43/12 50/24 53/3 68/18
otherwise [3] 37/8 56/4 59/21
out [40] 4/15 4/25 7/2 9/16 11/12 12/1 12/7 14/2 17/13 20/2 21/11 22/13 23/2 26/5 28/15 29/23 31/18 33/23 38/20 38/23 39/16 39/25 39/25 40/12 42/5 48/24 49/17 50/1 52/14 53/10 54/23 54/24 57/25 59/21 55/23 61/23 62/8 68/17 75/14 78/15 80/7 80/12
outs [1] 55/6
outside [7] 11/19 22/3 36/20 44/20 60/15 79/13 83/20
over [6] 5/8 12/5 18/10 22/17 24/12 61/22
overall [1] 63/20
overcome [1] 31/17
overlap [1] 56/6
override [1] 76/13
overriding [1] 65/16
overruled [1] 5/13
overturned [2] 31/20 39/17
own [9] 8/8 42/14 45/15 48/1 58/3 70/9 77/4 78/11 82/13

**P**

p.m [2] 1/13 84/10
page [1] 85/9
pain [2] 7/24 36/12
paper [1] 7/4
part [9] 8/16 32/7 44/11 52/4 60/5 69/10 70/8 72/12 80/12
participation [1] 55/13
particular [29] 6/12 11/11 14/21 24/20 40/10 41/10 47/13 48/9 51/5 54/19 59/14 69/21 70/6 70/8 71/18 72/13 73/8 73/24 75/4 75/2 75/4 75/18 75/25 77/16 77/18 77/20 78/4 81/8
particularly [4] 7/6 50/7 57/4 58/12
parties [1] 60/5
party [2] 4/11 21/4
passed [1] 77/7
past [3] 24/7 43/16 62/16
path [2] 23/16 49/18
pattern [1] 44/21
Paul [1] 2/3
Paula [3] 85/4 85/15 85/16
pay [1] 8/7
PE [1] 13/3
penalized [1] 6/2
penalizing [1] 35/13
pendency [1] 63/15
pending [2] 3/7 3/21
Pennsylvania [1] 1/14
people [35] 8/22 9/14 10/14 10/19 11/19 17/16 25/16 27/11 35/3 39/19 41/25 42/14 44/12 45/15 47/10 48/6 51/22 68/16 70/5 70/8 71/11 72/4 75/1 75/2 75/4 75/13 75/14 75/15 75/18 76/21 77/1 77/3 77/9 77/20 82/13
percent [9] 23/8 25/3 26/5 42/10 44/17 53/6 64/20 78/14 78/20
perfect [1] 26/2
perhaps [4] 7/4 17/14 34/18 49/23
permissible [1] 18/11
person [5] 28/12 38/1 60/10 60/12 77/18
Philadelphia [4] 24/18 27/6 27/22 60/8 60/9 60/10
Philadelphia's [1] 59/25
phrase [3] 73/24 74/2 78/5
phrasing [1] 77/20
PI [1] 83/7
pick [1] 63/1
picking [1] 25/12

**P**

**piece [3]** 9/18 49/19 70/21
**Pike [1]** 1/22
**pin [1]** 51/11
**place [4]** 2/3 17/12 23/4 60/5
**placed [3]** 40/21 55/10 71/6
**places [6]** 21/9 24/22 47/9 47/9 56/1 57/6
**plaintiff [9]** 17/4 17/7 18/23 33/4 35/11 37/15 46/22 62/25 64/16
**plaintiffs [21]** 1/6 1/16 3/14 3/22 3/24 4/8 4/16 4/19 5/8 33/12 33/19 41/11 42/13 58/3 60/2 60/18 62/6 63/14 81/2 81/17 82/5
**plausibility [1]** 58/25
**plausibly [2]** 53/23 54/1
**pleaded [1]** 63/3
**pleadings [1]** 62/14
**please [3]** 3/6 3/12 4/20
**point [25]** 18/10 19/6 20/13 25/24 31/6 31/11 42/14 45/7 49/22 59/16 59/22 60/13 62/3 62/7 63/8 64/22 65/8 67/13 67/23 75/24 81/13 81/15 82/6 83/17 83/25
**pointed [2]** 42/5 62/8
**points [4]** 46/16 61/12 63/22 81/1
**policies [1]** 9/8 13/8
**policy [2]** 77/1 81/4
**political [1]** 31/10
**poorly [1]** 64/12
**position [14]** 12/5 12/6 36/17 39/4 39/6 39/10 39/11 39/12 39/15 50/10 63/13 63/13 63/15 83/23
**positions [3]** 46/25 67/17 70/19
**possibility [1]** 58/17
**possible [1]** 7/3
**post [1]** 67/17
**postings [3]** 67/11 67/21 71/7
**potential [2]** 12/3 36/15 58/1
**potentially [1]** 13/10
**practical [2]** 49/24 67/14
**practically [2]** 21/6 50/18
**practice [6]** 12/4 17/25 66/22 78/4 78/5 78/12
**practices [10]** 5/15 13/18 14/1 20/18 62/16 63/4 69/2 69/9 79/11 80/11
**prayer [2]** 36/25 36/25
**pre [3]** 66/23 67/4 67/25
**pre-enforcement [2]** 66/23 67/4 67/25
**precise [2]** 55/3 61/24
**preclude [1]** 82/8
**prefer [3]** 29/23 57/12 80/23
**preference [1]** 42/7
**pregnancy [2]** 31/14 79/13
**pregnant [1]** 18/20
**prejudice [1]** 66/15
**preliminary [12]** 1/12 3/11 3/22 7/6 30/18 33/1 57/25 62/4 62/7 63/21 80/14 83/10
**premise [1]** 58/8
**prepared [1]** 60/21
**present [1]** 68/4
**presentation [1]** 33/8
**preserve [1]** 42/5
**presiding [3]** 3/5 12/11 12/11
**presumably [2]** 18/9 57/24
**presumes [1]** 68/5
**pretext [5]** 15/16 37/14 38/9 79/18 80/1
**pretextual [3]** 17/11 37/16 77/14
**pretty [8]** 12/18 44/15 47/5 48/8 50/24 52/6 54/14 75/19 79/1
**prevail [2]** 37/12 56/16
**preventing [2]** 56/22 57/11
**prevents [1]** 14/23
**previously [1]** 63/5
**primarily [1]** 33/4
**principle [5]** 13/16 13/17 15/3 23/10 44/9
**principles [7]** 11/1 13/20 22/2 30/7 30/8 36/20 68/8
**prior [1]** 66/2
**prioritize [1]** 7/4
**private [13]** 51/23 51/24 52/12 52/24 52/24 53/12 54/7 54/22 55/4 55/8 55/10 55/10 56/5
**probably [3]** 36/17 53/6 59/11
**problem [8]** 5/6 11/14 20/4 20/5 20/6 38/24 48/7 56/14
**procedure [1]** 63/25
**proceed [1]** 15/1
**proceeding [1]** 62/15
**proceedings [2]** 84/10 85/8
**process [2]** 13/5 23/3
**produce [2]** 79/25 80/11
**profits [1]** 22/8
**prohibit [1]** 76/6
**prohibited [1]** 31/23
**prohibition [2]** 56/24 65/12
**prohibits [1]** 32/2
**prong [3]** 66/22 67/4 69/17
**propagate [1]** 68/19
**properly [1]** 8/17
**proposal [1]** 10/21
**proposed [1]** 65/25
**protect [4]** 39/18 42/12 42/16 74/17
**protected [10]** 5/5 14/13 15/15 17/1 39/24 40/18 41/15 71/8 78/21 82/25
**protection [3]** 38/12 45/3 72/10
**protections [2]** 72/8 73/10
**protects [2]** 19/13 80/13
**protest [1]** 46/25
**prove [3]** 28/21 32/7 60/21
**provided [1]** 6/10
**provides [1]** 10/1
**provision [5]** 6/7 25/16 28/23 45/10 59/20
**provisions [2]** 60/1 76/20
**public [1]** 67/9
**publicly [1]** 46/23
**pull [2]** 12/20 79/15
**purely [1]** 57/22
**purpose [9]** 3/10 10/10 30/7 49/6 53/8 53/14 54/25

55/3 68/19
**purposes [4]** 50/8 51/17 58/18 73/25
**pursuant [1]** 85/4
**put [3]** 12/9 36/23 69/2
**putting [1]** 7/3

**Q**

**qualification [12]** 27/13 28/7 52/2 54/18 59/3 59/6 59/12 59/19 59/23 60/3 60/21 60/24
**qualifications [1]** 58/22
**quarrel [1]** 51/18
**question [31]** 5/10 8/14 11/1 13/9 13/13 14/11 18/12 19/15 19/17 22/19 26/9 30/2 32/19 33/9 34/16 39/4 41/22 47/17 49/11 49/12 51/10 57/21 57/22 59/3 64/14 67/5 68/10 69/5 70/3 80/8
**questioned [3]** 9/12 39/17 68/9
**questions [22]** 4/5 4/6 20/3 30/22 33/11 34/6 39/5 39/13 39/13 49/22 49/24 50/1
**quick [5]** 4/13 61/12 63/22 81/1 81/13
**quickly [1]** 83/11
**quintessential [1]** 16/14
**quite [4]** 10/19 62/14 81/16 82/14
**quo [3]** 6/9 19/1 40/2
**quote [10]** 7/19 10/7 31/9 51/10 51/13 51/15 57/10 61/24 62/10 64/8
**quoted [1]** 81/4

**R**

**race [11]** 15/11 16/2 37/8 41/21 76/2 76/2 76/4 76/7 76/18 76/19 77/4
**racial [2]** 76/12 78/21
**raise [2]** 61/10 61/11
**raised [6]** 20/24 21/5 34/20 49/25 50/1 56/13
**rarely [2]** 16/8 29/25
**rather [8]** 8/25 10/18 27/12 81/9
**rational [4]** 29/10 29/14 30/13 38/21
**rational-basis [1]** 29/10
**Rayburn [5]** 21/3 21/11 22/13 22/13 22/13
**read [8]** 25/23 25/24 44/5 74/3 74/25 77/5 81/6 81/9
**reading [1]** 11/1
**real [1]** 11/1
**realy [26]** 17/14 20/10 22/4 27/3 27/17 30/19 33/9 33/15 36/19 36/21 37/4 37/10 41/11 43/1 45/13 46/11 48/8 50/24 52/9 53/16 54/19 55/14 61/8 62/11 80/21 82/8
**realm [1]** 61/18
**reason [35]** 15/14 15/15 15/15 16/4 16/19 16/25 17/1 17/14 17/5 17/9 17/12 18/22 18/25 22/18 34/2 35/11 37/7 37/13 41/1 42/3 52/14 54/20 54/23 55/9 56/10 61/3 64/23 71/12 72/23 72/24 73/4 76/7 77/12 77/15 79/20
**reasonable [2]** 43/17 82/14
**reasonably [1]** 38/16
**reasons [6]** 11/15 16/8 46/1 52/20 72/22 76/5
**REAVES [2]** 1/17 3/15
**rebuttal [1]** 4/11
**recent [3]** 21/14 22/15 68/4
**recently [2]** 6/12 10/6
**recognize [1]** 62/3
**recognized [6]** 7/19 11/14 11/24 13/14 29/17 36/4
**reconciled [1]** 72/11
**reconstrued [1]** 5/7
**record [2]** 3/12 55/3
**refer [2]** 46/18 47/15
**reference [1]** 41/24
**referenced [1]** 52/8
**referring [7]** 40/5 40/7 40/8 77/19 78/1 81/6 81/9
**refers [1]** 51/10
**refusal [1]** 67/7
**refuse [1]** 78/10
**refused [1]** 67/6
**regarding [1]** 79/21
**regardless [4]** 43/2 46/22 49/7 55/9
**reject [1]** 51/11
**regulation [1]** 6/3
**regulations [1]** 85/10
**reinforce [1]** 59/22
**reinterpreted [1]** 40/3
**related [1]** 48/22
**relates [1]** 72/12
**relational [1]** 59/21
**reliance [1]** 61/13
**relief [12]** 20/10 20/11 65/19 65/25 66/4 81/17 81/22 81/24 81/25 82/5 82/8 82/9
**relies [2]** 22/25 23/1
**religion [62]** 6/4 6/12 8/18 11/11 15/7 15/20 15/21 17/17 17/19 17/23 19/11 19/22 28/23 35/2 37/17 38/2 40/22 41/22 42/1 42/14 42/20 43/22 45/11 45/16 45/19 52/9 56/22 56/25 57/5 57/7 60/23 69/21 70/8 70/9 70/22 71/19 72/3 72/13 72/19 73/9 73/25 74/9 75/2 75/3 75/13 75/18 75/19 75/20 75/25 76/1 76/2 76/2 77/16 77/18 77/21 77/25 78/3 78/25 79/1 81/5 82/13 82/16
**religion-wins-all [1]** 28/23
**religionists [2]** 41/18 42/7
**religions [1]** 48/4
**religious [209]**
**rely [1]** 21/3
**remanded [1]** 31/20
**remember [1]** 78/4
**removed [1]** 74/14
**reported [1]** 85/8
**REPORTER [3]** 85/1 85/4 85/17
**reproductive [2]** 31/23 32/3
**request [4]** 65/25 81/21 81/24 82/7
**requesting [1]** 82/5
**require [9]** 16/11 16/16 28/2 35/2 36/24 40/11 48/8 58/25 79/20
**required [6]** 36/7 36/23 36/24 37/2 37/22 40/12
**requirement [3]** 28/8 60/11 63/6
**requirements [3]** 35/6 35/7 51/21
**requires [5]** 17/22 41/14 41/22 78/9 81/25

**requiring [2]** 8/22 22/9
**reserve [1]** 33/19
**respect [29]** 19/20 20/20 70/5 73/6 74/8 81/7 81/17 82/1
**respectfully [3]** 55/15 63/10 83/7
**respond [4]** 34/12 34/15 63/23 83/25
**responded [1]** 49/14
**response [2]** 42/1 81/2
**rest [1]** 80/22
**restate [1]** 20/8
**resting [1]** 82/24
**restrict [1]** 6/4
**result [2]** 62/9
**retaining [1]** 6/2
**return [2]** 15/12 40/2
**reversed [1]** 32/12
**rewrite [1]** 69/24
**rewritten [1]** 6/24
**rewrote [1]** 6/19
**rid [1]** 38/5
**right [44]** 7/14 9/19 14/15 16/24 23/16 25/20 26/14 27/10 27/21 29/8 30/10 30/14 30/21 32/6 32/12 33/16 33/19 37/6 37/21 38/4 42/14 42/18 43/24 44/6 44/13 46/7 54/6 55/3 62/23 63/2 63/9 70/20 71/3 72/7 72/9 72/10 72/14 72/13 73/19 73/22 74/12 75/23 81/24 83/2
**Rights [1]** 1/9
**rise [2]** 3/3 84/8
**risk [1]** 13/4
**road [1]** 22/18
**role [2]** 28/7 61/25
**room [1]** 36/25
**rooted [10]** 41/16 41/19 43/25 44/7 46/3 49/3 49/7 50/2 82/3 83/1
**round [2]** 4/14 4/15
**rounds [1]** 84/2
**RPR [1]** 85/16
**rule [26]** 14/22 15/12 15/16 17/12 18/17 18/19 19/6 19/7 26/19 26/22 27/12 33/5 33/11 33/12 35/9 37/24 40/3 48/2 48/7 48/8 48/18 49/19 70/25 72/5 76/22
**ruled [5]** 5/1 5/19 6/23
**rules [7]** 35/23 36/1 36/12 36/14 37/6 47/21 52/7
**ruling [10]** 12/23 36/2 36/9 37/23 40/21 69/11 70/3 76/23 77/5 83/23
**rulings [1]** 36/11
**run [1]** 35/5

**S**

**sabbath [8]** 7/24 8/3 8/9 8/11 35/16 36/12 78/10 78/11
**sacrificing [1]** 8/7
**said -- and [1]** 69/7
**Saint [1]** 2/3
**Saints [1]** 1/22
**salon [5]** 53/1 53/1 54/6 55/16 81/11
**salons [1]** 52/15
**same [24]** 17/11 17/24 17/25 18/25 21/4 21/8 25/7 25/10 25/16 26/9 40/22 42/20 42/22 42/23 43/9 43/22 44/21 48/4 49/11 49/14 52/15 62/15 66/20 73/24
**satisfied [1]** 66/22
**satisfy [2]** 64/23 67/4
**Saturday [1]** 8/9
**Saturdays [1]** 35/10
**saying [54]** 4/3 6/7 8/16 11/1 14/16 15/21 16/1 16/6 17/18 17/22 18/7 18/11 18/12 19/8 20/5 20/14 23/5 26/8 27/15 28/2 28/9 29/5 33/15 35/4 36/10 36/18 38/2 40/22 47/16 47/21 49/15 50/10 52/13 53/8 54/18 61/16 67/10 69/13 70/10 71/19 71/21 72/14 73/1 73/2 75/2 75/24 76/22 76/24 78/24 81/10 81/20 82/11 82/17 82/21
**saying if [1]** 28/2
**scenario [6]** 17/14 19/24 43/9 53/3 81/6 81/9
**school [4]** 5/19 5/22 6/1 62/2
**schools [3]** 13/2 13/8 13/24 56/7
**scope [3]** 46/6 66/5 82/23
**scrutiny [12]** 25/14 26/4 26/6 26/22 27/2 27/25 50/25 56/16 57/13 64/11 64/22 76/9
**seated [1]** 3/6
**second [9]** 4/14 12/13 22/19 31/12 31/19 32/22 65/6 69/10 71/10
**Section [1]** 76/6
**secular [23]** 24/9 24/11 25/10 25/25 26/8 26/11 26/21 51/13 51/15 51/21 52/24 53/1 53/4 53/7 53/13 55/15 55/22 55/22 64/9 64/12 74/13 81/5 81/8
**see [21]** 11/20 12/17 22/18 23/4 23/22 27/11 27/14 32/24 33/6 42/3 44/8 49/18 50/11 52/1 52/2 54/3 58/4 58/15 61/2 65/5 67/12
**seeking [3]** 7/13 62/7 81/18
**seemed [5]** 14/16 14/24 19/25 42/11 82/14
**seems [11]** 10/11 21/10 48/17 48/17 48/19 52/13 54/13 54/14 57/9 57/11 59/25 77/11
**seen [3]** 60/15 60/25 61/6
**SEGAL [7]** 2/2 3/17 41/4 41/5 63/23 80/19 84/4
**Segal's [1]** 75/24
**select [1]** 10/3
**send [2]** 8/5 8/10
**sends [1]** 8/12
**seniority [6]** 23/23 24/3 27/12 51/6 51/22 54/17
**sense [5]** 4/24 16/9 30/11 56/14 82/6
**sensitive [1]** 9/16
**separate [9]** 21/22 22/24 56/4
**services [1]** 54/9
**session [1]** 3/4
**set [5]** 4/2 10/3 45/22 58/23 68/20
**setting [1]** 9/16
**settlement [1]** 83/19
**SEVENTH [11]** 1/4 1/21 3/9 7/22 8/12 8/16 16/17 20/12 67/20 74/22 77/2
**SEVENTH-DAY [1]** 1/4 1/21 3/9 7/22 8/12 8/16 16/17 20/12 67/20 74/22 77/2

## S

```
several [1]  34/7
severity [1]  4/2
sex [3]  15/11 16/2 63/1
sexual [11]  6/14 14/18 69/21 70/6 70/12 70/22
  72/21 73/15 74/9 74/19 75/4
sexuality [1]  70/15
share [1]  39/25
shift [1]  64/4
short [2]  39/4 51/12
shortcut [1]  54/21
shorthand [2]  46/1 54/18
shoulder [1]  12/5
shouldn't [2]  69/7 76/15
show [10]  17/10 18/23 31/21 37/15 40/25 48/10
  64/17 66/24 79/25 80/3
showed [1]  27/7
showing [5]  27/2 28/2 30/3 33/20 63/11
shown [1]  68/14
shows [1]  28/17
sic [2]  22/8 68/25
side [9]  4/3 42/4 43/3 43/21 44/2 46/17 56/14
  57/16 66/15
side's [1]  23/24
sides [1]  21/1
significant [1]  10/18 13/4 31/15
Silver [1]  1/22
similar [5]  21/21 50/15 55/6 62/23 67/25
simply [1]  23/10
since [3]  63/21 65/13 83/15
sincere [5]  48/2 73/3 74/4 77/12 77/13 79/11
sincerely [2]  39/14 39/15
sincerity [1]  41/23
single [3]  66/9 66/11 68/10
situation [7]  19/12 19/24 19/5 20/13 43/6 43/7
  56/20
situations [4]  16/24 33/16 45/18 82/9
size [2]  39/9 54/14
Slattery [3]  31/12 32/10 32/19
slippery [1]  18/14
slope [1]  18/14
small [3]  25/18 25/18 54/15
smaller [3]  13/24 13/24 24/1
Smith [1]  30/12
so [149]
society [2]  69/20 74/7
somebody [5]  28/9 41/21 42/19 43/22 79/2
somehow [1]  50/12
someone [20]  8/19 15/20 16/2 16/24 17/3 17/15 28/3
  28/4 28/6 28/12 37/20 37/24 43/10 45/10 45/18
  47/24 56/4 59/8 60/17 78/6
someone's [1]  78/25
something [24]  5/13 10/12 10/14 15/18 18/7 23/13
  26/20 26/23 26/25 27/1 27/19 45/1 45/12 48/2 55/23
  56/14 57/8 57/18 59/6 60/3 61/5 69/4 72/19 83/20
sometimes [2]  14/24 83/17
somewhere [1]  26/23
sorry [3]  31/25 73/20 74/3
sort [17]  8/24 10/17 10/18 14/16 17/22 17/23 20/2
  27/17 31/3 33/14 41/9 43/16 44/6 52/4 57/3 57/21
  61/14
sorts [1]  49/5
sought [1]  20/10
sounds [2]  10/19 82/15
speak [2]  39/21 45/4
special [1]  40/22
specific [11]  19/14 43/15 43/18 46/19 48/9 48/25
  54/5 54/11 60/22 61/19 82/4
specifically [6]  6/12 11/5 21/11 32/20 57/19 78/16
specified [2]  24/20 51/21
spectrum [1]  52/1
speculative [1]  68/3
speech [5]  32/16 32/17 40/18 57/8 63/1
spent [2]  44/20 63/20
sphere [1]  22/5
spirit [1]  45/24
spoke [1]  32/16
Spring [1]  1/22
stage [2]  33/17 62/20
standard [7]  13/13 17/7 19/1 29/11 31/25 54/14
  56/16
standards [2]  66/8 79/21
standing [4]  61/2 66/8 68/8 68/19
stands [1]  84/9
start [5]  3/3 4/3 4/16 22/17 41/7
starts [1]  28/24
state [14]  11/3 15/24 25/3 34/11 34/13 38/16 40/25
  43/7 49/21 56/17 56/21 60/4 64/11 64/20
state's [1]  53/7
stated [1]  58/9
statements [4]  14/6 57/10 67/8 67/9
states [10]  1/1 1/13 3/3 7/21 43/5 43/7 76/19
  78/13 85/5 85/11
status [11]  5/12 6/9 14/11 19/1 40/2 69/22 70/7
  70/13 74/10 75/5 76/14
statute [24]  15/23 18/5 19/19 27/16 27/23 45/11
  47/14 55/12 59/19 60/17 62/9 69/25 73/5 74/6
statutes' [1]  81/7
statutory [4]  42/5 42/15 51/21 69/17
stenographically [1]  85/8
stenographically-reported [1]  85/8
STENOTYPED [1]  1/25
step [1]  39/8
still [7]  4/5 21/22 27/21 50/11 56/15 66/3 73/16
stopping [1]  64/24
store [1]  53/10
stores [3]  53/6 53/6 53/7
streamline [1]  23/2
strict [12]  25/14 26/4 26/6 26/22 27/1 27/25 50/25
  56/16 57/13 64/11 64/22 76/9
stripping [1]  76/13
strong [1]  27/3
stronger [1]  27/14
```

## (continued)

```
strongest [1]  7/5
strongly [1]  46/10
struck [1]
struggling [1]  8:24-cv-02866
student [1]  76/15
sub [1]  26/15
sub-entity [1]  26/15
subject [5]  15/10 16/21 37/10 58/22 82/2
submit [3]  55/15 56/23 63/10
subset [1]  9/19
subsets [1]  13/24
substances [2]  34/25 35/24
substantial [1]  12/3
subtitle [1]  74/5
succeed [4]  7/7 19/25 29/9 29/9
succeeds [1]  50/13
success [3]  62/5 66/11 68/13
successful [1]  38/9
such [2]  6/24
sue [1]  17/18
sued [2]  4/23 5/25
sufficient [3]  23/13 31/17 68/3
sufficiently [2]  12/6 12/7
suggest [1]  68/11
suggested [1]  14/22 49/23
suggesting [1]  55/3
suggests [2]  46/10 46/13
Suite [1]  1/19
superficial [1]  24/21
support [2]  32/8 62/18
supporting [1]  51/7
supports [1]  56/19
suppose [1]  63/2
supposed [2]  21/19 58/19
supremacists [1]  40/12
Supreme [33]  5/1 5/3 5/19 6/6 6/16 7/19 7/21 9/4
  9/9 10/6 12/21 12/22 12/23 15/24 16/13 19/8 20/17
  26/24 29/17 31/8 40/22 40/21 46/5 59/3 63/4 68/6
  68/22 70/16 70/24 70/25 75/8 76/11 77/8
Susan [1]  66/23
sustain [1]  40/11
system [8]  18/8 20/2 24/3 27/12 51/6 51/23 54/17
  59/24
systems [1]  53/23
```

## T

```
table [1]  12/16
tailored [1]  56/18 56/23
taken [1]  50/23
taking [4]  20/5 50/10 50/8 59/16
talked [1]  30/8 34/24
talking [10]  13/2 30/16 30/22 31/2 48/20 50/2
  52/21 62/25 75/1 77/22
Tandon [17]  24/6 24/10 24/13 24/19 24/20 25/9
  25/23 26/7 26/18 50/24 51/9 51/10 54/5 56/15 64/7
  81/3 81/15
tax [1]  76/13
TDC [1]  3/8
TDC-24-2866 [1]  3/8
teacher [1]  62/1
teachers [7]  5/24 5/24 6/2 10/15 13/2 13/3 13/3
teachers' [1]  13/7
teaching [1]  10/20 10/22
teachings [2]  36/13 68/20
technically [1]  4/12
tell [4]  20/1 25/23 50/25 71/13
telling [1]  80/2
Tenth [1]  14/2
term [4]  21/10 23/4 41/18 74/19
termination [1]  10/25
terms [5]  7/9 35/23 43/3 52/18 78/16
test [5]  4/11 22/14 21/18 22/14 22/16
tested [1]  16/9
that its [1]  27/7
theaters [1]  52/16
THEODORE [2]  1/12 3/5
theories [3]  7/8 50/18 83/13
theory [10]  7/3 9/20 34/19 50/13 53/18 60/16 81/23
  82/7 82/20 82/24
therefore [1]  28/13
they've [3]  13/13 47/22 70/1
thing [10]  17/24 17/25 21/8 42/22 42/25 43/1 44/21
  55/16 63/25 73/2
things [19]  16/5 34/24 34/25 35/3 35/24 36/20
  37/11 37/12 37/18 38/5 40/19 44/7 45/9 45/20 47/1
  61/9 65/24 77/24 83/18
think [94]
thinking [5]  34/18 35/18 35/19 35/19 82/12
though [23]  5/4 6/20 9/18 9/19 14/8 16/20 18/8
  21/8 25/15 29/8 30/14 37/7 38/25 45/6 50/7 50/18
  52/10 52/13 54/4 59/22 73/18 76/22 83/15
thought [15]  4/1 15/18 15/19 17/15 17/15 17/16
  19/4 20/1 38/8 56/4 70/9 71/19 72/12 72/15 75/3
thousands [1]  40/16
threat [1]  68/2 68/5
three [3]  7/14 7/15 71/22
through [6]  10/21 18/9 34/10 39/11 78/17 83/14
THURSDAY [1]  1/13
thus [1]  49/8
tied [2]  25/21 54/5
time [8]  4/2 4/9 16/9 29/21 34/5 37/13 44/20 63/20
timeline [1]  83/21
times [4]  12/18 24/15 36/25 47/22
timing [1]  4/12
tiny [1]  77/9
tithe [2]  72/4 36/12
tithes [1]  8/7
Title [13]  11/6 38/15 42/5 42/9 42/12 42/16 42/17
  43/8 43/15 48/9 50/20 77/11 78/2
today [3]  3/10 56/11 61/2
TODD [2]  1/21 3/15
together [1]  63/20
totally [4]  22/17 39/19 39/20 53/21
```

## (continued)

```
touch [1]  41/9
towards [1]  38/6
tracing [1]
traditional [1]
transcript [3]  1/12 85/7 85/9
TRANSCRIPTION [1]  1/25
treat [1]  51/13
treated [6]  18/24 25/10 26/9 51/15 51/17 51/19
treatment [1]  6/25
treats [2]  64/11 81/5
tried [1]  18/3
trigger [2]  26/25 76/9
triggered [1]  27/1
triggering [1]  36/15
triggers [2]  25/14 27/25 64/10
trouble [1]  65/7
troubled [1]  21/12
troublesome [1]  73/24
troubling [1]  55/17
true [7]  6/20 16/12 58/3 58/9 58/19 79/23 85/7
trump [1]  16/20
trumped [1]  57/5
truth [1]  80/2
try [6]  4/8 4/14 58/15 58/15 67/16 72/17
trying [20]  40/21 58/21 59/20/14 23/2 24/23 25/17
  25/20 45/10 49/15 50/17 52/9 54/15 54/22 60/14
  66/8 69/24 69/25 71/13 75/11 79/4
turn [2]  23/18
turned [1]  49/17
two [8]  7/11 7/14 16/5 20/2 21/1 63/22 71/6 84/2
Twombly [1]  58/23
type [9]  14/19 19/5 19/14 21/3 38/8 64/19 66/20
  79/2 79/17
types [1]  66/2
typically [2]  53/4 68/4
```

## U

```
U.S [3]  6/23 12/25 31/8
U.S.C [1]  85/6
Uh [1]  24/16
Uh-huh [1]  24/16
ultimately [2]  47/3 60/6
unable [1]  37/23
unbalanced [1]  4/12
unconstitutional [4]  20/6 20/15 40/23 60/1 69/13
  70/1 70/4 70/10
under [40]  6/3 6/13 7/18 9/4 9/20 10/13 12/11 17/7
  21/19 25/16 29/11 29/14 30/12 30/19 31/3 32/11
  34/14 34/17 34/18 35/2 38/8 38/15 38/21 39/24
  40/23 47/24 47/18 45/2 50/13 50/23 56/5 56/15
  60/22 66/3 66/23 68/4 71/11 77/11 78/13 83/10
underlying [1]  24/23
undermined [2]  27/8 49/20
undermines [1]  8/23
understand [13]  9/21 19/23 27/9 29/7 29/7 40/14
  41/3 49/15 53/13 69/10 69/12 79/4 81/14
understanding [1]  78/17
understood [1]  20/22
undertaking [2]  63/1 63/4
unduly [1]  50/3
unequal [1]  6/24
unfavorably [1]  81/5
unfortunately [1]  49/4
unincorporated [1]  1/4
union [3]  7/1 13/9 27/12
unionize [1]  13/23
unique [1]  61/25
UNITED [8]  1/1 1/13 3/3 7/21 76/19 78/13 85/5
  85/11
universe [2]  26/5 46/13
University [1]  76/14
unless [2]  4/11 22/18
unlike [2]  55/15 59/24
unmarried [1]  18/21
unnecessary [1]  43/16
up [13]  12/20 14/16 14/16 17/8 21/8 21/10 30/3
  34/9 42/8 45/1 45/7 45/22 49/13
upheld [3]  10/24 76/13 77/7
uphold [1]  36/9
upon [2]  11/17 13/10
use [3]  34/25 35/19
used [4]  21/18 42/9 42/25 74/12
uses [1]  41/18
using [2]  35/24 59/5
usually [6]  4/2 4/2 4/4 30/22 46/19 57/25
```

## V

```
v. [2]  12/23 29/17
values [1]  16/23
variety [1]  16/23
vast [1]  11/5
vehicle [1]  32/14
verify [1]  58/13
versus [5]  3/9 25/25 32/24 53/1 54/7
very [35]  4/13 6/10 7/20 10/3 13/5 18/4 21/21
  21/25 22/8 26/12 26/13 45/2 45/5 46/19 47/11 48/25
  50/15 51/12 52/23 54/5 55/6 57/12 60/8 61/9 65/19
  65/21 67/15 68/22 69/5 69/5 75/14 80/24 81/1 81/13
  84/6
via [2]  72/10 72/10
viable [1]  20/13
view [5]  23/9 48/4 50/23 62/8 82/8
viewed [1]  57/2
viewpoints [1]  31/16
VII [13]  11/6 38/15 42/9 42/9 42/12 42/16 42/17
  43/9 43/15 45/11 59/20 77/11 78/2
violate [5]  6/8 8/18 13/19 23/13 69/2
violated [1]  5/2
violates [2]  6/25 15/25
violation [7]  11/2 30/6 51/25 52/4 62/19 62/22
  67/12
violations [2]  47/5 63/8
vital [2]  11/25 12/1
```

**V**

**voice [1]**  39/21
**vs [1]**  1/7

**W**

**wade [1]**  14/20
**waiting [1]**  83/23
**want [35]**  4/9 4/25 8/5 13/10 16/1 16/17 17/16
18/12 20/21 20/23 20/25 21/17 35/4 37/11 39/21
41/7 41/9 43/25 44/7 46/12 58/13 58/14 59/22 61/15
63/23 69/5 70/10 71/21 72/9 72/16 73/1 79/2 80/20
82/15 82/16
**wanted [9]**  12/24 13/1 33/12 36/25 57/20 61/10
63/25 65/9 83/15
**wanting [1]**  40/14
**wants [2]**  15/20 34/22
**warrant [1]**  48/10
**warranted [1]**  58/11
**was [95]**
**Washington [6]**  1/19 5/1 5/15 6/23 43/6 66/19
**Washington's [1]**  6/24
**wasn't [5]**  10/17 23/12 38/9 42/10 82/22
**way [16]**  11/9 31/15 33/15 34/21 35/19 35/24 37/6
45/22 52/25 59/5 61/23 64/22 70/11 74/25 78/16
80/19
**ways [2]**  35/4 79/24
**we'll [6]**  3/24 3/25 4/8 41/4 83/11 84/6
**weaker [1]**  27/14
**weighty [1]**  57/16
**well [57]**  5/15 10/9 10/23 11/10 12/14 14/16 14/18
14/24 16/23 17/14 17/21 18/7 18/15 20/23 22/13
22/25 23/12 23/24 25/6 25/22 26/12 28/20 29/13
35/17 36/22 37/6 38/1 38/2 39/2 44/18 45/14 46/16
47/16 48/15 48/17 49/4 50/16 51/3 54/2 54/2 54/6
54/10 56/6 56/12 58/7 58/10 60/18 60/18 62/21
62/24 63/12 72/17 73/1 75/24 79/7 81/10 83/18
**went [1]**  61/23
**Western [1]**  66/18
**whatever [7]**  49/6 52/14 70/1 75/7 76/23 82/15
82/23
**whereas [1]**  24/10
**whether [33]**  5/8 15/14 20/6 20/9 27/11 27/18 27/19
28/3 28/4 28/5 28/24 30/16 33/5 35/3 35/23 36/7
37/17 39/5 42/19 46/22 49/7 51/13 51/14 51/22 52/4
53/3 53/22 60/14 61/20 72/19 74/4 77/22 82/4
**whichever [1]**  80/23
**while [3]**  9/21 36/5 80/18
**white [1]**  40/12
**whole [8]**  24/6 37/4 43/18 46/2 53/10 53/10 68/19
73/2
**wholly [1]**  68/3
**whom [1]**  60/10
**whose [1]**  30/7
**wide [1]**  49/2
**widely [1]**  11/18
**willing [1]**  63/13
**willingness [1]**  36/13
**win [4]**  29/11 29/13 30/12 81/12
**window [1]**  45/15
**wins [3]**  28/17 28/23 64/17
**wish [1]**  8/4
**within [6]**  8/4 10/15 36/22 45/4 56/9 71/12
**without [3]**  35/3 36/2 36/15
**won't [1]**  19/25
**Woodall [1]**  67/23
**work [17]**  4/25 8/8 13/7 29/20 29/23 35/10 36/5
36/6 36/8 36/8 53/18 67/22 69/15 69/22 73/23 74/10
75/6
**worker [1]**  73/18
**workers [2]**  72/5 72/6
**working [3]**  4/6 35/6 48/6
**workplace [4]**  34/22 35/5 36/20 36/22
**works [1]**  35/10
**world [3]**  50/11 57/13 67/19
**worry [1]**  15/5
**wouldn't [6]**  10/14 15/4 18/11 19/16 34/3 76/9
**written [6]**  70/15 70/16 73/13 73/16 73/21 74/16
**wrong [2]**  22/17 48/16

**Y**

**Yakima [2]**  7/1 66/17
**yeah [8]**  7/11 12/24 31/7 44/25 58/7 61/12 61/25
70/14
**year [3]**  67/11 67/18 67/21
**years [10]**  5/6 6/10 6/22 11/3 21/5 24/15 41/2 64/2
65/11 68/1
**yes [18]**  5/21 5/23 5/23 12/10 30/12 32/13 42/15
44/14 44/22 47/3 47/18 58/20 59/1 63/24 65/9 71/13
81/10 82/21
**yet [1]**  61/10
**York [1]**  32/2
**you'll [1]**  76/24
**you-know-it-when-you-see-it [1]**  54/3
**yours [1]**  26/13
**yourselves [1]**  3/12
**youth [1]**  14/8

**Z**

**zero [1]**  75/8